FILED - USDC -NH
2023 NOV 7 PM 4:19

## STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| **Karen Testerman,** *pro se* **Merrimack County, New Hampshire Chairperson, NH Republican Party** 9 Stone Avenue Franklin, New Hampshire 03235 | |
| | **CIVIL ACTION NO.** |
| **Lynn-Diane Briggs,** *pro se* **Registered NH Republican** 4 Golden Pond Lane Amherst, New Hampshire 03031 | _____ |
| **Wayne Paul Saya Sr.,** *pro se* **Registered NH Republican** 24 Cadogan Way Nashua, New Hampshire 03062 | **COMPLAINT AND PRAYER FOR DECLARATORY AND PRELIMINARY INJUNCTIVE RELIEF** |
| *Plaintiffs* | |
| *VS.* | |
| **DAVID SCANLAN, SECRETARY OF STATE FOR NEW HAMPSHIRE,** his agents, successors, and employees. 107 North Main Street Concord, New Hampshire 03301. | |
| **CHRIS AGER, NEW HAMPSHIRE REPUBLICAN STATE COMMITTEE** 10 Water Street Concord New Hampshire 03301 | |
| *Defendants* | |

Plaintiffs **Karen Testerman**, *pro se*, Merrimack County, New Hampshire

Chairperson, NH Republican Party; **Lynn-Diane Briggs**, *pro se*, Registered NH

Republican AND **Wayne Paul Saya, Sr.**, *pro se*, Registered NH Republican,

("Plaintiffs"), pursuant to LR 83.6(b), for their complaint against Defendants

DAVID SCANLAN, SECRETARY OF STATE FOR NEW HAMPSHIRE, ("NH-

SOS" or "Department") and NEW HAMPSHIRE REPUBLICAN PARTY ("NH-

GOP"), collectively, allege on knowledge as to Plaintiffs, and on material evidence

and information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. Plaintiffs challenge the Defendants in their administration and approvals of

   the current 2024 electoral process and election under the "Electors" Clause of

   Article II, Section 1, Clause 2, and under the "Elections" Clause of Article I, §

   4, in concert with the Bill of Rights of New Hampshire's equal protection

   under Const. N.H. Part I, art. 11, and the due-process and equal protection

   clauses of the 14th Amendment to the Federal Constitution.

2. This case presents a question of law: Did and are the Defendant/Defendants

   violating the federal Electors Clause and the Elections Clause (or, in the

   alternative, the federal Fourteenth Amendment) by taking—or allowing—non-

   legislative actions to change state legislative laws that would govern the

   appointment of presidential electors?

3.   As a result of the Defendants direct violations and circumventing of the New Hampshire 'primary election process' as alleged, Plaintiffs also assert an unlawful and unconstitutional "practice" in violation of the *Federal Elections and Political Activities clause* of *Title 18 within United States Code, Chapter 29, §595* (Interference by Administrative Employees of the Federal, State, or Territorial Governments) Emphasis supplied.

4.   As a result of the Defendants unlawful behavior in this State's primary elections as described *below*, the Plaintiffs are seeking relief from these violations, while seeking to enjoin the Defendants from committing these same violations in the upcoming state and federal New Hampshire congressional primaries and general elections as provided under the *"Elections" Clause of Article I, Section 4, Clause 1,* where for decades the Supreme Court has interpreted the "Elections Clause" expansively, enabling states "to provide a complete code for congressional elections, not only as to times and places, but in relation to notices, registration, supervision of voting, protection of voters, prevention of fraud and corrupt practices, counting of votes, duties of inspectors and canvassers, and making and publication of election returns". *Smiley v. Holm, 285 U.S. 355 at 366 (1932).*

5.   Plaintiffs complete Jurisdiction and Venue are outlined in paragraphs 43 through 48.

6.  The constitutional violations as alleged directly relate to the Defendants violating New Hampshire, RSA 659:14, et seq. and RSA 654:34, et seq., which are the state laws that govern state and federal primary elections, including the primary election for President of the United States.

