FILED - USDC -NH
2023 NOV 17 PM12:27

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

**Karen Testerman,** *pro se*

**Lynn-Diane Briggs,** *pro se*

**Wayne Paul Saya,** *pro se*

*Plaintiffs*

*Vs*

**DAVID SCANLAN**
**SECRETARY OF STATE FOR NEW HAMPSHIRE, et al,**

*Defendants*

*Docket No.23-cv-00499-JL-AJ*

## AMENDED MOTION FOR EXPEDITED CONSIDERATION
## FOR PRELIMINARY INJUNCTIVE RELIEF

Wayne Paul Saya, Sr., *pro se* ("Plaintiff") hereby moves this honorable

court, pursuant to District court **LR 7.1(f)**—Request for Expedited Treatment on

the Plaintiff's Motion for Preliminary Injunctive Relief pursuant **to LR 65.1**. The

Plaintiff's request for relief was amended today and now submitted to the court

pursuant to an earlier action on the administration of the 2024 Presidential primary,

to be held in 2023 and 2024, and upcoming general elections by Defendant

DAVID SCANLAN, SECRETARY OF STATE FOR NEW HAMPSHIRE, ("NH-

1

SOS"), and Defendant CHRIS AGER, CHAIRMAN OF THE NEW HAMPSHIRE
REPUBLICAN COMMITTEE ("NH-GOP"), in their official capacities.

The relevant statutory and constitutional violations engaged by the
Defendants, individually and collectively, are 'imminent' and ongoing based upon
their current and continuing unconstitutional non-legislative actions to change state
legislative laws that would govern the appointment of U.S. presidential electors?

"The question here presented is one of federal not state law because the state
legislature, in promulgating rules for congressional elections, acts pursuant to a
constitutional mandate under the Elections Clause." See Bush , 531 U.S., at 113,
121 S.Ct. 525 (Rehnquist, C. J., concurring) (compliance with the Electors Clause
"presents a federal constitutional question").

## ARGUMENT

1.      A preliminary injunction is appropriate where: (1) the plaintiff is likely to
succeed on the merits of their claim, (2) the parties are likely to suffer irreparable
harm unless the injunction is issued, (3) a balancing of the equities weigh in favor
of an injunction, and (4) the injunction is in the public interest. *League of Women
Voters of N.C. v. North Carolina, 769 F.3d 224, 236 (4th Cir. 2014). Also compare
Weinberger v. Romero—Barcelo, 456 U.S. 305, 311–313, 102 S.Ct. 1798, 72
L.Ed.2d 91 (1982); Amoco Production Co. v. Gambell, 480 U.S. 531, 542, 107
S.Ct. 1396, 94 L.Ed.2d 542 (1987).* Other circuits have alternatively looked to a

different criterion, consisting of a showing of (1) probable success and the possibility of irreparable injury; or (2) serious questions on the merits and a balance of hardships, (where here the merits are in the Electors Clause claim made by Plaintiff). *See e.g., W.W. Williams Co. v. Google, Inc., 2013 WL 3812079 (S.D. Ohio 2013).*

2.      The controversy and constitutional violations are two-fold; **first**, the defendants misused a statute specifically designed for "state offices" for a federal presidential primary. **Secondly**, regardless of whether the statute is for a state or federal primary election, the defendants violated the New Hampshire *Change of Registration* statute of RSA 654:34-IV, by permitting a change in political affiliations well beyond the first Wednesday of June, setting an unlawful date of October 6, 2023. See "EXHIBIT A"

3.      Accordingly, in a reply-memorandum to Norman J. Silber[1] dated October 9 2023, in response to Mr. Silber's request for information under NH RSA 91A, defendant "NH-SOS" indicated:

> *"The current practice of permitting undeclared voters to declare affiliation with the Republican Party and then change back to undeclared or remain in the party after voting has been in place for decades."* See "EXHIBIT B".

---

[1] Attorney Norman J. Silber is a former New Hampshire state legislator (2017-18 and 2021-2022) and past Belknap County, NH Republican chair.

