FILED - USDC -NH
2023 NOV 20 AM11:57

# *UNITED STATES DISTRICT COURT*
# *FOR THE DISTRICT OF NEW HAMPSHIRE*

**Karen Testerman,** ***pro se***

**Lynn-Diane Briggs,** ***pro se***

**Wayne Paul Saya,Sr.,pro** ***se***

*Plaintiffs*

*Vs*

**DAVID SCANLAN**
**SECRETARY OF STATE FOR NEW HAMPSHIRE, et al,**

*Defendants*

*Docket No.23-cv-00499-JL-AJ*

## AMENDED MOTION OF "LYNN-DIANE BRIGGS" FOR EXPEDITED CONSIDERATION FOR PRELIMINARY INJUNCTIVE RELIEF

Lynn-Diane Briggs, *pro se* ("Plaintiff") hereby moves this honorable court, pursuant to District court **LR 7.1(f)**—Request for Expedited Treatment on the Plaintiff's Motion for Preliminary Injunctive Relief pursuant **to LR 65**. The Plaintiff's request for relief was amended today and now submitted to the court pursuant to my complaint on the administration of the 2024 Presidential primary, to be held in 2024, and upcoming general elections by Defendant DAVID SCANLAN, SECRETARY OF STATE FOR NEW HAMPSHIRE, ("NH-SOS"), and Defendant CHRIS AGER, CHAIRMAN OF THE NEW HAMPSHIRE REPUBLICAN COMMITTEE ("NH-GOP"), in their official capacities.

The relevant statutory and constitutional violations engaged by the Defendants, individually and collectively, are 'imminent' and ongoing based upon their current and

continuing unconstitutional non-legislative actions to change state legislative laws that would govern the appointment of U.S. presidential electors?

"The question here presented is one of federal and not state law because the state legislature, in promulgating rules for congressional elections, acts pursuant to a constitutional mandate under the Elections Clause." See Bush , 531 U.S., at 113, 121 S.Ct. 525 (Rehnquist, C. J., concurring) (compliance with the Electors Clause "presents a federal constitutional question").

**ARGUMENT**

1. A preliminary injunction is appropriate where: (1) the plaintiff is likely to succeed on the merits of their claim, (2) the parties are likely to suffer irreparable harm unless the injunction is issued, (3) a balancing of the equities weigh in favor of an injunction, and (4) the injunction is in the public interest. *League of Women Voters of N.C. v. North Carolina, 769 F.3d 224, 236 (4th Cir. 2014). Also compare Weinberger v. Romero—Barcelo, 456 U.S. 305, 311–313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982); Amoco Production Co. v. Gambell, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987).* Other circuits have alternatively looked to a different criterion, consisting of a showing of (1) probable success and the possibility of irreparable injury; or (2) serious questions on the merits and a balance of hardships, (where here the merits are in the Electors Clause claim made by Plaintiff). *See e.g., W.W. Williams Co. v. Google, Inc., 2013 WL 3812079 (S.D. Ohio 2013).*

2. The controversy and constitutional violations are two-fold; **first**, the defendants misused a statute specifically designed for "state offices" for a federal presidential primary. **Secondly**, regardless of whether the statute is for a state or federal primary

election, the defendants violated the New Hampshire *Change of Registration* statute of RSA 654:34-IV, by permitting a change in political affiliations well beyond the first Wednesday of June, setting an unlawful date of October 6, 2023. See "EXHIBIT A"

3. Accordingly, in a reply-memorandum to Norman J. Silber[1] dated October 9 2023, in response to Mr. Silber's request for information under NH RSA 91A, defendant "NH-SOS" indicated:

> *"The current practice of permitting undeclared voters to declare affiliation with the Republican Party and then change back to undeclared or remain in the party after voting has been in place for decades."* See "EXHIBIT B".

4. The plaintiff does not dispute this "current practice" of defendants to the extent that their practice may have been surreptitiously in place for decades, where Defendant NH-SOS claims such an unlawful practice of a voter's political affiliation apparently has been blindly recognized in violation of the state's election law requirement—of the first Wednesday in June until the day before the primary election . See NH RSA 654:34-IV.

> 1. *"No person, who is already registered to vote, whether his party membership has been previously registered or not, shall affiliation with a party or disaffiliate from a party between the first Wednesday in June and the day before the state primary election".* id

5. But, the *above* memorandum continues: *"For me to administer a change related to participation in a primary would require written notice of a rules change from the party chair.*" id "EXHIBIT B".

