UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| KAREN TESTERMAN LYNN-DIANE BRIGGS and WAYNE PAUL SAYA SR.,<br><br>    Plaintiffs<br><br>v.<br><br>DAVID SCANLAN, SECRETARY OF STATE FOR NEW HAMPSHIRE and CHRIS AGER, NEW HAMPSHIRE REPUBLICAN STATE COMMITTEE<br><br>    Defendants | Case No. 1:23-cv-00499-JL-AJ |

## DEFENDANTS CHRIS AGER AND THE NEW HAMPSHIRE REPUBLICAN STATE COMMITTEE'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Defendants Chris Ager[1] and the New Hampshire Republican State Committee (jointly, the "NHRSC"), by and through their attorneys, Cleveland, Waters and Bass, P.A., hereby submit this memorandum of law in support of the NHRSC's motion to dismiss the plaintiffs' complaint.

### I. Introduction

The gravamen of the plaintiffs' complaint is that the New Hampshire Secretary of State and the NHRSC colluded to violate RSA 654:34, IV, with the result that New Hampshire voters were impermissibly allowed to change their registered party affiliation during the period from

---

[1] While the case caption suggests that Mr. Ager is being sued in his official capacity as the chair of the New Hampshire Republican State Committee, the allegations of the complaint are somewhat ambiguous. Cf. Doc. No. 1 at ¶41 (Ager sued in his official and individual capacities) with *id.* at 2 (introduction naming "NH-GOP [sic]" as the defendant) and ¶55 (referring to "NH-GOP [sic]" as the defendant); *see also id.* at ¶22 (only allegation in complaint imputing conduct to Mr. Ager as "reportedly" presenting a letter to the secretary of state.) Given the ambiguity, this motion seeks dismissal on behalf of both Mr. Ager individually and the New Hampshire Republican State Committee.

June 7 through October 6, 2023.  The plaintiffs have failed, however, to allege facts establishing

that they have sustained a cognizable injury in fact as a result of the NHRSC's alleged conduct

or that their alleged injury is redressable by the NHRSC.  As a matter of law, then, they lack

standing and the court must dismiss the complaint for lack of jurisdiction.  In addition, because,

among other things, (1) the legal predicate of the complaint is the plaintiffs' misreading of RSA

654:34, IV, (2) they fail to allege in Count I how RSA 654:34, IV governs the selection or

nomination of presidential electors (3) the statute on which they rely for Count II does not create

a private cause of action, (4) they fail to allege in Count III different treatment under the law of

similarly situated parties, and (5) they fail to allege in Count IV the facts necessary to establish

the requisite "patent and fundamental unfairness" of the impending presidential primary, the

complaint fails to state a claim on which relief can be granted.[2]

## II.    Statement of Facts

The plaintiffs filed this lawsuit on November 7, 2023, seeking either to compel the

defendants to rescind any changes in registered party affiliation by voters during the period of

June 7 through October 6, 2023 (the "Affiliation Change Period"), or to defer the presidential

primary to October of 2024.  Doc. No. 1 at page 24; Doc. No. 20 at page 14; Doc. No. 21 at

pages 16-17; Doc. No. 22 at pages 14-15.[3]

The only facts they allege to support the existence of an injury are that the cohort of

voters who changed their party affiliation during the Affiliation Change Period would "dilute"

the votes of the plaintiffs and other unnamed Republican primary voters.  Doc. No. 1 at ¶¶30, 63,

68. They do not allege that they know how these voters will vote in the primary, nor do they

---

[2] The plaintiffs also fail to allege that the NHRSC is a state actor against which equal protection and due process claims will lie.

[3] The NHRSC cites to the pages of the complaint and the motions for preliminary injunctive relief here because paragraph numbers are not included in the plaintiffs' prayers for relief.

allege any facts upon which the court could rely to determine whether these voters will vote for the plaintiffs' favored candidates or a competing candidate.

According to the complaint, the NHRSC allegedly colluded with the Secretary to allow voters to change their party affiliations in contravention of RSA 654:34, IV.  Doc. No. 1 at ¶22, 33. The only specific conduct the plaintiffs allege to support the claim of collusion is that Mr. Ager "reportedly" sent a letter to the Secretary thereby "adhering to" the Secretary's "unlawful letter requirement."  Doc. No. 1 at ¶22.   There is no allegation that the Secretary's decision to allow voters to change their party registration during the Affiliation Change Period was dependent upon or even affected by the letter Mr. Ager reportedly sent or that the NHRSC is a state actor against which constitutional rights may be enforced.  Neither is there any allegation that the NHRSC has the authority to prevent the Secretary from allowing changes in party registration or that the NHRSC could, if ordered by the court, effectuate a rescission of the changes in registration taking place during the Affiliation Change Period or reschedule the presidential primary as the plaintiffs request.

