FILED - USDC -NH
2023 DEC 18 AM 10:15

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

**Karen Testerman,** *pro se*

**Lynn-Diane Briggs,** *pro se*

**Wayne Paul Saya,** *pro se*

*Plaintiffs*

*Vs*

**DAVID SCANLAN**
**SECRETARY OF STATE FOR NEW HAMPSHIRE, et al,**

*Defendants*

*Docket No.23-cv-00499-JL-AJ*

**PLAINTIF WAYNE PAUL SAYA, SR. AMENDED MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S SECOND AMENDED MOTION FOR EXPEDITED CONSIDERATION FOR PRELIMINARY INJUNCTIVE RELIEF - FOR CAUSE.**

Wayne Paul Saya, Sr., *pro se* ("Plaintiff Saya") submits this underlined amended Memorandum of

Law in Support of the above-named Motion for Expedited Consideration for Preliminary

Injunctive Relief, for Cause.

Wherefore, to conform to the corrections made within the Amended Complaint of Plaintiff Karen

Testerman (Pacer no. 32) as Joined by this Plaintiff in his Motion for Joinder (Pacer no. 35).

Refer to Plaintiff Karen Testerman Declaration (Pacer no. 20-1) and associated Exhibits (Pacer

no. 20-2 through 11)[1]

**Introduction**

---

[1] Plaintiff Karen Testerman filed a Motion 'for leave' to Join Plaintiff Saya's first amended complaint, and the intent of such "leave" was to allow her initial Declaration and Exhibits from her initial Motion for Injunctive Relief to follow her motion for Joinder.

1.      Plaintiff Wayne Paul Saya, Sr., *pro se*,  "Plaintiff " brought this action against the New Hampshire Secretary of State, David Scanlan "Defendant Scanlan",  as New Hampshire's chief Elections Officer, and against the Chairman of the Republican Party of New Hampshire, Chris Ager "Defendant Ager".  Defendant Scanlan and Defendant Ager combined as "Defendants".

2.      The Plaintiff alleges that the Defendants violated his substantive and procedural due process and equal protection rights under articles 1, 11, 14, and 15 of the New Hampshire Bill of Rights, and under the 14th Amendment to the Federal Constitution pertaining to their violations of the U.S.  "Elector's clause" of Article II, Section 1. See Plaintiff's Declaration (Pacer no. 21-1) and associated Exhibits (Pacer 21-2 through 7).

3.      However, the defendants violated not only the Electors Clause, U.S. Const. art. II, § 1, cl. 2, but also the Elections Clause, art. I, § 4 (to the extent that the Article I "Elections" Clause textually applies to the Article II process of selecting presidential electors). Whereby, Article I, Section 4, Clause 1 of the "Elections Clause" is hereby cited for this specific reason.

4.      The Plaintiff alleges the Defendants Constitutional violations stem from the Federal Voting Rights Code 52 U.S. Code § 10101, and 42 U.S.C. 1973a(c), or Section 3(c), (changed to 52 U.S.C 10301) of the Federal Voting and Elections Code.

5.      Plaintiff alleges that the above-named violations were the direct result of the Defendants violating the state's Federal mandate to comply with the U.S. Electors clause and the U.S. Elections clause—*above*,  when Defendants each ignored and circumvented the very Elections laws they were mandated to provide, namely New Hampshire Rev. Stat. Ann. "RSA" §659:14 and RSA §654:34 respectively,  but in particular,  "permit[ting]" New Hampshire voters to "switch their political affiliations after the state statutory cut-off period of June 7, 2023," in violation of a state statute—RSA §654:34, IV. See Pacer no. 32, pars 6-11.

2

6.      Plaintiff also alleges, by "changing the rules" and extending a New Hampshire voter's ability to change their party affiliation to an additional four months, an unknown number of voters, although reported as around 4,000 democrat voters, were able to change their party affiliation in order to vote in the Republican Presidential primary to disrupt and change the outcome of the Republican Presidential nominee, harming the Plaintiff's ability to participate in a free and fair Elections, and disenfranchising his one man one vote proposition.

7.      Plaintiff's question seeking Preliminary Injunctive Relief before the court; whether Defendant Scanlan established new standards (ignoring NH RSA 654:34 and 659:14) for conducting Presidential primary election contests, thereby violating Art. II, §1, "Electors Clause" and Article I, Section 4, Clause 1 of the "Elections Clause" of the United States Constitution and failing to comply with the Federal Voting Rights Code 52 U.S. Code § 10101, and 42 U.S.C. 1973a(c), or Section 3(c), (changed to 52 U.S.C 10301) of the Federal Voting and Elections Code, and whether ignoring these state Election laws violated the Plaintiff's Equal Protection and Due Process rights of both the New Hampshire and U.S. Constitutions. *Compare Bush v Gore*, 531 U.S. 98 at 103 (2000).

8.      An additional question by the Plaintiff is submitted to the court; did the Defendants violate the Plaintiff's state and Federal due process and equal protection rights, under color of law, when they "changed the rules" by extending (by 4-months) voters an opportunity to change party affiliations against the statutory requirement of RSA §654:34, IV, from the first Wednesday in June to October 6th, 2023, ignoring the state legislature's protection against fraud and abuse and as mandated by the Electors Clause and Elections Clause *above*.

9.      Should the court declare the violations as indicated above, Plaintiff is seeking immediate relief from the court before the January 23r, 2024 Presidential primary to cure these constitutional violations.

