FILED - USDC -NH
2023 DEC 22 PM 2:41

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

**Karen Testerman,** *pro se*

**Lynn-Diane Briggs,** *pro se*

**Wayne Paul Saya, Sr.,** *pro se*

*Plaintiffs*

Vs

**DAVID SCANLAN**
**SECRETARY OF STATE FOR NEW HAMPSHIRE, et al,**

*Defendants*

*Docket No.23-cv-00499-JL-AJ*

PLAINTIFFS MOTION FOR LEAVE OF THE COURT TO FILE THIS LATE OBJECTION WITH MEMORANDUM TO DEFENDANT SECRETARY OF STATE'S MOTION TO DISMISS AND TO JOIN WITH DEFENDANT CHRIS AGER'S MOTION TO DISMISS.

Now comes the Plaintiff, Wayne Paul Saya, Sr., Karen Testerman and Lynn-Diane Briggs, *pro se* "Plaintiffs" in the above-entitled and number action, hereby moves to Object to the Defendants Motions to Dismiss the Plaintiffs Complaint..

1. On December 6, 2023, Defendant Secretary of State filed a motion to dismiss—*Pacer doc. 27*, and on December 8, 2023, Defendant Ager filed his motion to dismiss—*Pacer doc 28*.

2. On December 13, 2023, Plaintiff filed a motion to join Plaintiff Testerman's Amended Complaint—*Pacer doc. 35*.

3. On December 18, 2023, Plaintiff filed his Amended Motion for an amended Expedited Motion for Preliminary Injunctive Relief to incorporate amended Federal Election statutes from Plaintiff Testerman's Amended Complaint—*Pacer doc. 40*.

1

4. <u>Whereas</u>, it was the Plaintiff's belief that both Defendants motions to dismiss had been mooted by the filing of the amended complaint and 2nd amended expedited motion for injunctive relief, where the Plaintiff's said memorandum of law said expedited relief answered or cured all of Defendant Secretary of State's issues within his motion to dismiss.

5. The Plaintiff learned in court on Thursday, December 21st, 2023, that the Plaintiff's Objection to Defendant Ager's motion to dismiss remained due Friday, December 22, 2023, (today) and Defendant Secretary of State was due Wednesday, December 20, 2023.

6. <u>Whereas</u>, the purpose of addressing both of Defendants Motions to Dismiss together is because both Defendants ignore the recent U.S. Supreme court rulings in *Moore v. Harper*, 600 U.S. 1 (decided June 27, 2023) and *New York State Rifle & Pistol Assn., Inc., et al. v. Bruen*, 597 U.S.1, No. 20-843 (U.S. Supreme Court, June 23, 2022) regarding the 'Standard of Review' for Federal Elections—explained in paragraphs 21-29 *below*.

7. <u>Whereas</u>, with the volume of complicated filings to correct errors the pro se litigants have been engaged in, Plaintiff believes the court has now cleared-up the number of questions and confusion the pro se Plaintiffs have had.

8. <u>Whereas</u>, the Plaintiff has now completed his "Objection" to Defendant Ager's motion to dismiss today, December 22, 2023, and has now merged Defendant Secretary of State's motion to dismiss..

9. <u>Wherefore</u>, the Plaintiff argues the following "Objection" to the Defendants Motion to Dismiss:

**Plaintiff's Objection to Defendants Motion to Dismiss**

10. The Plaintiff alleges that the Defendants violated his substantive and procedural due process and equal protection rights under articles 1, 11, 14, and 15 of the New Hampshire Bill of Rights, and under the 14th Amendment to the Federal Constitution pertaining to their violations

of the U.S. "Elector's clause" of Article II, Section 1. See Plaintiff's Declaration (Pacer no. 21-1) and associated Exhibits (Pacer 21-2 through 7).

11.     However, the defendants violated not only the Electors Clause, U.S. Const. art. II, § 1, cl. 2, but also the Elections Clause, art. I, § 4 (to the extent that the Article I "Elections" Clause textually applies to the Article II process of selecting presidential electors). Whereby, Article I, Section 4, Clause 1 of the "Elections Clause" is hereby cited for this specific reason.