7.  The unconstitutional changes described *below* have opened the door to election irregularities in various forms. Plaintiffs allege that each of the Defendants openly violated constitutional rules governing the appointment of presidential electors. In doing so, seeds of deep distrust have been sown across the state of New Hampshire. In the spirit of *Marbury v. Madison*, and most recently, *Moore v. Harper, 600 U.S. 1 (2023)*, this Court's attention is profoundly needed to declare what the law is and to restore public trust in this election.

8.  In New Hampshire, Article II, Section 1, of the United States Constitution provides that the President of the United States is elected by the Electoral College via majority vote in a single winner contest and outlines the method for electing the President.

9.  This action under Article II, §1 – is known as the *Executive Vesting Clause*, or the *Electors clause* for the selection and appointment of the President of the United States, that includes the state of New Hampshire, where:

4

> *Each State shall appoint, in such Manner <u>as the Legislature</u>*
> *<u>thereof may direct</u>, a Number of Electors, equal to the whole Number*
> *of Senators and Representatives to which the State may be entitled in*
> *the Congress: but no Senator or Representative, or Person holding an*
> *Office of Trust or Profit under the United States, shall be appointed*
> *an Elector.* Emphasis supplied

10. Pursuant to the above-named *Executive Vesting Clause,* hereinafter *"Electors Clause"*, voters in each state which includes' New Hampshire, with exception of two states, choose 'electors' by casting a vote for the presidential candidate of their choice. The slate winning the most popular votes is the winner. However, the procedure for this procedural process in New Hampshire was unlawfully changed by Defendant NH-SOS, and followed by Defendant NH-GOP.

11. Defendants on or around June 7th, 2023, until on or around October 6th, 2023, did permit political affiliations (Democrat party and Republican party) to switch their political affiliations after the state statutory cut-off period of June 7th, 2023,[1] in violation of RSA 654:32 *(Hearings on Alterations to Party*

---

[1] EXHIBIT "C" in the Plaintiff Motion for Expedited Consideration for Preliminary Injunctive Relief contains a memorandum from the NH Sec of State dated Sept 13, 2023, advising all NH city and town clerks and supervisors to use October 6, 2023 as the last day for voters to change their party affiliation, which violates NH RSA 654:34-IV.

*Registration)*; RSA 654:34 *(Change of Registration)*, and RSA 659:14 *(Special Provisions for State and Presidential Primary Elections)*.

12. The Defendants refuse to acknowledge their actions as an error or oversight; refuse to correct these actions that violated New Hampshire state election laws and the New Hampshire and federal constitutions and are continuing to violate these described New Hampshire election laws into the federal Presidential primary of January 23, 2024, the federal congressional primary elections of October 1st, 2024 and the federal general elections of November 6, 2024.

13. This type of voter manipulation and fraud of an opposing affiliate party's primary candidate vote-tally will cause the upcoming Presidential primary election in January 2024 to be severely tainted and unconstitutional.

14. Alleged by Plaintiffs is an interference and circumvention allowed by the Defendants *(described below)* which violate New Hampshire Election law RSA 659:14-II – '*Special Provisions for State and Presidential Primary Elections*', as approved by the New Hampshire legislature and signed by the NH Governor, with the last revision date effective May 25, 1994.

15. This described interference and circumvention by Defendants *(below)* also violated and continues to violate New Hampshire Election law, RSA 654:34 I.(1) and IV – *Change of Registration,* for the U.S. Presidential Election.

16. Accordingly, the Defendants used an unlawful and unconstitutional "practice" for the New Hampshire "Presidential Primary" that unnecessarily <u>required</u> the Republican Party (Defendant NH-GOP), to submit a "Written Notice" to the Defendant NH-SOS, that stipulates ". . . *whether a party rule has been adopted that permits a person who is registered as an undeclared voter to vote in the party's primary*". Apparently, without the submission of the letter, Defendant NH-SOS will continue violating election law RSA 654:34-IV.