4.    The plaintiff does not dispute this "current practice" of defendants <u>to the</u> <u>extent</u> that their practice may have been surreptitiously in place for decades, where Defendant NH-SOS claims such an unlawful practice of a voter's political affiliation apparently has been blindly recognized in violation of the state's election law requirement—of the first Wednesday in June until the day before the primary election . <u>See NH RSA 654:34-IV.</u>

> 1.  *"No person, who is already registered to vote, whether his party membership has been previously registered or not, shall affiliation with a party or disaffiliate from a party between the first Wednesday in June and the day before the state primary election".* id

5.    But, the *above* memorandum continues:  *"For me to administer a change related to <u>participation in a primary</u> would require written notice of a rules change from the party chair*." id <u>**"EXHIBIT B"**</u>.

6.    This is the operative sentence where the defendants manipulate, disregard, and confuse New Hampshire state election laws NH RSA 654:34-IV *(above)*; NH RSA 659:14-II, and RSA 654:32, because the Defendants appear to use the following NH law to ignore RSA 654:34-IV *above*, where:

> II. *"The secretary of state shall include on the voter instruction cards required by RSA 658:28 whether a party rule has been adopted which **permits** a person who is registered as an undeclared voter to vote in the party's primary. The party chairman shall notify the secretary of state in writing prior to the filing period for <u>state offices</u> whether the party has adopted such a rule."* RSA 659:14-II -emphasis supplied

7.     Accordingly, RSA 659:14-II *above* is specifically "whether a party rule has been adopted" regarding undeclared voters, <u>not</u> for determining the time, manner and place for such registration.

> Additionally violated by Defendants: RSA 654:32 –
> **Hearings on Alterations to Party Registration** – *"Before each state or presidential primary election, the supervisors of the checklist shall be in session before each primary for the change of registration of legal voters as provided in RSA 654:34 or 654:34-a or both. Before the presidential primary, the session shall be on the Friday preceding the first day of the filing period, between 7:00 p.m. and 7:30 p.m. and at the discretion of the supervisors for extended hours. . . . . " id*

Accordingly, RSA 654:32 was at no time followed by the Defendants before the Defendants ignored RSA 654:34-IV. *See par 2 above.*

8.     When the Plaintiff  became aware of a letter dated October 6, 2023, authored by the Merrimack County GOP chairperson, Karen Testerman, that was sent to Defendant Chris Ager "NH-GOP", *See* "<u>EXHIBIT D</u>", Plaintiff realized there were major legal election implications involved, because a legal restraining order to enjoin defendant NH-SOS was requested by the Merrimack county chair (Karen Testerman) for, among other legal election concerns, continuing or acknowledging this *above* practice of requiring a letter that is not required and violates RSA

654:34-IV of the state's *change in registration* and election laws regarding time, manner, and place.

9.      During the course of 2023, the Plaintiff along with a number of GOP acquaintances were made aware through political circles of major disagreements and friction within the GOP, caused when Defendant NH-GOP and others with minority political views were openly favoring candidate Chris Christie and other less desirable candidates over more popular national candidates. It was my belief that the Defendant NH-GOP should have a neutral position as GOP chair.

10.     During this period in time Plaintiff was made aware that the Merrimack County GOP chair was blatantly being ignored by Defendant NH-GOP, which also impacted my next door city of Nashua New Hampshire, when Merrimack was repeatedly by-passed for GOP fundraisers, guest speakers, and recently the annual Oktober-fest event, where the GOP held a simultaneous event in northern New Hampshire that caused many GOP supporters to cancel the previously scheduled Oktober-fest event.

11.     Because of Defendant NH-GOP's friction with respected members of his own party, and his continued absence from the Plaintiff's home town of Nashua, New Hampshire, Plaintiff developed a belief that Defendant NH-GOP was flexing his political muscles (to keep in place the covert use of an election law) by

squeezing the Merrimack county chairperson to get in-line with his and Defendant NH-SOS's political affiliations cut-off date change.

12.    It has been the actions of Defendant NH-GOP against members of his own party and his silence of state government's unlawful statutory behavior, that incubated the Plaintiff's belief of a New Hampshire GOP in shambles, along with Plaintiff's belief that his vote was no longer controlled by him or the voter.