6. This is the operative sentence where the defendants manipulate, disregard, and confuse New Hampshire state election laws NH RSA 654:34-IV *(above)*; NH RSA

[1] Attorney Norman J. Silber is a former New Hampshire state legislator (2017-18 and 2021-2022) and past Belknap County, NH Republican chair.

659:14-II, and RSA 654:32, because the Defendants appear to use the following NH law to ignore RSA 654:34-IV *above*, where:

> II. *"The secretary of state shall include on the voter instruction cards required by RSA 658:28 whether a party rule has been adopted which* ***permits*** *a person who is registered as an undeclared voter to vote in the party's primary. The party chairman shall notify the secretary of state in writing prior to the filing period for* *state offices* *whether the party has adopted such a rule."* RSA 659:14-II -emphasis supplied

7. Accordingly, RSA 659:14-II *above* is specifically "whether a party rule has been adopted" regarding undeclared voters, not for determining the time, manner and place for such registration.

> Additionally violated by Defendants: RSA 654:32 – **Hearings on Alterations to Party Registration** – *"Before each state or presidential primary election, the supervisors of the checklist shall be in session before each primary for the change of registration of legal voters as provided in RSA 654:34 or 654:34-a or both. Before the presidential primary, the session shall be on the Friday preceding the first day of the filing period, between 7:00 p.m. and 7:30 p.m. and at the discretion of the supervisors for extended hours. . . . . " id*

Accordingly, RSA 654:32 was at no time followed by the Defendants before the Defendants ignored RSA 654:34-IV. See par 2 above.

8. Plaintiff has known Plaintiff Karen Testerman since around 2005.

9. Since around July of 2023, the Plaintiff was the Plaintiff was aware of talk and rumors of state law violations regarding the changing of party affiliations.

10. As described in Plaintiff's "Declaration", co-Plaintiff Karen Testerman shared with her attempts to address and correct—what she was led to believe—was a GOP bylaw issue as opposed to a state law issue, but later had learned it was more than just a GOP issue regarding policy.

11. Plaintiff later learned through co-Plaintiff Testerman that Defendant Chris Ager had met with Defendant David Scanlan on a couple of occasions which included the party affiliation cut-off date, and Plaintiff was aware that co-Plaintiff Testerman was making strong efforts to resolve the issue.

12. Plaintiff was not aware of certain particular details at this time other than GOP by-laws and resolutions were being attempted by co-Plaintiff Testerman to resolve the closing of party affiliation changes, before she confirmed that the issue was actually that of a breaking of state election laws.

13. Later, Plaintiff became distressed and upset when she was shown an "email" from the Secretary of state's office, Defendant David Scanlan, dated September 13th, 2023, to the cities and towns of New Hampshire, that included all supervisors EXHIBIT "A".

14. Shortly thereafter, Plaintiff had occasion to talk with a Nashua friend, Wayne Saya, "co-Plaintiff Saya", who she knew was educated in government regulatory law after he appeared on Plaintiff's social media platform on a number of occasions since late 2022.

15. During the Plaintiff's discussion with co-Plaintiff Saya regarding this GOP controversy, she had become more disturbed after learning the ramifications of Defendant Scanlan's office memo.

16. Later the Plaintiff read a number of news articles outlining how "newly" undeclared voters could interfere with the New Hampshire Republican Presidential Primary. "EXHIBIT C"

17. It was at this point that the Plaintiff realized her vote-selection for the Presidential primary had become virtually meaningless, if not entirely a worthless effort.

*18.* When the Plaintiff became aware of the letter authored by Plaintiff and Merrimack County GOP chairperson, Karen Testerman, that was sent to Defendant Chris Ager, *See* "EXHIBIT D", she was more convinced there were major legal election implications involved, because a legal restraining order to enjoin defendant Chris Ager was requested by co-Plaintiff Karen Testerman for, among other legal election concerns, requiring a restraining order from continuing or acknowledging this *above* practice of requiring a letter to "stop" party affiliation changes that is not required, and which violates RSA 654:34-IV of the state's *change in registration* and election laws regarding time, manner, and place.