### III.   Argument

#### A.  Standing

To maintain an action before this court, a plaintiff must establish standing.  U.S. Const. art. III, § 2, cl. 1; *see also Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Castro v. Scanlan*, 2023 WL 8078010 (1st Cir. 2023).  "Those who do not possess Art. III standing may not litigate as suitors in the courts of the United States." *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475-76 (1982).  The burden rests with the plaintiffs to establish "sufficient factual matter to plausibly demonstrate [their] standing to bring the action." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 731 (1st Cir. 2016).  In considering

a motion to dismiss for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1), the court "accept[s] as true all well-pleaded factual averments in the plaintiff's complaint and indulge[s] all reasonable inferences therefrom in [their] favor." *Katz v. Pershing, LLC,* 672 F.3d 64, 70 (1st Cir. 2012) (quotations and ellipsis omitted).

Standing implicates both constitutional and prudential considerations: "constitutional limitations on federal court jurisdiction and prudential limitations on its exercise." *Benjamin v. Aroostook Medical Center, Inc.*, 57 F.3d 101, 104 (1st Cir. 1995). The constitutional limitations derive from the requirement that federal courts may only adjudicate a "justiciable case or controversy." *Dubois v. U.S. Dep't. of Agric.*, 102 F. 3d 1273, 1280-81 (1st Cir. 1996), *citing* U.S. Const. art. III. To satisfy the constitutional standing requirements, the plaintiff must establish that:

(1)   it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;

(2)   the injury is fairly traceable to the challenged action of the defendant; and

(3)   it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Becker v. Federal Election Commission*, 230 F.3d 381, 384-85 (1st Cir. 2000). By contrast, the prudential standing limitations prevent a court from adjudicating "questions of broad social import where no individual rights would be vindicated and . . . [act to] limit access to the federal courts to those litigants best suited to assert a particular claim." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985), *quoting Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99-100, (1979).

The plaintiffs lack standing to bring any of the claims because their factual allegations amount to nothing more than generalized grievances about governmental action. They have not

sufficiently alleged or described an injury in fact to themselves that is concrete and particularized. Nor have they established that any alleged injury is fairly traceable to the actions of the NHRSC or that the NHRSC could redress the alleged injury. It would also transgress the prudential limits on standing to allow the plaintiffs to proceed because – fairly characterized -- the relief they seek is purely of "broad social import" without any demonstrated vindication of any right held by plaintiffs. *See Conservation Law Foundation of New England, Inc. v. Reilly*, 950 F.2d 38, 41 (1st Cir. 1991) ("prudential standing limitations prevent a court from adjudicating questions of broad social import where no individual rights would be vindicated and … limit access to the federal courts to those litigants best suited to assert a particular claim.") (internal quotation marks omitted).

### 1.  The plaintiffs have not alleged a concrete and particularized injury

The most fundamental of standing requirements is that the plaintiffs must have a concrete and particularized injury; a generalized grievance about governmental action which does not personally affect the plaintiffs is insufficient to confer standing. *See Gill v. Whitford*, 585 U.S. ___, 138 S. Ct. 1916, 1930 (2018). Here, the plaintiffs frame their injury as one of vote dilution, where their votes are being diluted with invalid votes.[4] Doc. No. 1 at ¶¶63, 68.

To successfully allege standing under a vote-dilution theory, the plaintiffs must "allege facts showing disadvantage to themselves as individuals." *Lyman v. Baker*, 954 F.3d 351, 361 (1st Cir. 2020) (*quoting Gill*, 138 S. Ct. at 1929). It is not enough for the plaintiffs to allege that vote dilution occurs as a result of an invalid vote being cast. *See Wood v. Raffensperger*, 981

---

[4] The plaintiffs also appear to allege version of an emotional distress harm that "the Plaintiffs are retaining knowledge of their prospective Presidential candidate being negatively and unfairly compromised from this unfair and unlawful practice." Doc. No. 1 at ¶63. While the plaintiffs might perceive this as a harm, claims for emotional distress are only available in tort claims where some sort of physical injury is present. *See Palmer v. Nan King Restaurant, Inc.*, 147 N.H. 681, 683-84 (2002).