### ARGUMENT

10.     A preliminary injunction is appropriate where: (1) the plaintiff is likely to succeed on the merits of their claim, (2) the parties are likely to suffer irreparable harm unless the injunction is issued, (3) a balancing of the equities weigh in favor of an injunction, and (4) the injunction is in the public interest. *League of Women Voters of N.C. v. North Carolina, 769 F.3d 224, 236 (4th Cir. 2014). Also compare Weinberger v. Romero—Barcelo, 456 U.S. 305, 311–313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982); Amoco Production Co. v. Gambell, 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987).* Other circuits have alternatively looked to a different criterion, consisting of a showing of (1) probable success and the possibility of irreparable injury; or (2) serious questions on the merits and a balance of hardships, (where here the merits are in the Electors Clause claim made by Plaintiff). *See e.g., W.W. Williams Co. v. Google, Inc., 2013 WL 3812079 (S.D. Ohio 2013).*

11.     "The question here presented is one of federal not state law because the state legislature, in promulgating rules for congressional elections, acts pursuant to a constitutional mandate under the Elections Clause." See Bush , 531 U.S., at 113, 121 S.Ct. 525 (Rehnquist, C. J., concurring) **(compliance with the Electors Clause "presents a federal constitutional question").**

12.     Plaintiff alleges the Defendants acted unconstitutionally by violating the "Elections Clause" and "Electors Clause" that mandates the New Hampshire legislature to create Election laws:

> "The individual citizen has no federal constitutional right to vote for electors for the President of the United States unless and until the state legislature chooses a statewide

election as the means to implement its power to appoint members of the electoral college. U. S. Const., Art. II, § 1. This is the source for the statement in *McPherson v. Blacker*, 146 U.S. 1, at 35 (1892), that the state legislature's power to select the manner for appointing electors is plenary; . . . " *Bush v. Gore, Bush v. Gore*, 531 U.S. 98 at 104.

13.     Once a New Hampshire voter changed to 'undeclared', the voter can choose any party in the New Hampshire Federal primary of January 23rd, 2024. Reasoning, a Democrat Party voter is not likely to change their Party affiliation to "undeclared' just to vote for the same Democrat party they just changed from.

14.     Plaintiff contends, voters who wish to manipulate and dilute the vote of an  opposing Party can do so by simply switching from Democrat or Republican to "undeclared" within the unlawful four-month extension of  paragraph "IV" of RSA §654:34 as created by the Defendants. In-turn, vote for the opposite Party affiliation (Democrat or Republican) candidate in the Presidential Primary as a means of 'ballot stuffing' a weaker candidate in the (Republican) Party's Primary, thereafter switch back to their original Democrat or Republican Party affiliation to vote for their Party's Primary or General Election candidate.

15.     First, this type of voter manipulation of "undeclared" voters makes RSA §654:34, and specifically paragraph "IV" ineffective, because paragraph "IV"can be used to defeat its intended purpose of preventing party affiliate changes well before a Presidential primary.

16.     Plaintiff alleges this is the very situation that has taken place between the first Wednesday in June of 2023 to October 6, 2023, when the Defendants circumvented this very State Election law RSA §654:34, because circumvention of this law only effects the January 23rd, 2024 Republican and Democrat Presidential Primary Elections.

17.    Plaintiff contends that Election law RSA §654:34 (ignored by the Defendants) was put in place by the NH legislature to avoid this type of Party affiliation[2] fraud and corruption. *Moore v Harper, 600 U.S.1 (June/2023),* addressed this type of issue citing *Smiley v. Holm, 285 U.S. 355 (1932)* ; *State ex rel. Smiley v. Holm, 184 Minn. 228, 238 N.W. 494 (1931).*

>   "Legislatures must "provide a complete code for congressional elections", including regulations "relati[ng] to notices, <u>registrations,</u> supervision of voting, protection of voters, <u>prevention of fraud and corrupt practices,</u> counting of votes, duties of inspectors and canvassers, and making and publication of election returns." *Smiley, 285 U.S. at 366* as referred to in *Moore v. Harper at 21-22.* <u>Emphasis supplied</u>

1.    In a recent Manchester, New Hampshire, Supreme court case of <u>*Miles Brown & a.v. Secretary of State,*</u> Opinion Issued: November 29, 2023, and argued by the NH attorney general's office for the state. Within Brown at 22, footnote 3 of the opinion, the court relies upon *Moore v. Harper, 143 S. Ct. 2065, 2088-90 (2023)* making a point that the [state] Supreme Court has "an obligation to insure that state court interpretations of [state] law do not evade federal law".

18.    New Hampshire exercised the state's mandated authority pursuant to the Federal 'Elections Clause' for the "Electors Clause" and created a state 'Election Code', located starting at N.H. Rev. Stat. Ann. "RSA" §§ 652 to 671, respectively, and incorporates' the following State Election laws:

>   Chapter 652 – General Provisions
>   Chapter 653 – Election of Officers and Delegates
>   Chapter 654 – Voters and Checklists[3]
>   Chapter 655 – Nominations
>   Chapter 656 – Preparation of Voting Materials
>   Chapter 657 – Absentee Voting
>   Chapter 658 – Pre-Election Procedure
>   Chapter 659 – Election Procedure

---

[2]    https://legiscan.com/NH/text/HB153/2012
[3]    NOTE: **RSA 654:34-a** Application to Town or City Clerk; Changes to be Forwarded. – are for city and town elections for affiliation changes.