12.     Specifically, the Defendants violated the Plaintiff's state and Federal due process and equal protection rights, under color of law, when they "changed the rules" by extending (by 4-months) voters an opportunity to change party affiliations against the statutory requirement of RSA §654:34, IV, from the first Wednesday in June to October 6th, 2023, ignoring the state legislature's protection against fraud and abuse and as mandated by the Electors Clause and Elections Clause *above*.

13.     The Plaintiff alleges the Defendants Constitutional violations stem from the Federal Voting Rights Code 52 U.S. Code § 10101, and 42 U.S.C. 1973a(c), or Section 3(c), (changed to 52 U.S.C 10301) of the Federal Voting and Elections Code.

14.     Plaintiff alleges that the above-named violations were the direct result of the Defendants violating the state's Federal mandate to comply with the U.S. Electors clause and the U.S. Elections clause—*above*, when Defendants each ignored and circumvented the very Elections laws they were mandated to provide, namely New Hampshire Rev. Stat. Ann. "RSA" §659:14 and RSA §654:34 respectively, but in particular, "permit[ting]" New Hampshire voters to "switch their political affiliations after the state statutory cut-off period of June 7, 2023," in violation of a state statute—RSA §654:34, IV. See Pacer no. 32, pars 6-11.

15.     Plaintiff also alleges, by "changing the rules" and extending a New Hampshire voter's ability to change their party affiliation to an additional four months, an unknown number of

voters, although reported as around 4,000 Democrat voters, were able to change their party affiliation in order to vote in the Republican Presidential primary to disrupt and change the outcome of the Republican Presidential nominee, harming the Plaintiff's ability to participate in free and fair Elections, and disenfranchising his one man one vote proposition.

16. Plaintiff believes Defendant Scanlan established new standards (ignoring NH RSA 654:34 and 659:14) for conducting Presidential primary election contests, thereby violating Art. II, §1, "Electors Clause" and Article I, Section 4, Clause 1 of the "Elections Clause" of the United States Constitution and failing to comply with the Federal Voting Rights Code 52 U.S. Code § 10101, and 42 U.S.C. 1973a(c), or Section 3(c), (changed to 52 U.S.C 10301) of the Federal Voting and Elections Code, and whether ignoring these state Election laws violated the Plaintiff's Equal Protection and Due Process rights of both the New Hampshire and U.S. Constitutions. *Compare Bush v Gore*, 531 U.S. 98 at 103 (2000).

17. Should the court declare the violations as indicated above, Plaintiff is seeking immediate relief from the court before the January 23, 2024 Presidential primary to cure these constitutional violations.

**Defendant Secretary of State contend the plaintiffs have failed to state a claim under count II because 18 U.S.C.§595 is a criminal statute which can only be brought by the United States Attorney General.**

18. Accordingly, within the Plaintiffs Amended Complaint, (Pacer doc. 32-1) filed December 13, 2023, the above-named criminal statute was replaced by Plaintiffs with the Federal Voting Rights Code 52 U.S. Code § 10101, and 42 U.S.C. 1973a(c), or Section 3(c), (now located at 52 U.S.C 10301) of the Federal Voting and Elections Code.

**The Defendants Argue that All of the plaintiffs' claims fail to state a claim because they are all predicated upon a misreading of RSA 654:34, IV.**

19. <u>First</u>, Plaintiff argues that Defendant Ager is incorrect in who the action is against. Plaintiff contends in all of his pleadings and motions; that it was the New Hampshire Secretary of State, and Chris Ager, both individually and in their official capacities permitted RSA 654:34,

IV, to be unlawfully ignored and circumvented from the first Wednesday in June of 2023 to October 6, 2023.

20.     <u>Second</u>, the Defendant attempts to bombard the Plaintiff with a series of actions that, are alleged were not performed by the Plaintiff. Although the Plaintiff's Complaint is authored by non-attorney litigants, Plaintiff's believes his Complaint and Memorandum of law provide sufficient information for any seasoned attorney to understand. Namely,

". . . the [New Hampshire] legislature's intent as expressed in the words of the statute considered as a whole, when examining the language of a statute, the court ascribes the plain and ordinary meaning to the words used." "In construing a statute, the court will neither consider what the legislature might have said, nor add words that it did not see fit to include." Contoocook Valley Sch. Dist. V. State, (2021)174 N.H. 154, 261 A.3d 270, 2021 N.H. LEXIS 40.