17. The Plaintiffs here allege that such a "required" letter is not a state statutory requirement and has now interfered with the described New Hampshire state election laws, in-turn creating irreputable harm to Republican candidates running for President of the United States and in-turn the Plaintiffs Constitutional rights as described.

18. Where Defendant NH-GOP never notified Defendant NH-SOS prior to the statutory first Wednesday of June, or June 7, 2023, it is clear Defendant NH-GOP had not rightfully adopted any such arbitrary rule. This should have indicated that Defendant NH-GOP was initially adhering to election law RSA 654:34 IV:

> IV – *No person, who is already registered to vote, <u>whether his party membership has been previously registered or not,</u> shall affiliate with a*

7

*party between the first Wednesday in June and the day before the state primary.*" id at IV.[2] Emphasis supplied.

19. As the first-in-the-nation Presidential Primary, New Hampshire is unique, where New Hampshire election laws are designed to have all political affiliations (Democrat, Republican, Independent, etc) closed, from the first Wednesday of June (June 7, 2023) until the day before the Presidential Primary cycle on January 23, 2024[3] of the following year. These dates conform with RSA 654:34-IV for the 2024 primary election cycle. Immediately after the Presidential Primary, political affiliations are re-opened again on the first Wednesday of June, where at such time all political affiliations are again closed to accommodate for the federal congressional primary election cycle in September. These dates also conform with RSA 654:34-IV for the 2024 congressional primary cycle.

20. In 2024, the New Hampshire Presidential primary is scheduled on or around January 23rd, 2024. This indicates per the statute; that from the first Wednesday in June, 2023 (June 7, 2023) until the day before the primary on or around January 23rd, 2024, no eligible voter should have been permitted to change their "affiliation" from democrat to undeclared or to Republican, or

---

[2] RSA 654, et seq. is the New Hampshire statute that governs federal elections.
[3] Depending upon the calendar year, some primary elections in New Hampshire have been held at the beginning of February.

vice-versa. This did not happen, because the Defendants kept the flood gates

open an additional four months, or until October 7th, 2023. This was a big

deal because a significant number of political affiliations were reported to

have changed during this period, reportedly most from Democrat to

"undeclared" and Republican in a reported scheme to affect the outcome of

the Republican primary winner. *See* **Exhibit "B"**

21. The Plaintiffs contend that Defendant NH-SOS, after the first Wednesday in

June of 2023 (June 7, 2023), continued to permit voter affiliation changes, not

closing these affiliations until October 6th, 2023, *See Exhibit* "A".[4] extending

these changes four(4) additional months. In fact, Defendant NH-SOS has

openly acknowledged as much in an October 9, 2023, answer to a Right-To-

Know Request under NH RSA 91-A, addressed to Mr. Norman J. Silber and

later emailed to Plaintiff Lynn Briggs. *See* **Exhibit "B".**

22. The Plaintiffs also contend that Defendant NH-GOP has endorsed this

unlawful and unconstitutional "practice", by working with and following co-

Defendant NH-SOS's unlawful "letter request" after the legal close of

political affiliations, where NH-GOP chairman, Chris Ager, reportedly

presented such a letter request to Defendant NH-SOS and thereby adhering to

---

[4] All exhibits cited in this Complaint are in the Appendix to the Plaintiff MOTION FOR EXPEDITED PRELIMINARY INJUNCTIVE RELIEF.

co-Defendant's unlawful letter requirement that ignores RSA 654:34 and RSA 659:14, respectively.[5]

23. The unlawful and unconstitutional "practice" in question permitted democrat and/or independent voters to change as an undeclared voter—outside and in violation of the time period specified within New Hampshire State laws—in order to vote for a Republican candidate as an undeclared or independent voter. After the primary election (of January 23, 2024) the voter is then registered within the party he/she voted for.

24. Here, Democrats and Independents were permitted to continue to change their political affiliation beyond the statutory cutoff period of June 7, 2023 to vote for their choice of 'Republican' candidate that is challenging another 'Republican' candidate. In-turn, any time after the primary election the said voter can switch back to their party to vote for their party's Democrat or Independent nominee in the general election, a "practice" which existing state laws are specifically designed to prevent especially in 'Presidential' primary elections. This "practice" can also harm democrat candidates as well.