13.    The Plaintiff believes, when you have a state government that believes any election law can be broken without consequence for the sake of convenience or strategy, his one vote becomes worthless.

14.    Because of these open and visible state elections violations, the defendants have right away put into question the 'accuracy' and 'validity' of the vote tally for the New Hampshire Presidential primary election. See "EXHIBIT C"

15.    As a consequence, any electoral college votes cast by such presidential electors appointed for the State of New Hampshire will be in violation of both the 'Electors Clause' and the 'Elections Clause' and the Fourteenth Amendment of the U.S. Federal Constitution as described.

16.    Among the state and federal statutes defined in this complaint; causing the procurement or submission of voter applications or registrations in any election, or of the tabulation of ballots in federal elections, that are materially defective under

applicable state law also violate the federal criminal penalty code of 52 U.S.C.

§20511(2)(A)(B).[2]

17.     However, the defendants violated not only the Electors Clause, U.S. Const.

art. II, § 1, cl. 2, but also the Elections Clause, id. art. I, § 4 (to the extent that the

Article I Elections Clause textually applies to the Article II process of selecting

presidential electors). Plaintiff and their voters are entitled to a presidential election

in which the votes are counted only if the ballots are cast and counted in a manner

that complies with the pre-existing laws of each state. See Anderson v. Celebrezze,

460 U.S. 780, 795 (1983) ("for the President and the Vice President of the United

States are the only elected officials who represent all the voters in the Nation.").

Voters who cast lawful ballots cannot have their votes diminished by states that

administered their . . presidential elections in a manner where it is impossible to

distinguish a lawful ballot from an unlawful ballot.

18.     The only cure for this kind of constitutional violation, without placing into

jeopardy New Hampshire's first-in-the-nation status, and the right of each U.S.

citizen to vote,  is to return those approximate 3,500-4,000 political affiliates

(Democrat, Republican, etc) whom changed their political affiliations to

"undeclared" within the first Wednesday of June (June 7, 2023) to the unlawfully

---

[2] Title 52-VOTING AND ELECTIONS, Subtitle II-Voting Assistance and Election Administration, CHAPTER 205-NATIONAL VOTER REGISTRATION

designated date of October 6, 2023, 'back' to the political party affiliation they were originally designated to before June 7, 2023.

19.      And those approximate 400 Democrat party affiliates who switched to a Republican party affiliate, must be switched back to their original Democrat party.

20.      In the alternative, the New Hampshire Presidential primary would unfortunately need to be moved forward (under court order for 2024) to the same date as the federal congressional primary of October 1, 2024. Accordingly, because no change of political affiliations can take place after the congressional primary and before the General election (around five weeks later) on November 5, 2024, this "court order" would be made to 're-establish' a New Hampshire voter's 'legal' political designation in compliance with state election law RSA 654:34.

**21.**    This "nuclear option" would have all party affiliations to be where they belong, since party affiliations (democrat or republican) will want to vote for their party's congressional candidate, and not strictly for another party's presidential candidate.

**Validity of the State's Congressional and General Elections Are in Jeopardy.**

22.      The Defendants have shown no effort to listen to reason regarding the integrity and ethics of New Hampshire's Presidential primary election, where they continue to openly violate New Hampshire state election laws NH RSA 654:34:IV and NH RSA 659:14-II. It is therefore a deep concern of the Plaintiff that the

Defendants will circumvent, modify, or simply violate the original intent of the

New Hampshire legislature's election laws *(as stated above)* for the upcoming

congressional primary and general elections.

23.     Simply, Plaintiff does not believe the Defendants will follow the New

Hampshire laws as written for the upcoming federal congressional and general

election.

24.     Whereas, the Plaintiff believes that a schedule, offered by Plaintiff within

this motion, must be **Ordered** by this court, where such a schedule conforms with

New Hampshire election laws.