19. The Plaintiff believes, when you have a state government that believes any election law can be broken without consequence for the sake of convenience or strategy, her one vote becomes null-and-void.

20. Because of these open and visible state elections violations, the defendants have put into question the 'accuracy' and 'validity' of the vote tally for the New Hampshire Presidential primary election. See "EXHIBIT C"

21. As a consequence, any Electoral College votes cast by such presidential electors appointed for the State of New Hampshire will be in violation of both the 'Electors

Clause' and the 'Elections Clause' and the Fourteenth Amendment of the U.S. Federal Constitution as described.

22. Among the state and federal statutes defined in this complaint; causing the procurement or submission of voter applications or registrations in any election, or of the tabulation of ballots in federal elections, that are materially defective under applicable state law also violate the federal criminal penalty code of 52 U.S.C. §20511(2)(A)(B).[2]

23. However, the defendants violated not only the Electors Clause, U.S. Const. art. II, § 1, cl. 2, but also the Elections Clause, id. art. I, § 4 (to the extent that the Article I Elections Clause textually applies to the Article II process of selecting presidential electors). Plaintiff and their voters are entitled to a presidential election in which the votes are counted only if the ballots are cast and counted in a manner that complies with the pre-existing laws of each state. See Anderson v. Celebrezze, 460 U.S. 780, 795 (1983) ("for the President and the Vice President of the United States are the only elected officials who represent all the voters in the Nation."). Voters who cast lawful ballots cannot have their votes diminished by states that administered their . . presidential elections in a manner where it is impossible to distinguish a lawful ballot from an unlawful ballot.

24. The only cure for this kind of constitutional violation, without placing into jeopardy New Hampshire's first-in-the-nation status, and the right of each U.S. citizen to vote, is to return those approximate 3,500-4,000 political affiliates (Democrat, Republican, etc) whom changed their political affiliations to "undeclared" within the first

[2] Title 52-VOTING AND ELECTIONS, Subtitle II-Voting Assistance and Election Administration, CHAPTER 205-NATIONAL VOTER REGISTRATION

Wednesday of June (June 7, 2023) to the unlawfully designated date of October 6, 2023, 'back' to the political party affiliation they were originally designated to before June 7, 2023.

25. And those approximate 400 Democrat party affiliates who switched to a Republican party affiliate, must be switched back to their original Democrat party.

26. In the alternative, the New Hampshire Presidential primary would unfortunately need to be moved forward (under court order for 2024) to the same date as the federal congressional primary of October 1, 2024. Accordingly, because no change of political affiliations can take place after the congressional primary and before the General election (around five weeks later) on November 5, 2024, this "court order" would be made to 're-establish' a New Hampshire voter's 'legal' political designation in compliance with state election law RSA 654:34.

**27.** This "nuclear option" would have all party affiliations to be where they belong, since party affiliations (democrat or republican) will want to vote for their party's congressional candidate, and not strictly for another party's presidential candidate.

**Validity of the State's Congressional and General Elections Are in Jeopardy.**

28. The Defendants have shown no effort to listen to reason regarding the integrity and ethics of New Hampshire's Presidential primary election, where they continue to openly violate New Hampshire state election laws NH RSA 654:34:IV and NH RSA 659:14-II. It is therefore a deep concern of the Plaintiff that the Defendants will circumvent, modify, or simply violate the original intent of the New Hampshire legislature's election laws *(as stated above)* for the upcoming Presidential and congressional primary and general elections.

29. Simply, Plaintiff does not believe the Defendants will follow the New Hampshire laws as written for the upcoming federal congressional and general election.

30. Whereas, the Plaintiff believes that a schedule, offered by Plaintiff within this motion, must be **Ordered** by this court, where such a schedule conforms with New Hampshire election laws.

**Alternatively, this Case Deserves Limited Summary Disposition**

31. In lieu of granting interim relief, this Court could simply reach the merits summarily - Fed. R. Civ. P. 65(a)(2). Two things are clear from the evidence presented at this initial phase: (1) non-legislative actors modified and ignored the New Hampshire Presidential primary election statutes; and (2) the resulting uncertainty casts doubt on the lawful winner. Those two facts are enough to decide the merits of the Electors and Elections Clause claims. The Court should "Stay" any and all appointments and impending certifications of presidential electors, pending a resolve to this controversy.