F.3d 1307, 1314-15 (11th Cir. 2020) ("no single voter is specifically disadvantaged if a vote is counted improperly, even if the error might have a mathematical impact on the final tally and thus on the proportional effect of every vote."). Rather, the plaintiffs must show that they are disadvantaged in a different way than every other voter. *Id.* Indeed, the Eleventh Circuit noted in *Wood* that, although "vote dilution can be a basis for standing… it requires a point of comparison. For example, in the racial gerrymandering and malapportionment contexts, vote dilution occurs when voters are harmed compared to irrationally favored voters from other districts." *Id.* (internal quotation marks omitted). Put another way, a wrongfully cast ballot undoubtedly cancels another ballot in a colloquial and theoretical sense, but it cannot ordinarily be said to cancel a particular individual's ballot such that that individual would have standing to challenge it. Hence, the law deems a wrongfully cast ballot as dilutive in the sense that its effect is typically offset by all countervailing ballots, and no individual voter is harmed.

In *Lyman*, the most recent First Circuit case addressing the vote dilution theory, the First Circuit analyzed whether the plaintiffs had standing to bring claims against Massachusetts based on its winner-take-all system for allocating presidential electors. *Lyman*, 954 F.3d at 360-61. In Masschusetts, all of its presidential electors are allocated to the winner of the state's presidential election. *Id.* at 355-56. At the time of the First Circuit's decision, prior to the general election in 2020, the presidential electors were unanimously awarded to the Democratic candidate. *Id.* The plaintiffs claimed this allocation of presidential electors solely to the Democratic candidate violated their equal protection right of "one-person, one vote" and the way in which Massachusetts selected its presidential electors therefore injured the plaintiffs in the form of diluting the strength of their votes. *Id.* at 361. The First Circuit agreed that the plaintiffs sufficiently alleged a concrete and particularized injury where the plaintiffs alleged their votes

would be given no weight. *Id.* at 362. Thus, the plaintiffs in *Lyman* were able to demonstrate that the winner-take-all system arguably had the effect of rendering their votes a nullity because the president is elected by the electoral college, not the popular vote, and if the procedure for selection of electors does not reflect the popular vote it disenfranchises the minority.

A government action that demonstrably nullifies the vote of an identifiable voter or class of voters, then, is enough to satisfy the injury-in-fact requirement.  By contrast, courts that have considered the voter dilution theory of standing in the broader context of actions brought to ensure that only legal votes are counted have dismissed such claims for lack of standing where the plaintiffs failed to show that an unlawful ballot would nullify their own ballots and the injury was one that affected all voters and not an identifiable individual. *See, e.g., Wood*, 981 F.3d at 1314-15; *see also Feehan v. Wisconsin Elections Commission*, 506 F. Supp. 3d 596, 608-09 (E.D. Wis. 2020); *Donald Trump for President, Inc. v. Cegavske*, 488 F. Supp. 3d 993, 1000 (D. Nev. 2020); *Martel v. Condos*, 487 F. Supp. 3d 247, 252-53 (D. Vt. 2020); *Moore v. Circosta*, 494 F. Supp. 3d 289, 312-13 (M.D.N.C. 2020); *Am. Civil. Rights Union v. Martinez-Rivera*, 166 F. Supp. 3d 779, 789 (W.D. Tex. 2015).

Under these standards, the plaintiffs' allegations are insufficient to confer standing. Even if the plaintiffs are correct that a cohort of voters will be allowed to vote in the Republican presidential primary because they unlawfully changed their party affiliation during the Affiliation Change Period, the plaintiffs have not alleged that the votes of that cohort will nullify their own.  Indeed, it would be unalloyed speculation to assume that nullification of the plaintiffs' votes will take place because it is unknowable how that cohort will vote.  And if the plaintiffs could get past this obstacle and demonstrate that one or more of the voters in the cohort will vote differently from the way plaintiffs will vote, as a matter of law those conflicting votes

would not give plaintiffs standing because the allegedly unlawful votes injure all voters, not identifiable individuals.  Because the plaintiffs have not alleged a legally cognizable injury in fact they lack standing and their complaint must be dismissed.