Chapter 660 – Post-Election Procedure
Chapter 661 – Vacancies Among Public Officers Elected at State Elections
Chapter 662 – Elective Districts
Chapter 662-A – Division of State Representative Districts of Towns
Chapter 663 – Questions to Voters
Chapter 664 – Political Expenditures and Contributions
Chapter 665 – Ballot Law Commission
Chapter 666 – Provisions for Purity of Elections
Chapter 667 – Constitutional Conventions and State Party Conventions
The following state laws are specific to Primaries and Elections other than Federal.

Chapter 668 – Provisions for Unincorporated Places
Chapter 669 – Town Elections
Chapter 670 – Village District Elections
Chapter 671 – School District Elections

*19.*    Accordingly,  RSA §654:34  IV – <u>Change of Registration,</u> is incorporated into New Hampshire's 'Election Code' to include Federal Elections, and paragraph "IV" of  §654:34  was designed to safeguard a voter's Party affiliation changes:

> *No person, who is already registered to vote, whether his party membership has been previously registered or not, shall affiliate with a party or disaffiliate from a party <u>between the first Wednesday in June and the day before the state primary election</u>. <u>Paragraph  IV.</u>  Emphasis supplied*

20.    After the New Hampshire voter has casted their ballot in the Presidential Primary [4] from "undeclared", to select the Party candidate of choice, New Hampshire law RSA §654:34 V(a) permits the voter to switch-back to the original Party affiliation the voter was registered in before the voter changed to an "undeclared" status:

> V. *"(a) <u>At any primary</u>, the supervisors of the checklist shall make available within the polling place a card or list of undeclared voters from the statewide centralized voter registration database to enable a voter who was registered as an undeclared voter but who changed registration on the day of the primary in order to vote as a registered member of a party to change registration so that the voter is registered once again as an undeclared voter." Above -*  <u>Emphasis supplied</u>

---

[4]   Paragraph "V" of RSA §654:34  I.(1) is specific "At any primary", which includes Federal Presidential primaries.

21.     Plaintiff contends that the Defendants allowance to unlawfully extend the time for a New Hampshire voter to change Party affiliations harms him by violating New Hampshire's Federal mandate under the "Elections Clause" and in-turn the "Electors Clause" described in *Smiley (above)* as cited in *Harper (2023) above*,

22.     . . where this unlawful change disenfranchises, oppresses, damages, and dilutes Plaintiff's vote and thereby his ability to receive and participate in a fair and honest selection of his preferred primary candidate.

23.     This unlawful change also is against Plaintiff's fundamental right to substantive and procedural due process and equal protection of the New Hampshire Election Code, which, again, violates the Federal "Elections Clause" and "Electors Clause" mandates.

> "The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another. See, *e. g., Harper* v. *Virginia Bd. of Elections,* 383 U. S. 663, 665 (1966) ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment")." *Bush v. Gore, Bush v. Gore, 531 U.S. 98 at 104-105 (2000)*

*24.*     As a registered Party affiliate, I have one vote. However, when rules (laws) designed to protect Federal Primary Elections are permitted to be changed by an unelected State official (Defendant Scanlan) while endorsed by the chairman of the Republican party (Defendant Ager), voters permitted to change their Party affiliation by-way-of unlawful actions of State officials , and back again, are afforded with an unfair advantage and means to have more than one vote—a vote for my party and a vote for their Party in the upcoming primaries, congressional and general Elections. "*It must be remembered that "the right of suffrage can be denied by a debasement or*

*dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free*

*exercise of the franchise."* <u>Reynolds v. Sims, 377 U. S. 533, 555 (1964)</u> *as cited in* <u>Bush v Gore</u>

<u>(above) at 105</u>.

25.     With regard to the one-person one-vote claim by the Plaintiff, <u>*Bush v Gore at 107*</u>

*(above)* articulated their summary that stands today:

> "An early case in our one-person, one-vote jurisprudence arose when a State
> accorded arbitrary and disparate treatment to voters in its different
> counties. *Gray* v. *Sanders,* 372 U. S. 368 (1963). The Court found a constitutional
> violation. We relied on these principles in the context of the Presidential selection process
> in *Moore* v. *Ogilvie,* 394 U. S. 814 (1969), where we invalidated a county-based
> procedure that diluted the influence of citizens in larger counties in the nominating
> process. There we observed that "[t]he idea that one group can be granted greater voting
> strength than another is hostile to the one man, one vote basis of our representative
> government." *Id.,* at 819.

26.     When speaking of the differing treatments the cities and towns of Florida used when

determining the hanging chads controversy in the case of <u>Bush v. Gore</u> *below*, **Justice David**

**Souter**, who had pressed the equal protection issue forcefully during oral argument, wrote: *"I*

*can conceive of no legitimate state interest served by these differing treatments of the*

*expressions of voters' fundamental rights. The differences appear wholly arbitrary."*

27.     The relevant statutory and constitution violations engaged by the Defendants,

individually and collectively, are 'imminent' and ongoing based upon their current and

continuing unconstitutional non-legislative actions to bypass and thereby changing state

legislative laws that would impact the appointment of U.S. presidential electors, now and in

future primary Elections.