**The Defendants Are Attempting to Change the 'Standard of Review' by Shifting the Burden of Which They Own**

21.     This involves a standard of review under recent U.S. Supreme Court case rulings regarding a Constitutional standard that applies to state legislative statutes, incorporating the June 2023, *Moore v. Harper,* 600 U.S. 1 (decided June 27, 2023) [hereinafter, "Moore"] and *New York State Rifle & Pistol Assn., Inc., et al. v. Bruen*, 597 U.S.1, [hereinafter, "Bruen"] No. 20-843 (U.S. Supreme Court, June 23, 2022) These rulings are applicable precedent and validate the Plaintiff's Motion here for Expedited Injunctive Relief.

22.     In <u>*Bruen* at 6, par (c) Syllabus</u>, it was held "[t]he exercise of other constitutional rights does not require individuals to demonstrate to government officers some special need." And in *Bruen,* page 15—par. C, the court recognized: "This *Second Amendment* standard accords with <u>how we protect other constitutional rights</u>." *Emphasis supplied*. In-turn, the court started a paint-by-numbers explanation regarding a number of constitutional rights and the state's responsibility.

5

23. State officials now may not duck and/or ignore its responsibility to review the state's impermissible voter-interference practices (In *Moore*, *(above)* that state practice to substantively alter election outcomes, was gerrymandering.)

24. *Bruen*— above further articulated a two-step analysis for determining whether a law, in this case NH RSA 654:34:IV, or regulation, in this case the New Hampshire Elections manual, of constitutionally protected conduct is unconstitutional. Both of these are claimed in the Plaintiff's initial Complaint and now in Plaintiff Testerman's Amended Complaint which Plaintiff Saya has motioned this court to join.

25. First, compare how courts must determine whether any enumerated right (plain text) covers an individual's conduct. See *Bruen—above*. In this case, the Defendants conduct.

26. The Government must justify its regulation by demonstrating that it is consistent with the Nation's historical tradition regulating the right in question. Only then may a court conclude that the individual's conduct falls outside the enumerated right's unqualified command.

27. *Bruen* provided a paint-by-numbers review in showing that the Burden of proof was on the government in federal cases. *Moore v Harper* is the election law case where the state was not following the plain text of the state's election law. **Bottom-line**, If *Moore v Harper—above* did not articulate its' standard, which it did, the *Heller/Bruen* decision would not apply to the states.

28. In reading both decisions, Plaintiff argues that *Moore v Harper—above,* ties state and Federal Election laws with due process and equal protection, and the *Bruen* decision places the burden of proof upon the government to show the Constitutionality of their decision, both creating the standard of review for Elections law.

29.     In addition, also in *Bruen*—<u>above</u> compare where declaratory and injunctive relief under Rev. Stat. 1979, 42 U.S.C.§1983, alleging that respondents violated their Second and Fourteenth Amendment right. <u>See Bruen, pg. 6, par C.</u>

**Defendant Chris Ager is Properly Named individually and in His Official Capacity.**

30.     The Defendant seeks dismissal (within footnote no. 1) of the complaint citing apparent "somewhat ambiguous" language used between the 'case caption' and the allegations of the complaint. See footnote 1.

31.     "Accordingly, Fed R. Civ. P. 10. Form of Pleadings, (a) Caption; Names of Parties. Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties."

32.     Here, Defendant Ager's name is first in the "Caption" of the Plaintiff's Complaint. Defendant complains the Plaintiff misapplied the name of the NH-GOP as the Plaintiff's intent of identifying NHRSC as a Defendant. However, in Plaintiff's (Wayne Paul Saya, Sr.) Affidavit, page 2, paragraph 6, *(Pacer doc 8-5)* it is shown ". . . Defendant Chris Ager "NH-GOP", . . . ". Accordingly, the Plaintiff identified Defendant Chris Ager as "NH-GOP".