---

[5] **New Hampshire RSA 654:1 - TITLE LXIII, ELECTIONS, CHAPTER 654, VOTERS AND CHECKLISTS, Eligibility 654:1 Voter; Office Holder. –**
I. Every inhabitant of the state, having a single established domicile for voting purposes, being a citizen of the United States, of the age provided for in Article 11 of Part First of the Constitution of New Hampshire, <u>shall have a right at any meeting or election</u>, to vote in the town, ward, or unincorporated place in which he or she is domiciled. *Emphasis supplied*

25. Of the approximate 320,000 undeclared voters, it has been reported to date that around 4,000 Democrats have recently changed affiliation to "undeclared" or Republican [6], and 408 voters have switched from Democrat to undeclared or Republican (as opposed to independent or undeclared), and the Defendants are permitting this "practice" to continue, and next in the congressional primary contests.   It has also been reported; that there is a movement for Democrats to register as Republicans during the Republican primary and especially using absentee balloting in a move to change the intended successor for a majority of Republican voters, as described in paragraphs 20 and 24. *See* **EXHIBIT "C".** The absentee balloting issue is important in New Hampshire, where the New Hampshire 'Ballot Law Commission has previously determined major issues with absentee balloting.[7]

26. The numbers of absentee and same-day voting is unchecked in New Hampshire, and absentee and same-day voting has determined the winner in a number of previous New Hampshire elections. This is because absentee voters are not compared or audited with the State's 'same-day registration' balloting.

---

[6] **Link:** https://newhampshirebulletin.com/briefs/ahead-of-primary-nearly-4000-democratic-voters-switch-affiliation-to-republican-or-undeclared/ **October 11, 2023 Article from the New Hampshire Bulletin.**
[7] **Findings dated April 5, 2023, that highlighted a number of procedural due-process issues during the 2020 New Hampshire elections, finding a number of violations in absentee balloting. Link:** https://drive.google.com/drive/folders/1ZJykTP0ZHaDAf-Js0483DcTeDmfJSFyd?ths=true

27.  In practice, a person voting by absentee ballot in New Hampshire can also

vote (again) on election day without New Hampshire government

identification, by filling out an affidavit card. Absentee ballots are not kept

with their envelopes after the absentee ballot is inserted into the electronic

voting machine. In turn, this process makes it not possible to validate an

absentee ballot and more complicated when comparing the absentee ballot

with a same-day affidavit card.

28.  Paragraphs 26-28 *above* reflect a violation of 18 U.S.C §§ 241, 242, regarding

the use of an unlawful electronic tabulation scheme that allows the rendering

of false vote tabulations—preventing valid votes. This scheme is part of the

instant complaint only in-as-much-as it reflects the affect that the Defendants

unlawful changes in political affiliations can and has caused. A separate claim

of electronic voter manipulation is not presented in this complaint. The

alleged scheme presented in paragraphs 26 through 28 is currently under

review in a pending New Hampshire Supreme court case of *Richard v.*

*Sununu, et al*, *2023-0097* with a scheduled hearing date of Wednesday,

November 29, 2023.

29.  The Plaintiffs issues: first to cure previous political affiliation change

violations of New Hampshire State election laws; while seeking to enjoin the

Defendants from additional manipulation in political affiliations of the

upcoming state and federal congressional primary schedule January and October, 2024, as defined in New Hampshire RSA 659:14 and RSA 654:34.

30. As a result of the foregoing issues, the Plaintiffs, individually and collectively will continue to suffer irreputable harm, among other reasons disclosed, by continuing to be disenfranchised of their rights to a fair election, where their legal votes have been diluted with votes that are the product of an unlawful and unconstitutional procedural process. Each Plaintiff now possesses knowledge that their prospective candidate has been negatively and unfairly compromised by the alleged fraud and violations of state election laws.