### Alternatively, this Case Deserves Limited Summary Disposition

25.     In lieu of granting interim relief, this Court could simply reach the merits

summarily - Fed. R. Civ. P. 65(a)(2). Two things are clear from the evidence

presented at this initial phase: (1) non-legislative actors modified and ignored the

New Hampshire Presidential primary election statutes; and (2) the resulting

uncertainty casts doubt on the lawful winner. Those two facts are enough to decide

the merits of the Electors and Elections Clause claims. The Court should "Stay"

any and all appointments and impending certifications of presidential electors,

pending a resolve to this controversy.

## I.     Likelihood of Success on the Merits

26.     In light of the evidence in the record here, where the Defendants did in-fact

openly ignore the *Change of Registration* law of RSA 654:34-IV, continues to

misapply the *Special Provisions for State and Presidential Primary Elections* law

of RSA 659:14, and made no attempts to follow RSA 654:34 *Hearings on*

*Alterations to Party Registration*, and in concert with the recent U.S. Supreme

court's elections ruling in *Moore v. Harper, 595 U.S. 1 (2022); 142 S. Ct. 1089*,

there appears to be no viable defense that Defendants can offer, other than their

actions being that of an oversight.

27.     The Elections Clause of the Federal Constitution requires "the Legislature"

of each State to prescribe the rules governing federal elections. Art. I, §4, cl. 1.—

*Syllabus of Moore v Harper (above)*.

28.     Here, the Defendants run opposite of the language and constitutional

requirement outlined in *Moore v Harper*, where it is written that the Elections

clause could have said that these rules are to be prescribed "by each State," which

would have left it up to each State to decide which branch, <u>component, or officer</u>

of the state government should exercise that power, as States are generally free to

allocate state power as they choose. But, according to *Moore v Harper*, . . but "

<u>that is not what the Elections Clause says</u>. Its language specifies a particular organ

11

of a state government, and we must take that language seriously." Emphasis

supplied - *See Moore v Harper, above*

## II.   Plaintiff will suffer irreparable harm if the Defendants unconstitutional presidential electors vote in the Electoral College.

29.    Allowing the unlawful and unconstitutional election to move forward

without resolving this controversy and permit the Defendants to proceed would

irreparably harm the Plaintiff and the Republic both by denying representation in

the Presidency by permanently sowing distrust in New Hampshire's federal

elections. This Court has found such threats to constitute irreparable harm on

numerous occasions. The Plaintiff submits the stakes in this case are too high to

ignore.

30.    Being forced to implement an unconstitutional enactment can justify an

injunction to prevent that result. See, e.g., Morales v. Trans World Airlines, Inc.,

504 U.S. 374, 380-81 (1992).

## III.   The Balance of Equities Tips to the Plaintiff.

31.    New Hampshire represents citizens who will vote in the 2024 presidential

election. Because of the Defendants unconstitutional actions, the Defendants

represent some citizens who cast ballots not in compliance with both the *Electors*

*Clause* and the *Elections Clause*. However, it would irreparably harm the Plaintiff

if the Court denied interim relief.  In addition to ensuring that the 2023 primaries

and 2024 Presidential Primary election is resolved in a manner consistent with the

Constitution, this Court must review the violations that occurred with the Defendants to enable Congress and State legislatures to avoid future chaos and constitutional violations. Unless this Court acts to review this federal and presidential election, these unconstitutional and unilateral violations of state election laws will continue in the future.

### IV.   The Public Interest Favors Interim Relief.

32.    Here, the Plaintiff (as well as the public-at-large) has a "personal stake" in the outcome of this complaint. *Baker v. Carr, 369 U. S. 186, 204* (1962), as cited in *Moore v Harper, above.*

33.    When parties dispute the lawfulness of government action, the public interest collapses into the merits. ACLU v. Ashcroft, 322 F.3d 240, 247 (3d Cir. 2003); Washington v. Reno, 35 F.3d 1093, 1103 (6th Cir. 1994); League of Women Voters of the United States v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016). If the Court agrees with the Plaintiff that non-legislative actors lack authority to amend state statutes for selecting presidential electors, the public interest requires interim relief.