**I. Likelihood of Success on the Merits**

32. In light of the evidence in the record here, where the Defendants did in-fact openly ignore the *Change of Registration* law of RSA 654:34-IV, continues to misapply the *Special Provisions for State and Presidential Primary Elections* law of RSA 659:14, and made no attempts to follow RSA 654:34 *Hearings on Alterations to Party Registration*, and in concert with the recent U.S. Supreme court's elections ruling in *Moore v. Harper, 595 U.S. 1 (2022); 142 S. Ct. 1089*, there appears to be no viable defense that Defendants can offer, other than their actions being that of an oversight.

33. The Elections Clause of the Federal Constitution requires "the Legislature" of each State to prescribe the rules governing federal elections. Art. I, §4, cl. 1.—*Syllabus of Moore v Harper (above).*

34. Here, the Defendants run opposite of the language and constitutional requirement outlined in *Moore v Harper*, where it is written that the Elections clause could have said that these rules are to be prescribed "by each State," which would have left it up to each State to decide which branch, component, or officer of the state government should exercise that power, as States are generally free to allocate state power as they choose. But, according to *Moore v Harper*, . . but " that is not what the Elections Clause says. Its language specifies a particular organ of a state government, and we must take that language seriously." Emphasis supplied - *See Moore v Harper, above*

**II. Plaintiff will suffer irreparable harm if the Defendants unconstitutional presidential electors vote in the Electoral College.**

35. Allowing the unlawful and unconstitutional election to move forward without resolving this controversy and permit the Defendants to proceed would irreparably harm the Plaintiff and the Republic both by denying representation in the Presidency by permanently sowing distrust in New Hampshire's federal elections. This Court has found such threats to constitute irreparable harm on numerous occasions. The Plaintiff submits the stakes in this case are too high to ignore.

36. Being forced to implement an unconstitutional enactment can justify an injunction to prevent that result. See, e.g., Morales v. Trans World Airlines, Inc., 504 U.S. 374, 380-81 (1992).

### III. The Balance of Equities Tips to the Plaintiff.

37. New Hampshire represents citizens who will vote in the 2024 presidential election. Because of the Defendants unconstitutional actions, the Defendants represent some citizens who cast ballots not in compliance with both the *Electors Clause* and the *Elections Clause*. However, it would irreparably harm the Plaintiff if the Court denied interim relief. In addition to ensuring that the 2023 primaries and 2024 Presidential Primary election is resolved in a manner consistent with the Constitution, this Court must review the violations that occurred with the Defendants to enable Congress and State legislatures to avoid future chaos and constitutional violations. Unless this Court acts to review this federal and presidential election, these unconstitutional and unilateral violations of state election laws will continue in the future.

### IV. The Public Interest Favors Interim Relief.

38. Here, the Plaintiff (as well as the public-at-large) has a "personal stake" in the outcome of this complaint. *Baker v. Carr, 369 U. S. 186, 204* (1962), as cited in *Moore v Harper, above*.

39. When parties dispute the lawfulness of government action, the public interest collapses into the merits. ACLU v. Ashcroft, 322 F.3d 240, 247 (3d Cir. 2003); Washington v. Reno, 35 F.3d 1093, 1103 (6th Cir. 1994); League of Women Voters of the United States v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016). If the Court agrees with the Plaintiff that non-legislative actors lack authority to amend state statutes for selecting presidential electors, the public interest requires interim relief.

40. Withholding relief would leave a taint over the election, disenfranchise the Plaintiff and the voters pursuant to the 'one person one-vote' rule, and lead to still more

electoral deftness in future elections. Electoral integrity ensures the legitimacy of not just our governmental institutions, but the Republic itself. See Wesberry, 376 U.S. at 10. "Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." Purcell, 549 U.S. at 4. Against that backdrop, few cases could warrant this Court's review more than this extraordinary case arising from a presidential election. In addition, the constitutionality of the process for selecting the President is of extreme national importance. If the Defendants are permitted to violate the requirements of the New Hampshire state and federal Constitutions in the appointment of their presidential electors, the resulting vote of the Electoral College not only lacks constitutional legitimacy, but the Constitution itself will be forever sullied in this state.