**2.   The plaintiffs' alleged injury is not fairly traceable to the actions of the NHRSC**

If the plaintiffs have alleged a cognizable injury – which they have not -- their injury must be fairly traceable to the actions of the NHRSC to serve as a basis for standing. *See Wiener v. MIB Group, Inc.*, 86 F.4th 76, 84 (1st Cir. 2023) ("the causation prong [i.e., traceability] requires that the plaintiff's injury be fairly traceable to the defendant's conduct, rather than the result of independent action by some other party."). Here, the plaintiffs have not alleged that the NHRSC took any action that caused the Secretary to allow voters to change their registration during the Affiliation Change Period.

Plaintiffs have alleged only that Mr. Ager "reportedly" sent a letter to the Secretary that "adher[ed]" to the Secretary's "unlawful" letter requirement.  Doc. No. 1 at ¶22.  They have not alleged that the letter Mr. Ager reportedly sent affected in any way the Secretary's decision to allow changes in registration.  Nor have they alleged that the NHRSC has any authority to decide when changes in registration will take place.  To the extent the plaintiffs allege harm, then, it is not traceable to the NHRSC and they therefore lack standing to pursue their claims against the NHRSC.

**3.   The plaintiffs' alleged injury cannot be redressed by the NHRSC**

An injury is redressable if "the plaintiff request[s] relief that is likely to remedy their [sic] injury." *Wiener*, 86 F. 4th at 84. Although, the plaintiffs have requested the court to order the defendants to reverse the allegedly illegal party affiliation changes or move the date of the primary, the NHRSC cannot provide that relief. Any order by this court requiring the NHRSC to

do so would be fruitless because the plaintiffs have not alleged that the NHRSC has the legal authority to invalidate the changes in party registrations or set a new primary date.  Because the plaintiffs' alleged injury cannot be redressed by the NHRSC they have no standing as against the NHRSC and their complaint must be dismissed.

### 4.   The prudential limits on standing preclude the plaintiffs from maintaining this action

Finally, the prudential limits on standing counsel that this court should dismiss the plaintiffs' claims because the relief they seek is of a broad social import and will not vindicate any individualized right or interest held by the plaintiffs. *See Conservation Law Foundation of New England, Inc.,* 950 F.2d at 41. The plaintiffs have requested that the Secretary be ordered to either reverse all the party affiliation changes which occurred during the Affiliation Change Period or move the presidential primary to coincide with the state primary. Doc. No. 1 at 23-25; *see also* Doc No. 20 at 14-15; Doc. No. 21 at 16-17; Doc. No. 22 at 14. This relief would have broad, incalculable impacts on settled practices surrounding the presidential primary and the reliance interests of those voters who changed their registrations during the Affiliation Change Period[5].

This proposed relief is not targeted at protecting the plaintiffs' individual rights. Rather, the plaintiffs request the court to change New Hampshire's longstanding election procedures at the eleventh hour based only on a generalized claim that the Secretary and NHRSC have violated state law. The plaintiffs have no individualized interest at stake, and the relief requested will not remedy any possible injury; the relief requested could only remedy a generalized interest in

---

[5] It is worth noting that none of these voters is a party to these proceedings.  None of them therefore has notice that their change in registration is being challenged.

following the letter of the law.  When weighed against the disruption and confusion plaintiffs'

requested relief would engender, it would be imprudent to accord them standing in this case.

B.  *Failure to State a Claim*

Assuming the plaintiffs can establish their standing, the complaint must still state a claim

upon which relief can be granted to survive a motion to dismiss.  Fed. R. Civ. P. 12(b)(6).  When

ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all well-pleaded

facts set out in the complaint and indulge all reasonable inferences in favor of the pleader."  *SEC*

*v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010).  The complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief," and it must allege each of

the elements of the cause of action and "contain sufficient factual matter, accepted as true, to

state a claim to relief that is plausible on its face."  Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citation and internal punctuation omitted).  Thus, "a plaintiff's obligation

to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007) (internal brackets omitted).  If the facts asserted in the

complaint are "too meager, vague, or conclusory to remove the possibility of relief from the

realm of mere conjecture" then the court must dismiss the claim.  *Tambone*, 597 F.3d at 442.