28.     The exercise of authority in the context of the 'Elections Clause' is subject to the
ordinary constraints on lawmaking in the state Constitution. See *Arizona State Legislature v.
Arizona Independent Redistricting Comm'n, 576 U.S. 787 at 808.*

> In New Hampshire ". . . the legislature's intent as expressed in the words of the statute
> considered as a whole, when examining the language of a statute, the court
> ascribes the plain and ordinary meaning to the words used." "In construing a
> statute, the court will neither consider what the legislature might have said,
> nor add words that it did not see fit to include." *Contoocook Valley Sch.
> Dist. V. State,* (2021)174 N.H. 154, 261 A.3d 270, 2021 N.H. LEXIS 40.

> ". . . conflict with state statute, it will be preempted when it frustrates
> the statute's purpose." And "The preemption doctrine flows from the principal
> that municipal legislation is invalid if it is repugnant to, or inconsistent with,
> state law." *Girard v. Town of Plymouth,* (2019) 172 N.H. 576 at 585.

29.     This was expounded in Bush "*When a court orders a statewide remedy, there must be at
least some assurance that the rudimentary requirements of equal treatment and fundamental
fairness are satisfied.*" *Bush v Gore* at 109 (above).

30.     As a result of the Defendants actions, the Plaintiff, individually and collectively with co-
Plaintiffs has been disenfranchised of his rights to a fair election, where his vote has been
systematically diluted using an invalid process, while at the same time the Plaintiff is retaining
the knowledge of his prospective Presidential candidate being negatively and unfairly
compromised from these unlawful and unconstitutional practices.

31.     Accordingly, when the New Hampshire legislature carried out its federal constitutional
power [under the "elections clause" and "Electors Clause"] to prescribe rules regulating federal

elections, it acts both as a lawmaking body created and bound by its state constitution, and as the entity assigned particular authority by the Federal Constitution. *Moore v Harper, Syllabus pg.4.*

32.   When speaking directly of the U.S. Constitutions "Electors Clause":

". . . [T]here are a few exceptional cases in which the Constitution imposes a duty or confers a power on a particular branch of a State's government. This is one of them. Article II, § 1, cl. 2, provides that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct," electors for President and Vice President. (Emphasis added.) Thus, the text of the election law itself, and not just its interpretation by the courts of the States, takes on independent significance." *Bush v Gore*, at 112—*above—Emphasis supplied.*

33.   Accordingly, in a reply-memorandum to Norman J. Silber[5] dated October 9 2023, in response to Mr. Silber's request for information under NH RSA 91A, Defendant Scanlan indicated:

*"The current practice of permitting undeclared voters to declare affiliation with the Republican Party and then change back to undeclared or remain in the party after voting has been in place for decades."* See Plaintiff's "EXHIBIT B".

34.   The plaintiff does not dispute this "current practice" of defendants to the extent that their practice may have been surreptitiously in place for decades, where Defendant Scanlan claims such an unlawful practice of a voter's political affiliation apparently has been blindly recognized in violation of the state's election law requirement—of the first Wednesday in June until the day before the primary election . See NH RSA 654:34-IV.

1.   *"No person, who is already registered to vote, whether his party membership has been previously registered or not, shall affiliation with a party or disaffiliate from a party between the first*

---

[5]  Attorney Norman J. Silber is a former New Hampshire state legislator (2017-18 and 2021-2022) and past Belknap County, NH Republican chair.

*Wednesday in June and the day before the state primary election".*
id

35.     But, the *above* memorandum continues: *"For me to administer a change related to*

*participation in a primary  would require written notice of a rules change from the party chair."*

id *"EXHIBIT B".*

36.     This is the operative sentence where the defendants manipulate, disregard, and confuse

New Hampshire state election laws NH RSA 654:34-IV *(above)*; NH RSA 659:14-II, and RSA

654:32, because the Defendants appear to use the following NH law to ignore RSA 654:34-IV

*above*, where:

> II. *"The secretary of state shall include on the voter instruction cards*
> *required by RSA 658:28 whether a party rule has been adopted which permits a person*
> *who is registered as an undeclared voter to vote in the party's primary. The party*
> *chairman shall notify the secretary of state in writing prior to the filing period for state*
> *offices whether the party has adopted such a rule."* RSA 659:14-II -emphasis supplied

37.     Accordingly, RSA 659:14-II *above* is specifically "whether a party rule has been

adopted" regarding undeclared voters, not for determining the time, manner and place for such

registration.

> Additionally violated by Defendants: RSA 654:32 – **Hearings on**
> **Alterations to Party Registration** – *"Before each state or presidential primary*
> *election, the supervisors of the checklist shall be in session before each primary*
> *for the change of registration of legal voters as provided in RSA 654:34 or*
> *654:34-a or both. Before the presidential primary, the session shall be on the*
> *Friday preceding the first day of the filing period, between 7:00 p.m. and 7:30*
> *p.m. and at the discretion of the supervisors for extended hours. . . . . "* id

Accordingly, RSA 654:32 was at no time followed by the Defendants before the Defendants

ignored RSA 654:34-IV. *See par 2 above.*

12

*38.*     When the Plaintiff became aware of a letter dated October 6, 2023, authored by the

Merrimack County GOP chairperson, Karen Testerman, that was sent to Defendant Ager, *See*

Plaintiff's "EXHIBIT D", Plaintiff realized there were major legal election implications

involved, because a legal restraining order to enjoin defendant Scanlan was requested by the

Merrimack county chair (Plaintiff Testerman) for, among other legal election concerns,

continuing or acknowledging this *above* practice of requiring a letter that is not required and

violates RSA 654:34-IV of the state's *change in registration* and election laws regarding time,

manner, and place.