33.     And, "Defendants David Scanlan, Secretary of State for the state of New Hampshire "NH-SOS" and Chris Ager, Chairman of the New Hampshire Republican Committee "NH-GOP", "Defendants", . . " (Pacer Doc. 40-1, pg. 21, par i)

34.     Most importantly, the Plaintiff names Defendant Ager under "PARTIES"—(Pacer 32-1, pg. 14, par 41), as follows:

"Chris Ager, Defendant, is sued individually and in his official capacity as Chairman of the New Hampshire Republican State Committee. The address of the NH-GOP: 10 Water St, Concord, New Hampshire 03301."

7

35.    Defendant Chris Ager's name was written on the Summons as "Defendant", with the address listed as shown in the "caption" of the complaint and as shown in the "PARTIES" within paragraph 41 *(above)* of the Complaint. The 'Summons' (hand-written by the Plaintiff) does not name the NHRSC as a Defendant being served *(Pacer Doc 7)*.

36.    Plaintiff contends that the use of the NH-GOP is a political distinction, and was an attempt to identify Defendant Ager who works for the Grand Old Party—or GOP—a political title and Political (not corporate) Party Destination, and not the non-profit "NHRSC" name on file with the New Hampshire Secretary of State's office. Plaintiff intentionally stayed away from the New Hampshire Republican State Committee, or "NHRSC" as a Defendant entity.

37.    The NEW HAMPSHIRE REPUBLICAN STATE COMMITTEE, is filed with the New Hampshire Secretary of State's office with ID No. 607402 as a Domestic Non-Profit Corporation, established primarily for political purposes. Because the "NHRSC" is nowhere identified in the Plaintiff's Complaint as the "defendant", mistakenly or otherwise, the Defendant's argument regarding Chris Ager as not a Defendant is without merit.

**The Plaintiff's 14th Amendment Right to Vote on Equal Terms - Bush v. Gore Decision Resolved the Defendants Issues Regarding New Hampshire's Responsibilities in Federal Elections.**

38.    Plaintiff contends, voters who wish to manipulate and dilute the vote of an opposing Party can do so by simply switching from Democrat or Republican to "undeclared" within the unlawful four-month extension of paragraph "IV" of RSA §654:34 as created by the Defendants. In-turn, vote for the opposite Party affiliation (Democrat or Republican) candidate in the Presidential Primary as a means of 'ballot stuffing' a weaker candidate in the (Republican) Party's Primary, thereafter switch back to their original Democrat or Republican Party affiliation to vote for their Party's Primary or General Election candidate.

8

39. First, this type of voter manipulation of "undeclared" voters makes RSA §654:34, and specifically paragraph "IV" ineffective, because paragraph "IV"can be used to defeat its intended purpose of preventing party affiliate changes well before a Presidential primary.

40. Plaintiff contends that Election law RSA §654:34 (ignored by the Defendants) was put in place by the NH legislature to avoid this type of Party affiliation[1] fraud and corruption. *Moore v Harper, 600 U.S.1 (June/2023),* addressed this type of issue citing *Smiley v. Holm, 285 U.S. 355 (1932)* ; *State ex rel. Smiley v. Holm, 184 Minn. 228, 238 N.W. 494 (1931).*

> "Legislatures must "provide a complete code for congressional elections", including regulations "relati[ng] to notices, <u>registrations</u>, supervision of voting, protection of voters, <u>prevention of fraud and corrupt practices</u>, counting of votes, duties of inspectors and canvassers, and making and publication of election returns." *Smiley, 285 U.S. at 366* as referred to in *Moore v. Harper at 21-22.* <u>Emphasis supplied</u>

41. In a recent Manchester, New Hampshire, Supreme court case of <u>*Miles Brown & a.v. Secretary of State*</u>, Opinion Issued: November 29, 2023, and argued by the NH attorney general's office for the state. Within Brown at 22, <u>footnote 3</u> of the opinion, the court relies upon *Moore v. Harper, 143 S. Ct. 2065, 2088-90 (2023)* making a point that the [state] Supreme Court has "an obligation to insure that state court interpretations of [state] law do not evade federal law".