31. The New Hampshire legislature created these general election laws in conformance with New Hampshire's first-in-the-nation statutory requirement in mind[8], and for whatever reasoning determined that the cutoff period for changing party affiliations should be longer for the Presidential primary than for the congressional primary.

32. Notwithstanding, the Defendants have disregarded what ever intent the New Hampshire legislature may have had, by arbitrarily disregarding their state elections statutes (RSA 659:14, et seq. and RSA 654:34, et seq) under color of state law and outside of the state and federal constitutions—by creating their

---

[8] NH Title LXIII – ELECTIONS - Chapter 653 - ELECTION OF OFFICERS AND DELEGATES, Section 653:9 - Presidential Primary Election.

own cutoff date of October 6, 2023, circumventing state law which mandates the first Wednesday of June, or June 7th, 2023.

33. The Plaintiffs allege, if the Defendants believe there was or is a problem, complication, or controversy with any statute as written, they should have independently taken an appropriate legal remedy to alleviate their concerns, rather than show the appearance of a conspiracy; acting in concert as self-appointed decision-makers and legal editor(s) in place of the New Hampshire legislature.

34. The Plaintiffs concern now; is the Defendants intention to circumvent the upcoming state and federal congressional primary schedule in January and October of 2024, as defined in New Hampshire RSA 659:14 and RSA 654:34 and the upcoming state and federal general elections in November, 2024, regarding malfeasance by the Defendants, acting under color of law, by diluting the Plaintiffs valid ballots with invalid ballots—caused by manipulating the voter registration and vote in both the presidential and congressional primaries and general elections.

35. Lawful elections are at the heart of our constitutional democracy. The public, and indeed the candidates themselves, have a compelling interest in ensuring that the selection of a Congress and/or President—is legitimate. If that trust is lost, the American Experiment will flounder. A dark cloud already hangs over

14

the 2020 election and now the skies are darkening within the first-in-the-nation 2024 Presidential primary and election in New Hampshire.

36. Highly controversial issues like elections and voting rights in society understandably arouse passions that lead to heated debate.  But in whatever form, that debate is a good thing because freedom of speech is essential to the functioning of our Republic. In America, even the most controversial of issues are resolved "by citizens trying to persuade one another and then voting."

## PARTIES

37. **Karen Testerman,** Plaintiff, *pro se*, as the Merrimack County, New Hampshire, Chairperson for the New Hampshire Republican Party, and an inhabitant of New Hampshire, residing at 9 Stone Avenue, Franklin, New Hampshire 03235.

38. **Lynn-Diane Briggs,** Plaintiff, *pro se*, as a 40-year inhabitant of New Hampshire, affiliated as a registered Republican voter in the county of Hillsborough, residing at 4 Golden Pond Lane, Amherst, New Hampshire 03031.

39. **Wayne Paul Saya, Sr.,** Plaintiff, *pro se*, as a 30-year inhabitant of New Hampshire, affiliated as a registered Republican voter in the county of Hillsborough, residing at 24 Cadogan drive, Nashua, New Hampshire 03062.

40. **David Scanlan,** Defendant, is sued individually and in his official capacity as the Secretary of State of New Hampshire. The address of the Secretary of State's office is: Office of the Secretary of the State House 107 North Main Street Concord, NH 03301.

41. **Chris Ager,** Defendant, is sued individually and in his official capacity as Chairman of the New Hampshire Republican State Committee. The address of the NH-GOP: 10 Water St, Concord, New Hampshire 03301.

## JURISDICTION AND VENUE

42. This court has subject-matter jurisdiction under 42 U.S.C. §1983, where the Plaintiffs allege violations of their procedural and substantive due-process and equal protection rights pursuant to:

> 1. The "Elector's" clause of Article II, Section 1, Clause 2, and
>
> 2. The "Elections" clause of Article I, Section 4, Clause 1,

as provided for under the Fourteenth Amendment to Federal Constitution,

43. and under Title 18 U.S.C. 29, §595 (Interference by Administrative Employees of the Federal, State, or Territorial Governments).