34.    Withholding relief would leave a taint over the election, disenfranchise the Plaintiff and the voters pursuant to the 'one person one-vote' rule, and lead to still more electoral deftness in future elections.  Electoral integrity ensures the legitimacy of not just our governmental institutions, but the Republic itself. See

13

Wesberry, 376 U.S. at 10. "Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." Purcell, 549 U.S. at 4. Against that backdrop, few cases could warrant this Court's review more than this extraordinary case arising from a presidential election. In addition, the constitutionality of the process for selecting the President is of extreme national importance. If the Defendants are permitted to violate the requirements of the New Hampshire state and federal Constitutions in the appointment of their presidential electors, the resulting vote of the Electoral College not only lacks constitutional legitimacy, but the Constitution itself will be forever sullied in this state.

35.     Defendants violated not only the Electors Clause, U.S. Const. art. II, § 1, cl. 2, but also the Elections Clause, id. art. I, § 4 (to the extent that the Article I Elections Clause textually applies to the Article II process of selecting presidential electors). Plaintiff and their voters are entitled to a presidential election in which the votes are counted only if the ballots are cast and counted in a manner that complies with the pre-existing laws of each state. See Anderson v. Celebrezze, 460 U.S. 780, 795 (1983) ("for the President and the Vice President of the United States are the only elected officials who represent all the voters in the Nation."). Voters who cast lawful ballots cannot have their votes diminished by states that administered their . . presidential elections in a manner where it is impossible to distinguish a lawful ballot from an unlawful ballot.

36.    The Plaintiff interest and the public interest align. In weighing the public

interest, the Court should consider the importance of maintaining the public's

confidence in election administration through fair elections.

## PROPOSED CONTENTS AND SCOPE OF ORDER

A. This proposed "Order" is designed to prevent a manipulation and fraud of an

   opposing affiliate party's primary candidate vote-tally, but also to prevent a

   political party (Democrat) from unfairly losing their respective voter-base.

   The Plaintiff submits the reasons why this court must issue Expedited

   Injunctive Relief, as follows:

   i.    Defendants David Scanlan, Secretary of State for the state of New

         Hampshire "NH-SOS" and Chris Ager, Chairman of the New Hampshire

         Republican Committee "NH-GOP", "Defendants", on or around June 7th,

         2023, until on or around October 6th, 2023, did permit political

         affiliations (Democrat party and Republican party) to switch their

         political affiliations unlawfully after the state statutory cut-off period of

         June 7th, 2023, in violation of RSA 654:32 *(Hearings on Alterations to*

         *Party Registration)*; RSA 654:34 *(Change of Registration)*, and RSA

         659:14 *(Special Provisions for State and Presidential Primary Elections)*.

   ii.   The Defendants refuse to acknowledge their actions as an error or

         oversight; refuse to correct these actions that violated New Hampshire

state election laws and the New Hampshire and federal constitutions, and are continuing to violate these described New Hampshire election laws into the federal Presidential Primary election of January 23, 2024, the federal congressional primary elections of October 1st, 2024 and the federal general elections of November 6, 2023.

iii. This extension of keeping open political affiliation changes is a big deal because a significant number of political affiliations were reported to have changed during this period, reportedly from Democrat to undeclared and Republican affiliations in a reported scheme to affect the outcome of the Republican primary winner.

**PRAYER FOR RELIEF**

B. **Terms & Corrective Actions:** Defendants must correct their previous election law violations as described *above*, <u>forthwith</u>, in accordance with the following:

1. <u>Option 1</u> — Determine (audit) the number of political affiliate *(Democrat, Republican, Independent, etc)* voters who changed their political affiliations to "undeclared" during the first Wednesday in June, 2023, to October 6th, 2023, in violation of RSA 654:34, and have those "undeclared" voters returned to their previous political party affiliations,[3]

---

[3] It has been reported that the number of "undeclared" changes made were around 3,500.

in order to prevent a manipulation and fraud of an opposing affiliate party's primary candidate vote-tally.

2. The approximate 400 Democrat party affiliates who switched to a Republican party affiliate, from June 7th, 2023, to October 6th, 2023, in violation of RSA 654:34, must be switched back to their original Democrat party.