41. Defendants violated not only the Electors Clause, U.S. Const. art. II, § 1, cl. 2, but also the Elections Clause, id. art. I, § 4 (to the extent that the Article I Elections Clause textually applies to the Article II process of selecting presidential electors). Plaintiff and their voters are entitled to a presidential election in which the votes are counted only if the ballots are cast and counted in a manner that complies with the pre-existing laws of each state. See Anderson v. Celebrezze, 460 U.S. 780, 795 (1983) ("for the President and the Vice President of the United States are the only elected officials who represent all the voters in the Nation."). Voters who cast lawful ballots cannot have their votes diminished by states that administered their . . presidential elections in a manner where it is impossible to distinguish a lawful ballot from an unlawful ballot.

42. The Plaintiff interest and the public interest align. In weighing the public interest, the Court should consider the importance of maintaining the public's confidence in election administration through fair elections.

**PROPOSED CONTENTS AND SCOPE OF ORDER**

A. This proposed "Order" is designed to prevent a manipulation and fraud of an opposing affiliate party's primary candidate vote-tally, but also to prevent a political party (Democrat) from unfairly losing their respective voter-base. The Plaintiff submits the reasons why this court must issue Expedited Injunctive Relief, as follows:

i. Defendants David Scanlan, Secretary of State for the state of New Hampshire "NH-SOS" and Chris Ager, Chairman of the New Hampshire Republican Committee "NH-GOP", "Defendants", on or around June 7th, 2023, until on or around October 6th, 2023, did permit political affiliations (Democrat party and Republican party) to switch their political affiliations unlawfully after the state statutory cut-off period of June 7th, 2023, in violation of RSA 654:32 *(Hearings on Alterations to Party Registration)*; RSA 654:34 *(Change of Registration)*, and RSA 659:14 *(Special Provisions for State and Presidential Primary Elections)*.

ii. The Defendants refuse to acknowledge their actions as an error or oversight; refuse to correct these actions that violated New Hampshire state election laws and the New Hampshire and federal constitutions, and are continuing to violate these described New Hampshire election laws into the federal Presidential Primary election of January 23, 2024, the federal congressional primary elections of October 1st, 2024 and the federal general elections of November 6, 2023.

iii. This extension of keeping open political affiliation changes is a big deal because a significant number of political affiliations were reported to have changed during this period, reportedly from Democrat to undeclared and Republican affiliations in a reported scheme to affect the outcome of the Republican primary winner.

**PRAYER FOR RELIEF**

B. **Terms & Corrective Actions:** Defendants must correct their previous election law violations as described *above*, forthwith, in accordance with the following:

1. Option 1 — Determine (audit) the number of political affiliate *(Democrat, Republican, Independent, etc)* voters who changed their political affiliations to "undeclared" during the first Wednesday in June, 2023, to October 6th, 2023, in violation of RSA 654:34, and have those "undeclared" voters returned to their previous political party affiliations,[3] in order to prevent a manipulation and fraud of an opposing affiliate party's primary candidate vote-tally.
2. The approximate 400 Democrat party affiliates who switched to a Republican party affiliate, from June 7th, 2023, to October 6th, 2023, in violation of RSA 654:34, must be switched back to their original Democrat party.
3. Option 2 — The New Hampshire Presidential primary is required to be moved forward from Tuesday, January 23rd, 2024, to the same date as the federal congressional primary of October 1, 2024. This "court order" is made to correct previous political affiliation changes made outside of state law, and to 're-establish' a New Hampshire voter's 'legal' political designation in compliance with state election law RSA 654:34 and those laws as described

[3] It has been reported that the number of "undeclared" changes made were around 3,500.

above, and to be in compliance with both the federal electors clause and federal elections clause.

**Restraints and Order Proposed:**

ii. This Court should first administratively stay or temporarily restrain the Defendant States from voting in the electoral college until further order of this Court and then issue a preliminary injunction or stay against their doing so until the conclusion of this case on the merits.

iii. To enjoin Defendant David Scanlan, individually and in his official capacity as New Hampshire Secretary of State, his agents, successors and employees, from circumventing, ignoring, or violating any and all New Hampshire election laws under RSA 654:32 *(Hearings on Alterations to Party Registration)*; RSA 654:34 *(Change of Registration)*, and RSA 659:14 *(Special Provisions for State and Presidential Primary Elections.*

iv. To enjoin Defendant Chris Ager, individually and in his official capacity as chairman of the New Hampshire Republican Committee, his agents, successors and employees, from circumventing, ignoring, or violating any and all New Hampshire election laws under RSA 654:32 *(Hearings on Alterations to Party Registration)*; RSA 654:34 *(Change of Registration)*, and RSA 659:14 *(Special Provisions for State and Presidential Primary Elections.*

v. To require each of the named Defendants to correct all prior violations of the New Hampshire election laws in the time, manner, and place as proposed by the Plaintiff's *above-options* or determined by this court.