1.  **All of the plaintiffs' claims fail to state a claim because they are all predicated upon a misreading of RSA 654:34, IV.**

All of the plaintiffs' claims must be dismissed because they misread RSA 654:34, IV as

prohibiting party affiliation changes prior to the presidential primary. RSA 654:34, IV only

prohibits party affiliation changes prior to the "state primary election." There is no mention in

this statute that the prohibition applies to presidential primaries. Furthermore, there is no

indication in New Hampshire's election laws that "state primary election" equivocates to

"presidential primary." In fact, New Hampshire's election laws do not treat a "state primary election" the same as "presidential primary"; rather, these phrases are treated as distinct events with different processes and dates associated with each. RSA § 654:32 (requiring the supervisors of the checklists at different times in relation to the "state primary election" and the "presidential primary"); *compare* RSA § 653:8 (setting a date for the "state primary election") *with* RSA § 653:9 (setting a different date than the state primary election for the "presidential primary").

The plaintiffs have not provided any reason why RSA 654:34, IV should be applied in this case where no mention of "presidential primary" is made. Based on the above referenced statutes, there is no reason to conclude that RSA 654:34, IV has any bearing on the presidential primary. As a result, all of the plaintiffs' claims must be dismissed because they have misread the applicability of RSA 654:34, IV.

2. **The plaintiffs have failed to state a claim under Count I because changing party affiliations does not affect the manner in which presidential electors are selected.**

Under Count I, the plaintiffs allege that the Secretary and NHRSC violated the Electors Clause by changing the procedure for voters to change their party affiliation. Doc. No. 1 at ¶¶48-54. The plaintiffs claim this violates the Electors Clause because the legislative body, the General Court of New Hampshire, is the only entity permitted to direct the selection of electors for the President of the United States.  Doc. No. 1 ¶¶33, 49.

The Electors Clause states in pertinent part that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress." U.S. Const. art. II, § 1, cl. 2. The "Electors" in the Electors Clause, are then tasked with voting directly for the next President of the United States in the Electoral College Clause. *See* U.S. Const. art. II, § 1. Cl. 3. To state a viable claim, then, the plaintiffs' complaint must allege or show the

Secretary's and NHRSC's actions affected the nomination or election of Electors. *See* U.S. Const. art. II, § 1, cl. 2. The plaintiffs have failed to allege any such actions and Count I must be dismissed for failing to state a claim.

Even if plaintiffs' construction of RSA 654:34, IV and RSA 654:32 were valid, the plaintiffs have no claim under the Electors Clause. RSA 654:34, IV sets a time period for when voters cannot change their party affiliation; it does not address the general election or the selection of electors. Furthermore, both statutes apply by their terms to primaries only. Neither statute affects the nomination or election of Electors who are selected based on the outcome of the general election, not a primary. *Compare* RSA 654:34, IV and 654:32 *with* RSA 655:54 (establishing procedure for nomination of Electors by state party convention) and RSA 659:84 (requiring the governor to issue certificates of election to the Electors from the party whose presidential candidate received the most number of votes). Indeed, party affiliation is irrelevant to the selection of electors because there is only one non-partisan ballot in a general election and it is the aggregate votes of Republicans, Democrats, and undeclared voters that dictate the selection of electors.

Here, the plaintiffs alleged that the Secretary and NHRSC allowed voters to change their party affiliation in violation of RSA 654:34, IV. The complaint contains no factual claim, or even legal conclusion, that the Secretary's and NHRSC's actions violated any law governing the nomination or election of Electors. Where the only allegation of wrongful conduct arises from the time for party affiliation changes, the plaintiffs have not and cannot make out a cognizable claim under the Electors clause. Count I must therefore be dismissed for failing to state a claim.

**3.** **The plaintiffs have failed to state a claim under count II because 18 U.S.C. §595 is a criminal statute which can only be brought by the United States Attorney General.**

The plaintiffs also failed to state a claim under 18 U.S.C. §595 because it is a criminal statute which does not provide a private right of action. *Lemire v. State*, 2020 WL 7229826 at *2 (D.R.I. 2020). As a general rule, for a private plaintiff to bring a claim under a federal statute Congress must create a private right of action either explicitly or implicitly. *Bonano v. East Caribbean Airline Corp.*, 365 F.3d 81, 84 (1st Cir. 2004). Where no private right of action exists, a private plaintiff cannot bring a claim under that statute. *See Lath v. Oak Brook Condominium Owners' Ass'n*, 2017 WL 1051001 (D.N.H. 2017).