39.     During the course of 2023, the Plaintiff along with a number of GOP acquaintances were

made aware through political circles of major disagreements and friction within the GOP, caused

when Defendant Ager and others with minority political views were openly favoring candidate

Chris Christie and other less desirable candidates over more popular national candidates. It was

Plaintiff's belief that Defendant Ager should have had a neutral position as GOP chair.

40.     During this period in time Plaintiff was made aware that the Merrimack County GOP

chair (Plaintiff Testerman) was blatantly being ignored by Defendant Ager, which also impacted

my next door city of Nashua New Hampshire, when Merrimack was repeatedly by-passed for

GOP fundraisers, guest speakers, and recently the annual Oktober-fest event, where the GOP

held a simultaneous event in northern New Hampshire that caused many GOP supporters and

Presidential candidates to cancel the previously scheduled Oktober-fest event sponsored by

Plaintiff Testerman.

41.     Because of Defendant Ager's friction with respected members of his own party, and his

continued absence from the Plaintiff's home town of Nashua, New Hampshire, Plaintiff

developed a belief that Defendant Ager was flexing his political muscles (to keep in place the

covert use of an election law) by squeezing the Merrimack county chairperson (Plaintiff Testerman) to get in-line with his and Defendant Scanlan's political change in the party affiliations cut-off date.

42.     It has been the actions of Defendant Ager against members of his own party and his silence of state government's unlawful statutory behavior, that incubated the Plaintiff's belief of a New Hampshire GOP in shambles, along with Plaintiff's belief that his vote was no longer controlled by him or New Hampshire voters at-large.

43.     The Plaintiff believes, when you have a state government that believes any election law can be broken without consequence for the sake of convenience or strategy, his one vote becomes worthless.

44.     Because of these open and visible state elections violations, the defendants have right away put into question the 'accuracy' and 'validity' of the vote tally for the New Hampshire Presidential primary election. See Plaintiff's "EXHIBIT C"

45.     As a consequence, any Electoral College votes cast by such presidential electors appointed for the State of New Hampshire will be in violation of Federal Elections laws 52 U.S. Code § 10101 - Voting rights, and 52 U.S.C 10301 (changed from 42 U.S.C. 1973a(c), 3(c)), and the U.S. Constitution's 'Electors Clause' and the 'Elections Clause', along with my rights in the Fourteenth Amendment of the U.S. Federal Constitution as described.

46.     As reference only, among the state and federal statutes defined in this complaint; causing the procurement or submission of voter applications or registrations in any election, or of the tabulation of ballots in federal elections, that are materially defective under applicable state law also violate the federal criminal penalty code of 52 U.S.C. §20511(2)(A)(B).[6]

---

[6] Title 52-VOTING AND ELECTIONS, Subtitle II-Voting Assistance and Election Administration, CHAPTER 205-NATIONAL VOTER REGISTRATION

47.    Plaintiff and voters are entitled to a presidential election in which the votes are counted only if the ballots are cast and counted in a manner that complies with the pre-existing laws of each state. See Anderson v. Celebrezze, 460 U.S. 780, 795 (1983) ("for the President and the Vice President of the United States are the only elected officials who represent all the voters in the Nation."). Voters who cast lawful ballots cannot have their votes diminished by states that administered their . . presidential elections in a manner where it is impossible to distinguish a lawful ballot from an unlawful ballot.

48.    The only cure for this kind of constitutional violation, without placing into jeopardy New Hampshire's first-in-the-nation status, and the right of each U.S. citizen to vote,  is to return those approximate 3,500-4,000 political affiliates (Democrat, Republican, etc) whom changed their political affiliations to "undeclared" within the first Wednesday of June (June 7, 2023) to the unlawfully designated date of October 6, 2023, 'back' to the political party affiliation they were originally designated to before June 7, 2023.

49.    And those approximate 400 Democrat party affiliates who switched to a Republican party affiliate, must be switched back to their original Democrat party.

50.    In the alternative, and because the rights of a single vote is the foundation of our republic and democracy, and too important to negotiate with which violations are allowed and which are not, the New Hampshire Presidential primary would unfortunately need to be moved forward (under court order for 2024) to the same date as the federal congressional primary of September 10, 2024

51.    Accordingly, because no change of political affiliations can take place after the congressional primary and before the General election (around five weeks later) on November 5,

2024, this "court order" would be made to 're-establish' a New Hampshire voter's untarnished and 'legal' party affiliation in compliance with state election law RSA 654:34.

52.     This "nuclear option" would have all party affiliations to be where they belong, since party affiliations (democrat or republican) will want to vote for their party's congressional candidate, and not strictly for another party's presidential candidate.

**Validity of the State's Congressional and General Elections Are in Jeopardy.**

53.     The Defendants have shown no effort to listen to reason regarding the integrity and ethics of New Hampshire's Presidential primary election, where they continue to openly violate New Hampshire state election laws NH RSA 654:34:IV and NH RSA 659:14–II. It is therefore a deep concern of the Plaintiff that the Defendants will circumvent, modify, or simply violate the original intent of the New Hampshire legislature's election laws *(as stated above)* for the upcoming congressional primary and general elections, and all Federal Elections thereafter.