42. New Hampshire exercised the state's mandated authority pursuant to the Federal 'Elections Clause' for the "Electors Clause" and created a "state" 'Election Code', located starting at N.H. Rev. Stat. Ann. "RSA" §§ 652 to 671, respectively, and incorporates' the following State Election laws:

Chapter 652 – General Provisions
Chapter 653 – Election of Officers and Delegates
Chapter 654 – Voters and Checklists[2]

---

[1] https://legiscan.com/NH/text/HB153/2012
[2] **NOTE: RSA 654:34-a** Application to Town or City Clerk; Changes to be Forwarded. – are for city and town elections for affiliation changes.

Chapter 655 – Nominations
Chapter 656 – Preparation of Voting Materials
Chapter 657 – Absentee Voting
Chapter 658 – Pre-Election Procedure
Chapter 659 – Election Procedure
Chapter 660 – Post-Election Procedure
Chapter 661 – Vacancies Among Public Officers Elected at State Elections
Chapter 662 – Elective Districts
Chapter 662-A – Division of State Representative Districts of Towns
Chapter 663 – Questions to Voters
Chapter 664 – Political Expenditures and Contributions
Chapter 665 – Ballot Law Commission
Chapter 666 – Provisions for Purity of Elections
Chapter 667 – Constitutional Conventions and State Party Conventions

43.     Accordingly, RSA §654:34 IV – <u>Change of Registration</u>, is incorporated into New Hampshire's 'Election Code' to include Federal Elections, and paragraph "IV" of §654:34 was designed to safeguard a voter's Party affiliation changes:

*No person, who is already registered to vote, whether his party membership has been previously registered or not, shall affiliate with a party or disaffiliate from a party <u>between the first Wednesday in June and the day before the state primary election. Paragraph IV.</u>* Emphasis supplied

44.     After the New Hampshire voter has casted their ballot in the Presidential Primary [3] from "undeclared", to select the Party candidate of choice, New Hampshire law RSA §654:34 V(a) permits the voter to switch-back to the original Party affiliation the voter was registered in before the voter changed to an "undeclared" status:

V. "(a) <u>At any primary</u>, *the supervisors of the checklist shall make available within the polling place a card or list of undeclared voters from the statewide centralized voter registration database to enable a voter who was registered as an undeclared voter but who changed registration on the day of the primary in order to vote as a registered member of a party to change registration so that the voter is registered once again as an undeclared voter."* Above - <u>Emphasis supplied</u>

---

[3] Paragraph "V" of RSA §654:34 I.(1) is specific "At any primary", which includes Federal Presidential primaries, defeating the Plaintiff's argument that §654:34 is not for Federal Elections.

10

45. Plaintiff contends that the Defendants allowance to unlawfully extend the time for a New Hampshire voter to change Party affiliations harms him by violating New Hampshire's Federal mandate under the "Elections Clause" and in-turn the "Electors Clause" described in *Smiley (above)* as cited in *Harper (2023) above*,

46. . . where this unlawful change disenfranchises, oppresses, damages, and dilutes Plaintiff's vote and thereby his ability to receive and participate in a fair and honest selection of his preferred primary candidate.

47. This unlawful change also is against Plaintiff's fundamental right to substantive and procedural due process and equal protection of the New Hampshire Election Code, which, again, violates the Federal "Elections Clause" and "Electors Clause" mandates.

"The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise. Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another. See, *e. g., Harper* v. *Virginia Bd. of Elections,* 383 U. S. 663, 665 (1966) ("[O]nce the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment")." *Bush v. Gore, Bush v. Gore, 531 U.S. 98 at 104-105 (2000)*

*48.* As a registered Party affiliate, Plaintiff has one vote. However, when rules (laws) designed to protect Federal Primary Elections are permitted to be changed by a State official (Defendant Scanlan) while endorsed by the chairman of the Republican party (Defendant Ager), voters permitted to change their Party affiliation by-way-of unlawful actions of State officials , and back again, are afforded with an unfair advantage and means to have more than one vote—a vote for my party and a vote for their Party in the upcoming primaries, congressional and general Elections. "*It must be remembered that "the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free*