44. Pursuant to 18 U.S.C. §242 - Deprivation of rights under color of law for deprivation of the Plaintiffs rights, privileges, and immunities secured and

protected by the due-process clause and section 1 of the fourteenth Amendment to the United States.

45.   Under 28 U.S.C. 1367 this Court maintains supplemental jurisdiction over state constitutional claims, where the Defendants continue to cause harm.

46.   This Court exercises subject matter jurisdiction under 28 U.S.C. § 1331, which confers original jurisdiction on federal district courts to hear suits secured by the United States Constitution while acting under color of state law.

47.   This Court has the authority to the requested declaratory relief under 28 U.S.C. § 2201, and the requested injunctive relief under 28 U.S.C. § 1343(a).

## COUNT 1
## ELECTORS CLAUSE
### Article II, Section 1 of the U.S. Constitution

48.   Plaintiffs repeat and re-allege the allegations above, as if fully set forth herein.

49.   The Electors Clause of Article II, Section 1, of the Constitution makes clear that only the legislatures of the States are permitted to determine the rules for appointing presidential electors. The pertinent rules here are the state election statutes, specifically those relevant to the presidential election.

50.   Non-legislative actors such as the Defendants in this case, lack authority to amend or nullify election statutes. *Bush II, 531 U.S. at 104 (quoted supra)*.

*131. Under Heckler v. Chaney, 470 U.S. 821, 833 n.4 (1985),* conscious and express executive policies—even if unwritten—to nullify statutes or to abdicate statutory responsibilities are reviewable to the same extent as if the policies had been written or adopted.

51. Also compare *Moore v. Harper, 600 U.S. 1 (2022)* when describing the "elections clause" and the high Court's position, where too there is no mention within the "electors clause" regarding such defiance of state constitutional provisions, where:

> *"Nothing in [the Elections] Clause instructs, nor has this Court ever held, that a state legislature may prescribe regulations on the time, place, and manner of holding federal elections in defiance of provisions of the State's constitution." Cited from Arizona State legislature v. Arizona independent redistricting commission, 576 U. S., at 817–818 (majority opinion) Pg. 18...*

52. Whereas conscious and express actions by State or local election officials to nullify or ignore requirements of election statutes violate the "Electors Clause" to the same extent as formal modifications by judicial officers or State executive officers.

53. The actions set out in Paragraphs 11-22 constitute non-legislative changes to State election laws by the Defendants in violation of the "Electors Clause".

54. Whereas, any Electors appointed to the Electoral College in violation of the "Electors Clause" cannot cast constitutionally valid votes for the office of President.

## COUNT II
### FEDERAL ELECTIONS AND
### POLITICAL ACTIVITIES CLAUSE
### Title 18 within United States Code, Chapter 29, §595
### Interference by administrative employees of Federal,
### State, or Territorial Governments

55. Plaintiffs repeat and re-allege the allegations above, as if fully set forth herein.

56. The Plaintiffs allege, Defendant NH-SOS has and continues to use his official authority for the purpose of interfering with, or affecting, the nomination or the election of the New Hampshire Presidential candidate of the Plaintiffs choice, and the Plaintiffs choice of any candidate for the office of President, and Vice President, and Presidential elector.

57. Whereby, Defendant NH-SOS, individually or conspiring with Defendant NH-GOP has created a "practice" which ignores and interferes with existing state election law requirements.

58. The actions set out in Paragraphs 10-21 constitute non-legislative changes to State election laws by Defendant NH-SOS in violation of 18 U.SC 29, §595, of the Federal Elections and Political Activities Clause.

**COUNT III**
**EQUAL PROTECTION**
**Fourteenth Amendment, U.S. Constitution**
**NH RSA 659:14 and NH RSA 654:34**

59. Plaintiffs repeat and re-allege the allegations above, as if fully set forth herein.

60. In recognition of New Hampshire's first-in-the-nation Presidential primary, the state legislature set a high legislative standard to protect the integrity of its' inhabitant voters.