3. <u>Option 2</u> — The New Hampshire Presidential primary is required to be moved forward from Tuesday, January 23rd, 2024, to the same date as the federal congressional primary of October 1, 2024. This "court order" is made to correct previous political affiliation changes made outside of state law, and to 're-establish' a New Hampshire voter's 'legal' political designation in compliance with state election law RSA 654:34 and those laws as described above, and to be in compliance with both the federal electors clause and federal elections clause.

**Restraints and Order Proposed:**

ii. This Court should first administratively stay or temporarily restrain the Defendant States from voting in the electoral college until further order of this Court and then issue a preliminary injunction or stay against their doing so until the conclusion of this case on the merits.

iii.    To enjoin Defendant David Scanlan, individually and in his official capacity as New Hampshire Secretary of State, his agents, successors and employees, from circumventing, ignoring, or violating any and all New Hampshire election laws under RSA 654:32 *(Hearings on Alterations to Party Registration)*; RSA 654:34 *(Change of Registration)*, and RSA 659:14 *(Special Provisions for State and Presidential Primary Elections.*

iv.    To enjoin Defendant Chris Ager, individually and in his official capacity as chairman of the New Hampshire Republican Committee, his agents, successors and employees, from circumventing, ignoring, or violating any and all New Hampshire election laws under RSA 654:32 *(Hearings on Alterations to Party Registration)*; RSA 654:34 *(Change of Registration)*, and RSA 659:14 *(Special Provisions for State and Presidential Primary Elections.*

v.    To require each of the named Defendants to correct all prior violations of the New Hampshire election laws in the time, manner, and place as proposed by the Plaintiff's *above-options* or determined by this court.

vi.    To require all New Hampshire municipalities to cooperate with Defendant David Scanlan, New Hampshire Secretary of State, or vice-versa, in-as-much-as providing information required to assist in the

court's 'Order' for correcting the above-described statutory election violations — Fed. R. Civ. P. 65(d)(2)(A)(B).

vii.   Expedited Relief is Required pursuant to the existing primary and general election schedules described above, and the following electoral schedule:

(a) December 8 is the safe harbor for certifying presidential electors, 3 U.S.C. § 5;

(b) the electoral college votes on December 14, 3 U.S.C. § 7; and

(c) the House of Representatives counts votes on January 6th, 3 U.S.C. § 15. Absent some form of relief, the defendants will appoint electors based on unconstitutional and deeply uncertain election results, and the House will count those votes on January 6, tainting the election and the future of free elections.

Expedited consideration of this motion for Injunctive Relief is needed to enable the Court to resolve this original action before the applicable statutory deadlines, as well as the constitutional deadline of January 20, 2024, for the next presidential term to commence. U.S. Const. amend. XX, § 1, cl. 1. The Plaintiff respectfully requests that the Court order the Defendants to respond to the motion for Expedited Relief for Injunctive Relief to file by .

The Plaintiff waive the waiting period for reply briefs under Fed. R. Civ. P. 12(a)(1)(A)(i), so that the Court could consider the case on an expedited schedule.

## CONCLUSION

Enjoining or staying Defendants appointment of electors would be an especially appropriate and efficient way to ensure that the eventual appointment and vote of such electors reflects a constitutional and accurate tally of lawful votes, and otherwise complies with the applicable constitutional and statutory requirements in time for the House to act on January 6.

Under the circumstances, it would be appropriate for this Court to issue a preliminary injunction that, during the pendency of this litigation, enjoins the Defendants from continuing their unlawful and unconstitutional behavior in the upcoming primary and general elections. The Plaintiff respectfully request that any alternative remedial process ordered by the Court, other than that proposed by the Defendants, allow for timely enactment of a new plan that complies with New Hampshire law and the New Hampshire constitution.

SWORN TO AND SUBSCRIBED THIS 17th DAY OF NOVEMBER, 2023.

Respectfully submitted,

Wayne Paul Saya, Sr, Plaintiff
*In propria persona*
24 Cadogan Way
Nashua, NH 03062
Waynesaya2@gmail.com
571-220-3344