vi. To require all New Hampshire municipalities to cooperate with Defendant David Scanlan, New Hampshire Secretary of State, or vice-versa, in-as-much-as providing information required to assist in the court's 'Order' for correcting the above-described statutory election violations — Fed. R. Civ. P. 65(d)(2)(A)(B).

vii. Expedited Relief is Required pursuant to the existing primary and general election schedules described above, and the following electoral schedule:

(a) December 8 is the safe harbor for certifying presidential electors, 3 U.S.C. § 5;

(b) the electoral college votes on December 14, 3 U.S.C. § 7; and

(c) the House of Representatives counts votes on January 6th, 3 U.S.C. § 15. Absent some form of relief, the defendants will appoint electors based on unconstitutional and deeply uncertain election results, and the House will count those votes on January 6, tainting the election and the future of free elections.

Expedited consideration of this motion for Injunctive Relief is needed to enable the Court to resolve this original action before the applicable statutory deadlines, as well as the constitutional deadline of January 20, 2024, for the next presidential term to commence. U.S. Const. amend. XX, § 1, cl. 1. The Plaintiff respectfully requests that the Court order the Defendants to respond to the motion for Expedited Relief for Injunctive Relief to file by .

The Plaintiff waive the waiting period for reply briefs under Fed. R. Civ. P. 12(a)(1)(A)(i), so that the Court could consider the case on an expedited schedule.

## CONCLUSION

Enjoining or staying Defendants appointment of electors would be an especially appropriate and efficient way to ensure that the eventual appointment and vote of such electors reflects a constitutional and accurate tally of lawful votes, and otherwise complies with the applicable constitutional and statutory requirements in time for the House to act on January 6.

Under the circumstances, it would be appropriate for this Court to issue a preliminary injunction that, during the pendency of this litigation, enjoins the Defendants from continuing their unlawful and unconstitutional behavior in the upcoming primary and general elections. The Plaintiff respectfully request that any alternative remedial process ordered by the Court, other than that proposed by the Defendants, allow for timely enactment of a new plan that complies with New Hampshire law and the New Hampshire constitution.

SWORN TO AND SUBSCRIBED THIS 20th DAY OF NOVEMBER, 2023.

Respectfully submitted,

Lynn-Diane Briggs, Plaintiff, pro se
4 Golden Pond Lane
Amherst, New Hampshire 03031
Lynbdance@gmail.com
603-801-6886

# CERTIFICATE OF SERVICE

I, Lynn-Diane Briggs, pro se, have caused to deliver the named Plaintiff's PROTECTIVE ORDER GOVERNING CONFIDENTIAL DOCUMENTS AND INFORMATION, and ATTACHMENT "A" - ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND, and the foregoing documents have been served upon the following Defendants and Plaintiffs, certified mail and U.S. postage pre-paid:

David Scanlan, Defendant
Secretary of State of New Hampshire
C/O: Brendan Avery O'Donnell
NH Department of Justice (Concord)
33 Capitol St
Concord, NH 03301
603-271-3650
Fax: 603-271-2110
Email: brendan.a.odonnell@doj.nh.gov

Chris Ager, Defendant
Chairman
New Hampshire Republican State Committee
10 Water St, Concord, New Hampshire 03301

And served upon the following Plaintiffs:

Karen Testerman, Plaintiff, *pro se*
9 Stone Avenue
Franklin, New Hampshire 03235
Karen@KarenTesterman.com
603-801-6886

Wayne Paul Saya, Plaintiff, *pro se*
24 Cadogan Way
Nashua, NH 03062
waynesaya2@gmail.com
571-220-3344 mobile

SWORN TO UNDER PAINS AND PENALTIES OF PERJURY this 20th day of November, 2023.

Lynn-Diane Briggs, Plaintiff, *pro se*
4 Golden Pond Lane
Amherst, New Hampshire 03031
Lynbdance@gmail.com
603-801-6886