Here, the plaintiffs are not state actors initiating criminal proceedings against the defendants. The plaintiffs are private actors and have not established that a private right of action exists under 18 U.S.C. §595; indeed, the plaintiffs have cited no case law or statutory authority that a private right of action exists under 18 U.S.C. §595. Although neither the First Circuit nor the Supreme Court has addressed this issue, other courts considering whether 18 U.S.C. §595 establishes an implied private right of action have held that no such private right of action exists. *See Lemire*, 2020 WL 7229826 at *2 (holding that "18 U.S.C. §595 is a criminal statute that does not provide a private right of action… plaintiff is not permitted to bring a civil action under 18 U.S.C. 595, and any such allegations must be dismissed for failure to state a claim"); *see also Sharma v. Trump*, 2020 WL 5257709 at *2 (E.D. Cal. 2020) (holding that "plaintiff cannot state a claim under the various criminal statutes that he cites [among which was 18 U.S.C. §595] because they do not provide a private right of action. Count II therefore fails to state a claim and must be dismissed.

13

**4.      The plaintiffs have failed to state a claim under count III because the plaintiffs have not alleged any differential treatment by the Secretary or the NHRSC.**

Even assuming for the sake of argument that the NHRSC can be considered a state actor against which the equal protection clause can be enforced, Count III must be dismissed because the plaintiffs have failed to state a claim for violations of their equal protection rights. The Equal Protection Clause of the Fourteenth Amendment "guarantees that the government will not treat those who are similarly situated differently." *Lyman*, 954 F.3d at 364. As applied to voting rights, "having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 531 U.S. at 104-05. Further, the Equal Protection Clause "safeguards the equal weight accorded to each vote." *Lyman*, 954 F.3d at 364. Thus, the "meaning of one-person, one-vote… [is] at its core… the idea that every voter is equal to every other voter in his State." The practical import of this requirement is that states must "ensure that each person's vote counts as much, insofar as it is practicable, as any other person's." *Lyman*, 954 F.3d at 365. To make a cognizable claim under the Equal Protection Clause's one-person, one-vote principle, then, the plaintiffs must both allege that they were treated differently than another class of voters, and that their votes will be afforded less weight than the other class of voters.

The plaintiffs claim that the Secretary and NHRSC are violating their equal protection rights because voters who changed their party affiliation during the Affiliation Change Period will be allowed to cast ballots in the Republican presidential primary. Under the plaintiffs' theory, these votes will be counted illegally because the voters should not have been allowed to change their party affiliation. The effect of this, the plaintiffs claim, is that their votes will be diluted in derogation of the Equal Protection Clause.  Doc. No. 1 at ¶¶62-63.

Yet the plaintiffs have failed to identify differential or preferential treatment by the Secretary in violation of the Equal Protection Clause. The plaintiffs do not identify any class of voters who were treated preferentially during the Affiliation Change Period. The plaintiffs further do not identify any action by the Secretary or NHRSC which affected the plaintiffs any differently than any other voter.  Further, the plaintiffs were subject to the same procedure as every other registered voter where party affiliation changes were permitted during the Affiliation Change Period. There is no evidence or allegation that any person was denied the opportunity to change their party affiliation, or that only certain voters were allowed to change their party affiliation.

Moreover, the plaintiffs have not established that their votes will be weighted any differently than any other person who votes in the Republican presidential primary. It is not enough to save the plaintiffs' equal protection claim that they allege the Secretary and NHRSC violated New Hampshire's election law; rather, the plaintiffs must advance some theory that their votes will be counted differently. Indeed, similar claims of vote dilution under the equal protection clause have been dismissed because

> the Voter Plaintiffs cannot analogize their Equal Protection claim to gerrymandering cases in which votes were weighted differently. Instead, Plaintiffs advance an Equal Protection Clause argument based solely on state officials' alleged violation of state law that does not cause unequal treatment. And if dilution of lawfully cast ballots by the "unlawful" counting of invalidly cast ballots were a true equal-protection problem, then it would transform every violation of state election law (and, actually, every violation of every law) into a potential federal equal-protection claim requiring scrutiny of the government's 'interest' in failing to do more to stop the illegal activity.

*Bognet v. Sec. Commonwealth of Pennsylvania*, 980 F.3d 336, 355 (3rd Cir. 2020) *judgment vacated and case remanded with instructions to dismiss case as moot*, *Bognet v. Degraffenreid*, 141 S.Ct. 2508 (Mem) (2021); *see also Donald J. Trump for President, Inc. v. Boockvar*, 493 F.