 **- The Standard of Review has been Clarified by The U.S. Supreme Court**

54.     This involves a standard of review under recent U.S. Supreme Court case rulings regarding a Constitutional standard that applies to state legislative statutes, incorporating the June 2023, *Moore v. Harper,* 600 U.S. 1 (decided June 27, 2023) [hereinafter, "Moore"] and *New York State Rifle & Pistol Assn., Inc., et al. v. Bruen*, 597 U.S.1, [hereinafter, "Bruen"] No. 20-843 (U.S. Supreme Court, June 23, 2022) These rulings are applicable precedent and validate the Plaintiff's Motion here for Expedited  Injunctive Relief.

55.     In *Bruen* at 6, par (c) Syllabus, it was held "[t]he exercise of other constitutional rights does not require individuals to demonstrate to government officers some special need." And in *Bruen,* page 15—par. C, the court recognized: "This *Second Amendment* standard accords with

how we protect other constitutional rights." *Emphasis supplied*. In-turn, the court started a paint-by-numbers explanation regarding a number of constitutional rights and the state's responsibility.

56.     State officials now may not duck and or ignore its responsibility to review the state's impermissible voter-interference practices (In *Moore*, that state practice to substantively alter election outcomes, was gerrymandering.)

57.     *Bruen*— above further articulated a two-step analysis for determining whether a law, in this case NH RSA 654:34:IV, or regulation, in this case the New Hampshire Elections manual, of constitutionally protected conduct is unconstitutional. Both of these are claimed in the Plaintiff's initial Complaint and now in Plaintiff Testerman's Complaint which Plaintiff Saya has motioned this court to join.

58.     First, compare how courts must determine whether any enumerated right (plain text) covers an individual's conduct. See *Bruen—above*. In this case, the Defendants conduct.

59.     The Government must justify its regulation by demonstrating that it is consistent with the Nation's historical tradition regulating the right in question. Only then may a court conclude that the individual's conduct falls outside the enumerated right's unqualified command.

60.     *Bruen* provided a paint-by-numbers review in showing that the Burden of proof was on the government in federal cases. *Moore v Harper* is the election law case where the state was not following the plain text of the state's election law. Bottom-line, If *Moore v Harper—above* did not articulate its' standard, which it did, the *Heller/Bruen* decision would not apply to the states.

61.     In reading both decisions, Plaintiff argues that *Moore v Harper—above*, ties state and Federal Election laws with due process and equal protection, and the *Bruen* decision places the

burden of proof upon the government to show the Constitutionality of their decision, both

creating the standard of review for Elections law.

62.      In addition, also in *Bruen—above* compare where declaratory and injunctive relief under

Rev. Stat. 1979, 42 U.S.C.§1983, alleging that respondents violated their Second and Fourteenth

Amendment right. See Bruen, pg. 6, par C.

### Alternatively, this Case Deserves Limited Summary Disposition

63.      In lieu of granting interim relief, this Court could simply reach the merits summarily -

Fed. R. Civ. P. 65(a)(2). Two things are clear from the evidence presented at this initial phase:

(1) non-legislative actors modified and ignored the New Hampshire Presidential primary election

statutes; and (2) the resulting uncertainty casts doubt on the lawful winner. Those two facts are

enough to decide the merits of the Electors and Elections Clause claims. The Court should

"Stay" any and all appointments and impending certifications of presidential electors, pending a

resolve to this controversy.

### I.      Likelihood of Success on the Merits

64.      In light of the evidence in the record here, where the Defendants did in-fact openly

ignore the *Change of Registration* law of RSA 654:34-IV, continues to misapply the *Special*

*Provisions for State and Presidential Primary Elections* law of RSA 659:14, and made no

attempts to follow RSA 654:34 *Hearings on Alterations to Party Registration*, and in concert

with the recent U.S. Supreme court's elections ruling in *Moore v. Harper, 595 U.S. 1 (2022);*

*142 S. Ct. 1089*, there appears to be no viable defense that Defendants can offer, other than their

actions being that of an oversight.

65.     The Elections Clause of the Federal Constitution requires "the Legislature" of each State

to prescribe the rules governing federal elections. Art. I, §4, cl. 1.—*Syllabus of Moore v Harper*

*(above).*

**II.     Plaintiff will suffer irreparable harm if the Defendants unconstitutional presidential**
**electors vote in the Electoral College.**

66.     Allowing the unlawful and unconstitutional election to move forward without resolving

this controversy and permit the Defendants to proceed would irreparably harm the Plaintiff and

the Republic both by denying representation in the Presidency by permanently sowing distrust in

New Hampshire's federal elections. This Court has found such threats to constitute irreparable

harm on numerous occasions. The Plaintiff submits the stakes in this case are too high to ignore.

67.     Being forced to implement an unconstitutional enactment can justify an injunction to

prevent that result. See, e.g., Morales v. Trans World Airlines, Inc., 504 U.S. 374, 380-81 (1992).

**III.     The Balance of Equities Tips to the Plaintiff.**

68.     New Hampshire represents citizens who will vote in the 2024 presidential election.

Because of the Defendants unconstitutional actions, the Defendants represent some citizens who

cast ballots not in compliance with both the *Electors Clause* and the *Elections Clause*. However,

it would irreparably harm the Plaintiff if the Court denied interim relief.  In addition to ensuring

that the 2023 primaries and 2024 Presidential Primary election is resolved in a manner consistent

with the Constitution, this Court must review the violations that occurred with the Defendants to

enable Congress and State legislatures to avoid future chaos and constitutional violations. Unless

this Court acts to review this federal and presidential election, these unconstitutional and

unilateral violations of state election laws will continue in the future.