*exercise of the franchise." Reynolds v. Sims, 377 U. S. 533, 555 (1964) as cited in Bush v Gore (above) at 105.*

49. With regard to the one-person one-vote claim by the Plaintiff, *Bush v Gore at 107 (above)* articulated their summary that stands today:

"An early case in our one-person, one-vote jurisprudence arose when a State accorded arbitrary and disparate treatment to voters in its different counties. *Gray* v. *Sanders,* 372 U. S. 368 (1963). The Court found a constitutional violation. We relied on these principles in the context of the Presidential selection process in *Moore* v. *Ogilvie,* 394 U. S. 814 (1969), where we invalidated a county-based procedure that diluted the influence of citizens in larger counties in the nominating process. There we observed that "[t]he idea that one group can be granted greater voting strength than another is hostile to the one man, one vote basis of our representative government." *Id.,* at 819.

50. When speaking of the differing treatments the cities and towns of Florida used when determining the hanging chads controversy in the case of Bush v. Gore *below*, **Justice David Souter**, who had pressed the equal protection issue forcefully during oral argument, wrote: *"I can conceive of no legitimate state interest served by these differing treatments of the expressions of voters' fundamental rights. The differences appear wholly arbitrary.*

**Defendants Claim that Plaintiffs fail to allege in Count IV the facts necessary to establish the requisite "patent and fundamental unfairness" of the impending presidential primary, the complaint fails to state a claim on which relief can be granted**

51. When speaking of the 1962 decision of BAKER v. CARR, 369 U.S. 186, 369 U.S. 186 (1962), regarding the "patent and fundamental unfairness", doctrine—without reiterating this landmark decision—the recent *Moore v Harper, 600 U.S.1 decision (above)* specifically spoke of judging new decisions in Election disputes, when a state legislature carries out its federal constitutional power to prescribe rules regulating federal elections, it acts both as a lawmaking body created and bound by its state constitution, and as the entity assigned particular authority by

12

the Federal Constitution. Here, the Defendants showed no fundamental fairness toward the Plaintiff's right to a fair and equal Election when they arbitrarily changed the rules of the game to allow four additional months for a political party to change have the opportunity to change the outcome of a Presidential primary Election.

**The Secretary of State is not entitled to sovereign immunity under the Eleventh Amendment to the United States Constitution.**

52. **First,** the 11th amendment of the U.S. Constitution, under the following case (cited by the Defendant) of *Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996)*, was in fact a U.S. Supreme Court case which holds, that Article I of the U.S. Constitution does not give the United States Congress the power to abrogate the sovereign immunity of the states, where the states are protected under the Eleventh Amendment. However, such abrogation of a state's immunity is permitted where it is necessary to enforce the rights of citizens guaranteed under the Fourteenth Amendment, as shown in *Fitzpatrick v. Bitzer, 427 US 445 (1976)*.

53. In the instant case, the Plaintiff has made numerous claims citing election law violations to their U.S. Fourteenth amendment equal protection and due-process rights.

54. **Secondly,** the Florida case *(above)* also held that the doctrine in *Ex parte Young, 209 US 123 (1908)*, allowing state officials to be sued in their official capacity for injunctive relief (not monetary damages). In the instant case, Plaintiff is seeking non-monetary orders and declarations from the court.

55. **Third,** for negligence claims, New Hampshire provides a limited waiver of state sovereign immunity that mirrors the doctrine of *respondeat superior*. Like municipalities, the State is liable for intentional torts, such as what a 1983 action is used for, and only when the state actors do not have a reasonable belief in the lawfulness of their conduct. This is not the case here.