61. The Equal Protection Clause prohibits the use of differential standards in the treatment and tabulation of ballots within a State. Bush II, 531 U.S. at 107. 136.

62. The one-person, one-vote principle requires counting valid votes and not counting invalid votes. Reynolds, 377 U.S. at 554-55; Bush II, 531 U.S. at 103 ("the votes eligible for inclusion in the certification are the votes meeting the properly established legal requirements").

63. As a result of the Defendants actions, the Plaintiffs, individually and collectively have been disenfranchised of their rights to a fair election, where their votes are being systematically diluted with invalid votes, while at the same time the Plaintiffs are retaining the knowledge of their prospective Presidential candidate being negatively and unfairly compromised from this unfair and unlawful practice.

64.  The actions set out in Paragraphs 11-22 created different voting standards than those used in elections past, and different standards from the legislative requirements in violation of the Equal Protection Clause. The actions set out in Paragraphs 11-22 violated the one-person, one vote principle by the Defendants.

**COUNT IV: DUE PROCESS**
**Substantive and Procedural Due-Process**
**Fourteenth Amendment, U.S. Constitution**
**NH RSA 659:14 and NH RSA 654:34**

65.  Plaintiffs repeat and re-allege the allegations above, as if fully set forth herein.

66.  When election practices reach "the point of patent and fundamental unfairness," the integrity of the election itself violates substantive due process. Griffin v. Burns, 570 F.2d 1065, 1077 (1st Cir. 1978); Duncan v. Poythress, 657 F.2d 691, 702 (5th Cir. 1981); Florida State Conference of N.A.A.C.P. v. Browning, 522 F.3d 1153, 1183-84 (11th Cir. 2008); Roe v. State of Ala. By & Through Evans, 43 F.3d 574, 580-82 (11th Cir. 1995); Roe v. State of Ala., 68 F.3d 404, 407 (11th Cir. 1995); Marks v. Stinson, 19 F. 3d 873, 878 (3rd Cir. 1994). 142. Under this Court's precedents on procedural due process, not only intentional failure to follow election law as enacted by a State's legislature but also random and unauthorized acts by state election officials and their designees in local government can violate the Due Process Clause. Parratt v. Taylor, 451 U.S. 527, 537-41 (1981), overruled in part on other

grounds by Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Hudson v. Palmer, 468 U.S. 517, 532 (1984).

67. The difference between intentional acts and random and unauthorized acts is the degree of pre-deprivation review. Here, the Defendants acted unconstitutionally to change their election laws— including unlawful and unlawfully accepted administrative changes to existing state election laws— with the express intent to disregard or favor a candidate for U.S. President that may very well alter the outcome of the 2024 New Hampshire state primary, federal primary and general elections.

68. As a result of the Defendants actions, the Plaintiffs, individually and collectively have been disenfranchised of their rights to a fair election, where their votes are being systematically diluted using an invalid process, while at the same time the Plaintiffs are retaining the knowledge of their prospective Presidential candidate being negatively and unfairly compromised from these unlawful and unconstitutional practices.

69. The actions set out in Paragraphs 11-22 constitute intentional violations of State election law by State election officials, one of which is a Defendant in this complaint, in violation of the U.S. Constitution's Due Process Clause.

70. By the shared enterprise of the entire nation electing the President and Vice President, equal protection violations in one State can and do adversely affect

and diminish the weight of votes cast in States that lawfully abide by the election structure set forth in the Constitution. Plaintiffs are therefore harmed by this unconstitutional conduct in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the U.S. Constitution.