Supp. 3d 331, 391 (W.D. Pa. 2020) (holding that the plaintiff's equal protection claim failed

because the plaintiffs votes would not count for less than any other vote and although unlawful

votes might be cast, "unlawful votes… dilute all other lawful votes in the same way [resulting in]

no unequal treatment… and no burden on Plaintiffs' rights under the Equal Protection Clause.");

*Wood*, 501 F.Supp.3d at 1326-27.

     As a result, the plaintiffs have not alleged a valid claim under the equal protection clause.

Count III must be dismissed as a result.

> **5.**    **The plaintiffs have failed to state a claim under count IV because any action by the NHRSC or the Secretary did not result in patent or fundamental unfairness.**

     Again, assuming for the sake of argument that the NHRSC can somehow be

characterized as a state actor, Count IV must be dismissed because the plaintiffs have failed to

state a claim for violations of their due process rights. The plaintiffs raise both procedural and

substantive due process as bases for count IV. As the analysis for procedural and substantive due

process differs, each is addressed separately below.

> *a.  Procedural Due Process*

     To state a claim for a violation of the plaintiffs' procedural due process rights, the

plaintiffs must allege the deprivation of a liberty or property interest protected by the Fourteenth

Amendment. *Zell v. Ricci*, 957 F.3d 1, 8 (1st Cir. 2020). If a protected interest exists, "the

analysis turns to a determination of what process was due." *Id.*

     The plaintiffs allege no such interest here of which they were or will be deprived. The

plaintiffs' votes will not be counted differently than any other votes, and the Secretary and

NHRSC are not taking any actions against the plaintiffs that would deny them the right to vote or

deprive them of any other interest. Rather, the plaintiffs claim that they are harmed as a result of

their votes being diluted by illegal votes. Any interest of the plaintiffs, then, arises from the counting of illegal votes; in other words, the interest is in requiring the government to only count legal votes. This is not an interest that can be fairly described as a liberty or property interest protected under the Fourteenth Amendment. *See Lecky v. Virginia State Board of Electors*, 285 F.Supp.3d 908, 918 (E.D. Va. 2018). Where the plaintiffs have not alleged the violation of a protected liberty or property interest, there is no procedural due process violation.

### b. *Substantive Due Process*

The plaintiffs claim of a violation of substantive due process fares no better. To state a claim for violations of their substantive due process rights, the plaintiffs must allege some substantive right protected by the due process clause which the Secretary and NHRSC violated. In the context of elections, "a denial of substantive due process occurs… if the election process itself reaches the point of patent and fundamental unfairness." *Bonas v. Town of North Smithfield*, 265 F.3d 69, 74 (1st Cir. 2001). Generally, however, "election law, as it pertains to state and local elections, is for the most part a preserve that lies within the exclusive competence of the state courts." *Bonas*, 265 F.3d at 74. This requirement of "patent and fundamental unfairness" is a high bar which "requires [significant] proof" such that "a claim [for violation of substantive due process in the context of voting] exists in only the most extraordinary circumstances." *Donald J. Trump for President, Inc*, 493 F. Supp. 3d at 397.

Indeed, "a canvass of substantive due process cases related to voting rights reveals that voters can challenge a state election procedure in federal court only in limited circumstances such as… discrimination against a discrete group of voters," when complete disenfranchisement occurs as a result of failing to hold an election, or "when the willful and illegal conduct of election officials results in fraudulently obtained or fundamentally unfair voting results" such as

ballot stuffing or refusing to count votes where voting rules were changed without informing voters of new requirements for voting. *Nolles v. State Committee for Reorganization of School Districts*, 524 F.3d 892, 898-99 (8th Cir. 2008).

Here, the plaintiffs claim that the Secretary and NHRSC violated their right to a fair election by allowing the plaintiffs' votes to be diluted. Doc. No. 1 at ¶68. The plaintiffs' allegations, however, do not rise to the level of "patent and fundamental unfairness." The plaintiffs have not alleged they were not or will not be allowed to vote. The plaintiffs have not alleged that the complained-of conduct discriminates against them or any discrete group of voters. *See Griffin v. Burns*, 570 F.2d 1065, 1074 (1st Cir. 1978) (allowing case brought by absentee voters whose votes were not counted as a result of a decision made after the election). The plaintiffs have not alleged that the Secretary or NHRSC are not holding elections. *See Duncan v. Poythress*, 657 F.2d 691, 693 (5th Cir. 1981) (holding that due process clause protects the disenfranchisement of voters where state officials refused to hold an election mandated by state law). Neither have they alleged conduct qualitatively equivalent to ballot stuffing, refusal to count votes of voters unaware of change in election laws, or any other conduct resulting in a "fraudulently obtained or fundamentally unfair voting result." *Nolles*, 524 F.3d at 899; *see United States v. Saylor*, 322 U.S. 385, 388-89 (1944) (allowing suit alleging ballot stuffing); *Briscoe v. Kusper*, 435 F.2d 1046, 1055 (7th Cir. 1970) (allowing suit where voting rules were changed without informing voters of new requirements for voting and election officials refused to count the voters' votes).