**IV.     The Public Interest Favors Interim Relief.**

69.     Here, the Plaintiff (as well as the public-at-large) has a "personal stake" in the outcome of this complaint. *Baker v. Carr, 369 U. S. 186, 204* (1962), as cited in *Moore v Harper, above*.

70.     When parties dispute the lawfulness of government action, the public interest collapses into the merits. ACLU v. Ashcroft, 322 F.3d 240, 247 (3d Cir. 2003); Washington v. Reno, 35 F.3d 1093, 1103 (6th Cir. 1994); League of Women Voters of the United States v. Newby, 838 F.3d 1, 12 (D.C. Cir. 2016). If the Court agrees with the Plaintiff that non-legislative actors lack authority to amend state statutes for selecting presidential electors, the public interest requires interim relief.

71.     Withholding relief would leave a taint over the election, disenfranchise the Plaintiff and the voters pursuant to the 'one person one-vote' rule, and lead to still more electoral deftness in future elections.  Electoral integrity ensures the legitimacy of not just our governmental institutions, but the Republic itself. See Wesberry, 376 U.S. at 10. "Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." Purcell, 549 U.S. at 4. Against that backdrop, few cases could warrant this Court's review more than this extraordinary case arising from a presidential election. In addition, the constitutionality of the process for selecting the President is of extreme national importance. If the Defendants are permitted to violate the requirements of the New Hampshire state and federal Constitutions in the appointment of their presidential electors, the resulting vote of the Electoral College not only lacks constitutional legitimacy, but the Constitution itself will be forever sullied in this state.

72.     Defendants violated not only the Electors Clause, U.S. Const. art. II, § 1, cl. 2, but also the Elections Clause, id. art. I, § 4 (to the extent that the Article I Elections Clause textually applies to the Article II process of selecting presidential electors). Plaintiff and their voters are entitled to a presidential election in which the votes are counted only if the ballots are cast and

counted in a manner that complies with the pre-existing laws of each state. See *Anderson v. Celebrezze*, 460 U.S. 780, 795 (1983) ("for the President and the Vice President of the United States are the only elected officials who represent all the voters in the Nation."). Voters who cast lawful ballots cannot have their votes diminished by states that administered their . . presidential elections in a manner where it is impossible to distinguish a lawful ballot from an unlawful ballot.

73.    The Plaintiff interest and the public interest align. In weighing the public interest, the Court should consider the importance of maintaining the public's confidence in election administration through fair elections.

## PROPOSED CONTENTS AND SCOPE OF ORDER

A. This proposed "Order" is designed to prevent a manipulation and fraud of an opposing affiliate party's primary candidate vote-tally, but also to prevent a political party (Democrat) from unfairly losing their respective voter-base. The Plaintiff submits the reasons why this court must issue Expedited Injunctive Relief, as follows:

i.    Defendants David Scanlan, Secretary of State for the state of New Hampshire "NH-SOS" and Chris Ager, Chairman of the New Hampshire Republican Committee "NH-GOP", "Defendants", on or around June 7th, 2023, until on or around October 6th, 2023, did permit political affiliations (Democrat party and Republican party) to switch their political affiliations unlawfully after the state statutory cut-off period of June 7th, 2023, in violation of RSA 654:32 *(Hearings on Alterations to Party Registration)*; RSA 654:34 *(Change of Registration)*, and RSA 659:14 *(Special Provisions for State and Presidential Primary Elections)*.

   ii.     The Defendants refuse to acknowledge their actions as an error or oversight; refuse to correct these actions that violated New Hampshire state election laws and the New Hampshire and federal constitutions, and are continuing to violate these described New Hampshire election laws into the federal Presidential Primary election of January 23, 2024, the federal congressional primary elections of September 10th, 2024 and the federal general elections of November 6, 2024.

   iii.    This extension of keeping open political affiliation changes is a big deal because a significant number of political affiliations were reported to have changed during this period, reportedly from Democrat to undeclared and Republican affiliations in a reported scheme to affect the outcome of the Republican primary winner.

## PRAYER FOR RELIEF

B.   **Terms & Corrective Actions:** Defendants must correct their previous election law violations as described *above*, forthwith, in accordance with the following:

1.   Option 1 — Determine (audit) the number of political affiliate *(Democrat, Republican, Independent, etc)* voters who changed their political affiliations to "undeclared" during the first Wednesday in June, 2023, to October 6th, 2023, in violation of RSA 654:34, and have those "undeclared" voters returned to their previous political party affiliations,[7] in order to prevent a manipulation and fraud of an opposing affiliate party's primary candidate vote-tally.

2.   The approximate 400 Democrat party affiliates who switched to a Republican party affiliate, from June 7th, 2023, to October 6th, 2023, in violation of RSA 654:34, must be switched back to their original Democrat party.

---

[7] It has been reported that the number of "undeclared" changes made were around 3,500.

3.   <u>Option 2</u> — The New Hampshire Presidential primary is required to be moved

forward from Tuesday, January 23rd, 2024, to the same date as the federal

congressional primary of September 10th, 2024. This "court order" is made to correct

previous political affiliation changes made outside of state law, and to 're-establish' a

New Hampshire voter's 'legal' political designation in compliance with state election

law RSA 654:34 and those laws as described above, and to be in compliance with

both the federal electors clause and federal elections clause.