56. New Hampshire provides broad statutory immunity for state officials. The state's statute governing state official liability *(below)* includes a broad policy statement designed to extend the State's sovereign immunity when officers (such as Defendant Secretary of State) are acting within the scope of their official duty, "whether arising against them in their "personal capacity or official capacity," <u>provided they were not acting in a "wanton or reckless manner.</u>

*"It is the intent of this chapter to protect state officers, trustees, officials, employees, and members of the general court who are subject to claims and civil actions arising from acts committed within the scope of their official duty while in the course of their employment for the state <u>and not in a wanton or reckless manner</u>."* <u>See</u> NH RSA 99-D:1. *Emphasis supplied.*

57. **Finally**, the Plaintiffs have further cited 42 U.S.C. Section 1983 in this action, which provides each of the Plaintiffs an individual right to sue state government employees and others acting "under color of state law" 18 U.S. Code §242.

58. The primary state Elections law required by the federal Elections clause that was violated is as follows:

*IV. No person, who is already registered to vote, whether his party membership has been previously registered or not, <u>shall affiliate with a party or disaffiliate from a party between the first Wednesday in June and the day before the state primary election</u>.* RSA 654:34, IV. *Emphasis supplied*

and, where under the 14th Amendment to the U.S. Constitution Plaintiff's rights of 'equal protection' were violated:

"*No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws*." U.S. Const. Amend. 14.

**Prayer for Relief**

The Defendants motions for dismissal for their violations of the state's Election Laws virtually relies heavily upon shifting their burden upon the Plaintiff. Plaintiff has stated a number of claims upon which relief can be granted, and the relief the Plaintiff seeks is found, *inter alia*, is within Options 1 and 2 within the Plaintiff's Motion for Expedited Injunctive Relief.

Plaintiffs believe this is a dispositive motion not requiring assent from the Defendants, but have requested an assent nonetheless.

Therefore, for the foregoing reasons, the Defendants motions to Dismiss the Plaintiff Complaint must be denied.

**SWORN TO UNDER PAINS AND PENALTIES OF PERJURY THIS 22ND DAY OF DECEMBER, 2023.**

Respectfully submitted,

Wayne Paul Saya, Sr. Plaintiff, *pro se*
24 Cadogan Road
Nashua, New Hampshire 03062
Waynesaya2@gmail.com
571-220-3344 mobile

Karen Testerman, Plaintiff, *pro se*
9 Stone Avenue
Franklin, New Hampshire 03235
Karen@KarenTesterman.com
603-934-7111

Lynn-Diane Briggs, Plaintiff, *pro se*
4 Golden Pond Lane
Amherst, New Hampshire 03031
Lynbdance@gmail.com
603-801-6886

# CERTIFICATE OF SERVICE

I, Wayne Paul Saya, Sr., Plaintiff, *pro se*, have caused to deliver the named, PLAINTIFF "WAYNE PAUL SAYA, SR." MOTION FOR LEAVE OF THE COURT TO FILE LATE OBJECTION TO DEFENDANT SECRETARY OF STATE MOTION TO DISMISS IN ORDER TO COMBINE WITH DEFENDANT CHRIS AGER MOTION TO DISMISS. and the foregoing documents have been served upon the following Defendants and Plaintiffs, certified mail and U.S. postage pre-paid:

David Scanlan, Defendant
Secretary of State of New Hampshire
C/O: Brendan Avery O'Donnell
NH Department of Justice (Concord)
33 Capitol St
Concord, NH 03301
603-271-3650
Fax: 603-271-2110
Email: brendan.a.odonnell@doj.nh.gov

Chris Ager, Defendant
Chairman
New Hampshire Republican State Committee
10 Water St, Concord, New Hampshire 03301

**SWORN TO UNDER PAINS AND PENALTIES OF PERJURY this 22th day of December, 2023.**

*/s/ Wayne Paul Saya, Sr.*
Wayne Paul Saya, Sr. Plaintiff, pro se
24 Cadogan Road
Nashua, New Hampshire 03062
Waynesaya2@gmail.com
571-220-3344 mobile

*/s/ Karen Testerman*
Karen Testerman, Plaintiff, *pro se*
9 Stone Avenue
Franklin, New Hampshire 03235
Karen@KarenTesterman.com
571-220-3344 mobile

*/s/ Lynn-Diane Briggs*
Lynn-Diane Briggs, Plaintiff, *pro se*
4 Golden Pond Lane
Amherst, New Hampshire 03031
Lynbdance@gmail.com
603-801-6886