## **PRAYER FOR RELIEF**

WHEREFORE, allowing these described unlawful and unconstitutional violations of New Hampshire's election laws to continue without resolving this controversy and permit the Defendants to proceed without correcting the damage done to the New Hampshire election process, would irreparably harm the Plaintiffs and the Republic creating a continuing question in the integrity of the upcoming Presidential primary and election, with a real potential of denying representation in the presidency by permanently sowing distrust in federal elections. This Court has found such threats to constitute irreparable harm on numerous occasions. The Plaintiffs are not seeking to be certified as a class, and respectfully request that this Court issue the following relief:

A. Declare that the Defendant NH-SOS and Defendant NH-GOP are in violation of New Hampshire election laws, and as a result:

**ORDER Forthwith** the Defendants to Cease and Desist all violations of New Hampshire's election laws, and in particular RSA 659:14, et seq. and RSA 654:34, et seq.

B. **ORDER Forthwith** the Defendants to "correct" all political affiliation changes made from June 7, 2023, until the present date, by communicating to each city and town of this required "correction", as stipulated within Plaintiffs **Motion for Expedited Preliminary Injunctive Relief.**

C. Declare, pending the disposition of this complaint, that any electoral college votes cast by such presidential electors appointed for the State of New Hampshire are in violation of the Electors Clause and the Fourteenth Amendment of the U.S. Federal Constitution and cannot be counted.

D. Pending the disposition of this complaint, Enjoin Defendants, and each of them, use of the 2024 election results for the Office of President to appoint presidential electors to the Electoral College.

E. If any of the Defendants have already assigned or appointed presidential electors to the Electoral College, direct such States' legislatures, pursuant to 3 U.S.C. § 2 and U.S. CONST. art. II, § 1, cl. 2, to appoint a new set of presidential electors in a manner that does not violate the Electors Clause and the Fourteenth Amendment, or to appoint no presidential electors at all.

F. Enjoin the Defendant States from certifying presidential electors or otherwise meeting for purposes of the electoral college pursuant to 3 U.S.C. § 5, 3 U.S.C. § 7, or applicable law pending further order of this Court.

G. In the alternative, adopt the Plaintiffs proposed preliminary relief as submitted within the Plaintiffs Motion for Expedited Preliminary Injunctive Relief.

H. Award costs to the Plaintiffs.

I. Grant such other relief as the Court deems just and proper.


SWORN TO AND SUBSCRIBED THIS 7th DAY OF NOVEMBER, UNDER PAINS & PENALTIES OF PERJURY.


Karen Testerman, Plaintiff, *pro se*
9 Stone Avenue
Franklin, New Hampshire 03235
Karen@KarenTesterman.com
603-934-7111

Lynn-Diane Briggs, Plaintiff, *pro se*
4 Golden Pond Lane
Amherst, New Hampshire 03031
Lynbdance@gmail.com
603-801-6886

Wayne Paul Saya, Sr., Plaintiff, *pro se*
24 Cadogan Way
Nashua, New Hampshire 03062
Waynesaya2@gmail.com
571-220-3344

# CERTIFICATE OF SERVICE

We the Plaintiffs, pro se, have caused to deliver the Plaintiffs COMPLAINT; PLAINTIFFS MOTION FOR EXPEDITED CONSIDERATION FOR PRELIMINARY INJUNCTIVE RELIEF, AND PLAINTIFFS EXHIBITS TO MOTION FOR PRELIMINARY INJUNCTIVE RELIEF, have been served upon the following Defendants:

David Scanlan, Defendant
Secretary of State of New Hampshire
Office of the Secretary of the State House
107 North Main Street Concord, NH 03301

Chris Ager, Defendant
Chairman
New Hampshire Republican State Committee
10 Water St, Concord, New Hampshire 03301

Service has been made by hand via US District Court form AO 398 (Rev. 01/09), or by-way-of the county Sheriff's department.

SWORN TO UNDER PAINS AND PENALTIES OF PERJURY this 7th day of November, 2023

Karen Testerman, Plaintiff, *pro se*
9 Stone Avenue
Franklin, New Hampshire 03235

603-934-7111

Lynn Diane Briggs, Plaintiff, *pro se*
4 Golden Pond Lane
Amherst, New Hampshire 03031

603-801-6886

Wayne Paul Saya, Sr, Plaintiff, *pro se*
24 Cadogan Way
Nashua, NH 03062

571-220-3344