In *Partido Nuevo Progresista v. Perez*, 639 F.2d 825, 826-28 (1st Cir. 1980) the First Circuit held that *Griffin v. Burns* did not justify federal court intervention. 639 F.2d at 827-28. The federal court in *Partido* was asked to intervene in a state election law dispute where certain

ballots were allegedly mismarked. *Id*. at 826. Prior to the lawsuit, Puerto Rican courts held that the mismarked ballots could be counted. *Id.* The plaintiff brought the lawsuit in federal district court alleging constitutional violations, including violations of the plaintiff's due process rights. *Id*. at 827. The district court held in favor of the plaintiffs based on the First Circuit's decision in *Griffin*. *Id*.

The First Circuit rejected the district court's conclusion that *Griffin* mandated intervention, instead holding that *Griffin* did not control in this case. In *Griffin*, the "election process had reached the point of patent and fundamental unfairness" based on an after the fact change to election law which disenfranchised voters. *Id.* ("voters [in *Griffin*] had been told for many years that they could vote in a primary by absentee ballot, and such ballots had been furnished them by election officials in the challenged election. After the election they were told that their absentee ballots were void."). The First Circuit held that the Puerto Rican court's order did not result in a patently or fundamentally unfair election. *Id.* The Puerto Rican court's order enfranchised voters rather than disenfranchising voters and it did not prevent any qualified voter from casting a ballot. *Id.* Although the plaintiffs claimed this enfranchisement resulted in their votes being "diluted by the votes of others", the First Circuit held this was insufficient to justify intervention in a case involving violations of state law. *Id*.

As a result, the plaintiffs have not alleged any claim for a violation of their substantive due process rights. For a federal court to intervene in an election law case where violations of state law are alleged, there must be a viable claim that the election is or will be patently and fundamentally unfair as a result of the defendants' actions. A showing that some illegal votes might be cast is insufficient. *Partido Nuevo Progresista*, 639 F.2d at 828. Rather, the election

itself must be run in such a way that the election is fundamentally unfair. The plaintiffs'

allegations do not rise to this level and Count IV must be dismissed.

**IV.      Conclusion**

In accordance with the foregoing, the NHRSC respectfully requests that the court dismiss

the complaint because plaintiffs have not established that they have standing and because the

complaint fails to allege cognizable claims.

Respectfully submitted,


CHRIS AGER, NEW HAMPSHIRE
REPUBLICAN STATE COMMITTEE
By Their Attorneys,


Date: December 8, 2023                    /s/Jacob M. Rhodes
                                          Bryan K. Gould, Esq. (NH Bar #8165)
                                          gouldb@cwbpa.com
                                          Jacob M. Rhodes, Esq. (NH Bar #274590)
                                          rhodesj@cwbpa.com
                                          Cleveland, Waters and Bass, P.A.
                                          Two Capital Plaza, Fifth Floor
                                          Concord, NH 03302-1137
                                          Telephone: (603) 224-7761
                                          Facsimile:  (603) 224-6457

## CERTIFICATE OF SERVICE

I hereby certify that the within document is being served electronically through the court's electronic filing system upon counsel of record and all other parties who have entered electronic service contacts in this docket. In addition, the following parties have been served by email and U.S. Mail:

Karen Testerman (karen@karentesterman.com)
9 Stone Avenue
Franklin, NH 03235

Lynn-Diane Briggs (lynbdance@gmail.com)
4 Golden Pond Lane
Amherst, NH 03031
Wayne Paul Saya, Sr. (waynesaya2@gmail.com)
24 Cadogan Way
Nashua, NH 03062


Date:  December 8, 2023                    /s/ Jacob M. Rhodes
                                           Jacob M. Rhodes, Esq.

4877-2558-2739, v. 1

21