**Restraints and Order Proposed:**

ii.    This Court should first administratively stay or temporarily restrain the Defendant

States from voting in the electoral college until further order of this Court and then

issue a preliminary injunction or stay against their doing so until the conclusion of

this case on the merits.

iii.    To enjoin Defendant David Scanlan, individually and in his official capacity as New

Hampshire Secretary of State, his agents, successors and employees, from

circumventing, ignoring, or violating any and all New Hampshire election laws under

RSA 654:32 *(Hearings on Alterations to Party Registration)*; RSA 654:34 *(Change of*

*Registration)*, and RSA 659:14 *(Special Provisions for State and Presidential*

*Primary Elections.*

iv.    To enjoin Defendant Chris Ager, individually and in his official capacity as chairman

of the New Hampshire Republican Committee, his agents, successors and employees,

from circumventing, ignoring, or violating any and all New Hampshire election laws

under RSA 654:32 *(Hearings on Alterations to Party Registration)*; RSA 654:34

(Change of Registration), and RSA 659:14 (Special Provisions for State and Presidential Primary Elections.

v.   To require each of the named Defendants to correct all prior violations of the New Hampshire election laws in the time, manner, and place as proposed by the Plaintiff's *above-options* or determined by this court.

vi.   To require all New Hampshire municipalities to cooperate with Defendant David Scanlan, New Hampshire Secretary of State, or vice-versa, in-as-much-as providing information required to assist in the court's 'Order' for correcting the above-described statutory election violations — Fed. R. Civ. P. 65(d)(2)(A)(B).

vii.   Expedited Relief is Required pursuant to the existing primary and general election schedules described above, and the following electoral schedule:

(a) December 8, 2024 is the safe harbor for certifying presidential electors, 3 U.S.C. § 5;

(b) the electoral college votes on December 14, 2024, 3 U.S.C. § 7; and

(c) the House of Representatives counts votes on January 6th, 2025, 3 U.S.C. § 15. Absent some form of relief, the defendants will appoint electors based on unconstitutional and deeply uncertain election results, and the House will count those votes on January 6, tainting the election and the future of free elections.

"Expedited consideration" of this motion for Injunctive Relief is needed to enable the Court to resolve this original action before the applicable statutory deadlines, as well as the constitutional deadline of January 20, 2025, for the next presidential term to commence. U.S. Const. amend. XX, § 1, cl. 1. The Plaintiff respectfully requests that the Court order the Defendants to respond to the motion for Expedited Relief for Injunctive Relief to file by .

The Plaintiff waive the waiting period for reply briefs under Fed. R. Civ. P.

12(a)(1)(A)(i), so that the Court could consider the case on an expedited schedule.

## CONCLUSION

Enjoining or staying Defendants appointment of electors would be an especially

appropriate and efficient way to ensure that the eventual appointment and vote of such electors

reflects a constitutional and accurate tally of lawful votes, and otherwise complies with the

applicable constitutional and statutory requirements in time for the House to act on January 6,

2025.

Under the circumstances, it would be appropriate for this Court to issue a preliminary

injunction that, during the pendency of this litigation, enjoins the Defendants from continuing

their unlawful and unconstitutional behavior in the upcoming primary and general elections. The

Plaintiff respectfully request that any alternative remedial process ordered by the Court, other

than that proposed by the Defendants, allow for timely enactment of a new plan that complies

with New Hampshire law and the New Hampshire constitution.

**SWORN TO AND SUBSCRIBED THIS 15th, DAY OF DECEMBER , 2023.**

Respectfully submitted,

Wayne Paul Saya, Sr, Plaintiff
*In propria persona*
24 Cadogan Way
Nashua, NH 03062
Waynesaya2@gmail.com
571-220-3344

## CERTIFICATE OF SERVICE

I, Wayne Paul Saya, Sr., individually *pro se*, and not being a member of a class, have caused to deliver this 2nd AMENDED MOTION and MEMORANDUM FOR EXPEDITED CONSIDERATION FOR PRELIMINARY INJUNCTIVE RELIEF, have been served upon the following parties, by way of U.S. Certified or Registered Mail, Postage Pre-Paid, to:

David Scanlan, Defendant
ATTN: Brendan Avery O'Donnell, Attorney
NH Department of Justice (Concord)
33 Capitol St
Concord, NH 03301
603-271-3650
Fax: 603-271-2110
Email: brendan.a.odonnell@doj.nh.gov

Chris Ager, Defendant, Chairman
New Hampshire Republican State Committee
ATTENTION: Attorney Bryan K. Gould
Cleveland, Waters and Bass, P.A.
2 Capital Plaza
Concord, NH 03302-1137

Co-Plaintiff Copies:

Karen Testerman, Plaintiff, *pro se*
9 Stone Avenue
Franklin, New Hampshire 03235
Karen@KarenTesterman.com
603-934-7111

Lynn-Diane Briggs, Plaintiff, *pro se*
4 Golden Pond Lane
Amherst, New Hampshire 03031
Lynbdance@gmail.com
603-801-6886

SWORN TO UNDER PAINS AND PENALTIES OF PERJURY this 15th, day of December, 2023.

Wayne Paul Saya, Sr, Plaintiff, *pro se*
24 Cadogan Way
Nashua, NH 03062
Waynesaya2@gmail.com
571-220-3344