**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Karen Testerman, et al,         \*

                                  \*

          Plaintiffs,       \*

     v.                       \*     Civil No. 1:23-cv-00499-JL-AJ

                                  \*

Secretary of State David M. Scanlan, et al,  \*

                                  \*

          Defendants.      \*

                                  \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>**SECRETARY OF STATE'S MEMORANDUM OF LAW IN SUPPORT OF**
**THE SECRETARY OF STATE'S MOTION TO DISMISS**
**THE PLAINTIFFS' AMENDED COMPLAINT**</u>

       The Defendant, New Hampshire Secretary of State David M. Scanlan (the "Secretary of

State"), through his counsel, the New Hampshire Office of the Attorney General, submits this

memorandum of law in support of the Secretary of State's motion to dismiss the Plaintiffs'

amended complaint.

       I.   <u>**Introduction**</u>:

1.     The Plaintiffs, Karen Testerman, Lynn-Diane Briggs, and Wayne Paul Saya, Sr., brought

this action against the Secretary of State and the New Hampshire Republican State Committee.

The Plaintiffs allege that the Defendants violated several federal constitutional provisions and

one federal statute by "permit[ting]" New Hampshire voters to "switch their political affiliations

after the state statutory cut-off period of June 7, 2023," in violation of a state statute—RSA

654:34, IV.  <u>See</u> ECF 32-1, at 5-10, ¶¶11-27.  The Plaintiffs' complaint seeks various injunctive

relief to correct these "unlawful and unconstitutional violations of New Hampshire's election

laws," <u>see</u> ECF 32-1, at 21 (prayer for relief), including ordering the Secretary of State to "Cease

and Desist all violations of New Hampshire's election laws" and to "'correct' all political

affiliation changes made from June 7, 2023, until the present date."  ECF 32-1, at 22, ¶¶A-B.

2.      The Plaintiffs' claims must be dismissed for several reasons: (1) the Secretary of State is

entitled to sovereign immunity under the Eleventh Amendment to the United States Constitution;

(2) the Plaintiffs' complaint for injunctive relief must be denied consistent with the <u>Purcell</u>

Principle because granting the Plaintiffs' requested injunctive relief this close to New

Hampshire's January 23, 2023, presidential primary election would result in voter confusion and

voter disenfranchisement; (3) the Plaintiffs' claims fail as a matter of law because they are each

based on a violation of RSA 654:34, IV, which does not apply to presidential primary elections;

(4) each count in the Plaintiffs' complaint fails to state a claim for which relief can be granted;

and (5) the Plaintiffs have not alleged sufficient facts to demonstrate that they have individual

Article III standing against the Secretary of State.

II.  **Background**:

A.  <u>Plaintiffs' claims and requests for injunctive relief</u>:

3.      The Plaintiffs' first claim alleges that the Defendants violated the United States

Constitution, Article II, Section 1 (the "Electors Clause").  ECF 32-1, at 15-17.  The Plaintiffs

acknowledge that the Electors clause grants state legislatures the authority to "determine the

rules for appointing presidential electors," and they allege that the "pertinent rules here are the

state elections statutes."  ECF 32-1, at 15-16, ¶50.  The Plaintiffs then allege that the Defendants

violated state election laws, specifically RSA 654:34, IV, which sets a deadline for registered

New Hampshire voters to change their party affiliation prior to state primary elections.  <u>See</u> ECF

32-1, at 16, ¶54 (alleging the Defendants violated state election laws as set forth in paragraphs

11-22); ECF 32-1, at 5-8, ¶¶11-22 (alleging the Defendants violated RSA 654:34 by allowing

registered voters to change their party affiliation between June 7, 2023, and October 6, 2023, in advance of the presidential primary election).  The Plaintiffs do not explain how the Defendants conduct could violate the Electors Clause based on party registration changes prior to a presidential primary election, where all qualified voters may vote in the presidential general election regardless of political affiliation.  See also RSA 653:2 (presidential electors are elected at state general elections—not at presidential primary elections).

4.      The Plaintiffs' second claim alleges that the Defendants violated 52 U.S.C. §10101 by "ignor[ing] or interfer[ing] with existing state election law requirements."  ECF 32-1, at 17-18, ¶¶58-59.  52 U.S.C. §10101 generally prohibits states from depriving a person of the right to vote based on race, color, or previous condition and from intimidating, threatening, or coercing another person for the purpose of interfering with their right to vote.   However, the Plaintiffs do not have authority to enforce alleged violations of this federal statute.  See 52 U.S.C. §10101(c); Jimenez v. Junius Real Estate, No. 16-CV-7483, 2017 U.S. Dist. LEXIS 87504, at *14 (S.D.N.Y. June 7, 2017) (ruling that 52 U.S.C. § 10101 does not create a private right of action) (collecting cases).

5.      The Plaintiffs' third claim alleges that the Defendants violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by violating state election laws, thereby "creat[ing] different voting standards than those used in elections past."  ECF 32-1, at 19, ¶65.  The Plaintiffs clarify that they believe the state election law violations they identified in paragraphs 11-22 of their complaint violate "the one-person, one vote principle."  ECF 32-1, at 18-19, ¶63.  The Plaintiffs do not allege that the Defendants are treating the Plaintiffs treated differently than any identified class of similarly situated people.

6.      The Plaintiffs' fourth claim alleges that the Defendants violated the Plaintiffs' substantive and procedural due process rights by violating state election laws.  See ECF 32-1, at 19-20, ¶¶67-69 (alleging that the "Defendants acted unconstitutionally to change their election laws—including unlawful and unlawfully accepted administrative changes to existing state election laws").  The Plaintiffs clarify that the Defendants violated the Due Process clause by committing the "intentional violations of State election law" identified in paragraphs 11-22 of their complaint.  ECF 32-1, at 21, ¶70.  The Plaintiffs do not articulate any specific procedural or substantive due process right held by the Plaintiffs that the Defendants allegedly violated.

7.      The Plaintiffs do not identify any case law or other authority that demonstrates that the Plaintiffs' alleged injury constitutes a cognizable injury in fact sufficient to support Article III standing against the Defendants.

8.       The Plaintiffs primarily seek injunctive relief based on their claim that the Defendants violated RSA 654:34, IV by allowing registered New Hampshire voters to change their party affiliation between June 7, 2023, and October 6, 2023.  Specifically, the Plaintiffs seek a declaration that the Defendants are in violation of State election laws and injunctive relief ordering the Defendants to: (1) "cease and desist all violations of New Hampshire election laws"; and (2) "'correct' all political affiliation changes made from June 7, 2023, until the present date."  ECF 32-1, at 22, ¶¶A-B.

9.      The Plaintiffs additionally seek injunctive relief relating to appointing and certifying presidential electors.  See ECF 32-1, at 22-23, ¶¶C-F.  However, none of the Plaintiffs' underlying claims or factual assertions explain how alleged violations of state election laws relating to changing voter party affiliation prior to presidential primary elections warrants

injunctive relief related to the outcome of the presidential general election, at which all qualified
New Hampshire voters have a right to vote regardless of their party affiliation.

B. New Hampshire's presidential primary election dates:

10.     The Secretary of State set the candidate filing period for the New Hampshire Presidential
Primary to October 11 to October 27, 2023.  See RSA 655:47, II (providing that presidential
primary declarations of candidacy shall be filed "during such … time period as the secretary of
state shall announce"); see also ECF 1, Ex. A (September 13, 2023, letter from Secretary of State
to local election officials regarding presidential primary filing period and the deadline for
registered voters to change their party affiliation prior to the presidential primary election).

11.     Based on the October 11, 2023, beginning date of the presidential primary filing period,
the last day for registered voters to change their registration was Friday, October 6, 2023.  See
RSA 654:32 (providing that before each presidential primary election, the supervisors of the
checklist must meet "on the Friday preceding the first day of the filing period" for "the change of
registration of legal voters as provided in RSA 654:34 or RSA 654:34-a or both"); see also ECF
1, Ex. A.

12.     The Secretary of State set the date for the New Hampshire presidential primary election
for January 23, 2024.  See RSA 653:9 (authorizing the Secretary of State to select a date for the
presidential primary election that is 7 days or more preceding the date any other state shall hold a
similar election); see also ECF 32-1, at 7, ¶¶19-20.

III. **Plaintiffs' claims should be dismissed**:

A. Standard of Review:

13.     In ruling on a motion to dismiss, the Court must accept as true all the factual allegations
in the complaint and construe all reasonable inferences in favor of the plaintiff.  See Burt v. Bd

of Trs. of the Univ. of R.I., 84 F.4th 42, 50 (1st Cir. 2023).  The plaintiff's complaint must

contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face.  Id.  However, the Court need not accept "bald assertions" or "legal conclusions."  See

Abbot v. United States, 144 F.3d 1 (1st Cir. 1998) (quotation omitted).  Legal conclusions can

provide the complaint's framework, but they must be supported by factual allegations.  Ashcroft

v. Iqbal, 556 U.S. 662, 678 (2009).

     B.  The Secretary of State is entitled to Eleventh Amendment Immunity.

14.     The sovereign immunity embodied in the Eleventh Amendment protects an unconsenting

state against suit brought by private parties in federal court.  See Seminole Tribe. v. Florida, 517

U.S. 44, 52-54 (1996).  As relevant here, the United States Supreme Court ruled that Eleventh

Amendment immunity bars suits against states in federal court that allege violations of state law.

See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984) (explaining that the

"need to reconcile competing interests" between supremacy of federal law and the constitutional

immunity of states "is wholly absent … when a plaintiff alleges that a state official has violated

state law" (emphasis in original)).  The Supreme Court reasoned that "it is difficult to think of a

greater intrusion on state sovereignty than when a federal court instructs state officials on how to

conform their conduct to state law."  Id.

15.     Here, each of the Plaintiffs' claims is based on their underlying assertion that the

Secretary of State violated RSA 654:34, IV by allowing voters to change their party affiliation

after the deadline set forth in RSA 654:34, IV.  See ECF 32-1, at 5-9, ¶¶11-22.  The Plaintiffs

repeatedly refer to the Secretary of State as having violated RSA 654:34 or "state election laws."

See, e.g., ECF 32-1, at 5, ¶12 (alleging that the Defendants "are continuing to violate these

described New Hampshire election laws"); ECF 32-1, at 21 (prayer for relief) (alleging that the

Defendants unlawfully and unconstitutionally violated "New Hampshire's election laws"); ECF 32-1, at 22, ¶¶A-B (requesting injunctive relief ordering the Defendants to "Cease and Desist all violations of New Hampshire's election laws" and ordering the Defendants to "'correct' all political affiliation changes").

16.     Although the Plaintiffs cloak their claims under the guise of federal constitutional and statutory violations, the Plaintiffs' complaint makes it clear that each claim is based on the alleged violation of state election laws.  See ECF 32-1, at 3, ¶6 (acknowledging that the Plaintiffs' alleged constitutional violations "directly relate to the Defendants violating … the state laws that govern state and federal primary elections"); ECF 32-1, at 15-16, ¶50 (alleging the Defendants violated the Electors Clause by violating "state election statutes"); ECF 32-1, at 19, ¶57 (alleging the Defendants violated a federal criminal code provision by ignoring or interfering with "existing state election law requirements"); ECF 32-1, at 17, ¶¶58-59 (alleging that the Defendants violated the Equal Protection Clause by "ignor[ing] and interfer[ing] with existing state election law requirements); ECF 32-1, at 20, ¶68 (alleging that the Defendants violated the Due Process Clause by "unlawfully accept[ing] administrative changes to existing state election laws," including the "intentional violation of State election law by State election officials" as set forth in paragraphs 11-22 of the complaint).

17.     In sum, the Plaintiffs' claims are each based on alleged violations of state law, and the Plaintiffs seek relief to enjoin the State from violating state law and to correct those alleged violations of state law.   Accordingly, the Plaintiffs' claims against the Secretary of State are barred by sovereign immunity.

18.     In their amended complaint, the Plaintiffs attempt to evade the Secretary of State's sovereign immunity by arguing that RSA chapter 541-B operates to waive the State's sovereign

immunity.  <u>See</u> ECF 32-1, at 15, ¶48.  The Plaintiffs' argument fails for several reasons.  First, RSA chapter 541-B does not in any way consent to suit in federal courts.  Rather, the statute provides that "Claims under this chapter shall be brought solely in accordance with the provisions of this chapter" and provides for suit <u>only</u> in the State superior court, with the State board of claims, or with certain State agencies.  RSA 541-B:9; <u>see also</u> <u>Beaulieu v. Vermont</u>, 807 F.3d 478, 485 (2d Cir. 2015) ("Even when a state may be sued in its own courts for a money judgment, the Eleventh Amendment protects [the state] from a liability imposed by a federal court.").  Second, although RSA chapter 541-B authorizes certain claims to be brought against the state, "claim" is defined as a "request for monetary relief" for "Bodily injury, personal injury, death or property damages" caused by agents of the State or "Property damage" suffered by a state employee or official.  The Plaintiffs have not asserted a claim under RSA chapter 541-B.  Nor have the Plaintiffs alleged bodily injury, personal injury, death, or property damages that could constitute a "claim" under RSA chapter 541-B.

    C.  <u>The Plaintiffs' requested relief would violate the Purcell Principle</u>.

19.    "Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls."  <u>Purcell v. Gonzalez</u>, 549 U.S. 1, 4-5 (2006).  Because of the risk of voter confusion and suppression of voter turnout, the Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."  <u>Republican Nat'l Comm. v. Democratic Nat'l Comm.</u>, 140 S.Ct. 1205, 1207 (2020).

20.    Here, the Plaintiffs' claims are based on their assertion that the Secretary of State violated state election laws by allowing registered voters to change their party affiliation between June 7, 2023, and October 6, 2023, in advance of the presidential primary election, and the Plaintiffs

seek injunctive relief compelling the Secretary of State to "'correct all political affiliation changes made from June 7, 2023, until the present date." <u>See</u> ECF 32-1, at 22, ¶B.

21.     For New Hampshire presidential primary elections, a voter who is registered to a particular political party on primary election day can only receive a ballot to vote in that party's primary.  <u>See</u> RSA 659:14, I ("A person desiring to vote at a state or presidential primary election shall, at the time of announcing the person's name, also announce the name of the party to which the person belongs or whether the person is registered as an undeclared voter. If the person's party membership has been registered before, the person shall be given only the ballot of the party with which the person is registered . . . .").  Voters can normally affiliate or disaffiliate with a political party by registering that change with the supervisors of the checklist for the town in which they are domiciled.  <u>See</u> RSA 654:34, I.  However, voters cannot change their party affiliation between the start of the primary candidate filing period and the date of state or presidential primary elections.  <u>See</u> RSA 654:32 (requiring a final supervisors of the checklist session to be held prior to the candidate filing period for state and federal primary elections to allow voters to change their voter registration).

22.     Here, the presidential primary candidate filing period was from October 11 to October 27, 2023, and the final supervisors of the checklist session was accordingly held on October 6, 2023—the Friday before the start of that filing period.  <u>See</u> ECF 1, Ex. A; RSA 654:32 ("Before the presidential primary, the [supervisors of the checklist] session shall be on the Friday preceding the first day of the filing period").  Accordingly, the deadline for voters to change their party affiliation prior to the January 23, 2024, presidential primary election has already passed.

23.     Nevertheless, the Plaintiffs request injunctive relief to change the party affiliations of certain voters who changed their party affiliation at a supervisors of the checklist session in

accordance with State law and the Secretary of State's public statements regarding the deadline to change party affiliations prior to the presidential primary election.  Moreover, the Plaintiffs' requested injunctive relief would effect this change prior to a presidential primary election that is just seven weeks away.  Despite believing that they properly changed their party affiliation in accordance with State law, Secretary of State publications, and supervisors of the checklist requirements, these voters would be subject to an involuntary party change that affects how the voter is able to participate in the impending presidential primary election.  It is hard to envision greater voter confusion than in the likely scenario of a voter arriving at the polls for the presidential primary election and being denied a ballot for the party to which the voter registered because this Court ordered that voter's party registration to change.

24.     The Plaintiffs ask this Court to change the party affiliation of certain registered New Hampshire voters in a proceeding in which those voters are not participating and on the eve of a presidential primary election, which changes will affect how those voters are able to participate in the presidential primary election.  Granting the Plaintiffs' requested relief would clearly create voter confusion, prevent voter participation in the party primary in which those voters sought to participate, and disincentivize affected voters from otherwise participating in the presidential primary election.  Accordingly, this Court should follow the <u>Purcell</u> Principle and decline the Plaintiffs' request to alter voter registration on the eve of the presidential primary election.

   D.   <u>The Plaintiffs' claims fail as a matter of law because they are based on the Plaintiffs' misreading of RSA 654:34, IV</u>.

25.     As described above, the Plaintiffs' claims and requested relief are all based on the Plaintiffs' allegations that the Defendants violated RSA 654:34, IV by allowing voters to change their party affiliation between June 7, 2023, and October 6, 2023, in advance of the January 23, 2024, presidential primary election.  However, the Plaintiffs misread RSA 654:34, IV as

prohibiting change of party affiliation between the first Wednesday of June and the date of the presidential primary election.  To the contrary, New Hampshire law sets different deadlines for changing party affiliation prior to presidential primary elections and for changing party affiliation prior to state primary elections.  Because the deadline set forth in RSA 654:34, IV only applies to change of party affiliation prior to state primary elections—not presidential primary elections—the Plaintiffs' claims fail as a matter of law.

26.     State primary elections are held on the second Tuesday in November of every even-numbered year.  See RSA 653:8.  Thus, the last state primary election was in November of 2022, and the next state primary election will be held in November of 2024.  The candidate filing period for state primary elections runs from the "first Wednesday in June" to the "Friday of the following week."  RSA 655:14.  Thus, the candidate filing period for the last state primary election was in June of 2022, and the candidate filing period for the next state primary election will be in June of 2024.  In turn, RSA 654:34, IV prohibits voters from changing their party affiliation between the beginning of the state primary candidate filing period and the date of the state primary election.  See RSA 659:34, IV (No person, who is already registered to vote, whether his party membership has been previously registered or not, shall affiliate with a party or disaffiliate from a party between the first Wednesday in June and the day before the state primary election); RSA 654:32 (providing for a final supervisors of the checklist session on "Tuesday before the first Wednesday in June" for voters to change their voter registration prior to the state primary election).

27.     Presidential primary elections are held on the second Tuesday in March, or on a date selected by the Secretary of State, in each year in which a United States presidential election is scheduled.  RSA 653:9.  The Secretary of State has the discretion to set the date of the candidate

filing period for the New Hampshire presidential primary election to the "first Monday in [the preceding November] and the third Friday in November," or "such other time period as the secretary of state shall announce."  RSA 655:47, II.  In turn, RSA 654:32 requires the final supervisors of the checklist session for the change of voter registration prior to a presidential primary election to occur on the "Friday preceding the first day of the filing period."

28.     Here, the Plaintiffs have not pled any facts that state a claim that the Secretary of State failed to comply with all requirements regarding setting the date for the New Hampshire presidential primary election, setting the dates for the presidential primary candidate filing period, and declaring the date of final supervisors of the checklist sessions on the Friday preceding the opening of the presidential primary candidate filing period.  The Secretary of State set January 23, 2024, as the date for the New Hampshire presidential primary election, which complies with RSA 653:9.  ECF 32-1, at 5, ¶12.  The Secretary of State set October 11 through October 27, 2023, as the dates for the presidential primary candidate filing period, which complies with RSA 655:47, II.  ECF 1, Ex. A.  The Secretary of State informed local election officials that the last supervisors of the checklist session for changes to voter registration must occur on October 6, 2023 (the Friday prior to the beginning of the presidential primary candidate filing period on October 11, 2023), which complies with RSA 654:32.  ECF 1, Ex. A.

29.     Rather, the Plaintiffs assert that the October 6, 2023, final supervisors of the checklist session for changing voter registration prior to the presidential primary election violated RSA 659:34, IV because it occurred after the first Wednesday in June of 2023.  See ECF 32-1, at 5, ¶11.  However, RSA 659:34, IV expressly provides that it sets the final deadline for change of voter registration prior to <u>state primary elections</u>—the statute does not provide any deadline to change voter registration prior to a <u>presidential primary election</u>.  See RSA 659:34, IV ("No

person, who is already registered to vote, whether his party membership has been previously registered or not, shall affiliate with a party or disaffiliate from a party between the first Wednesday in June and the day before the <u>state primary election</u>." (emphasis added)); <u>see also</u> RSA 659:32 (confirming that the deadline for changing voter registration prior to a state primary election is the Tuesday preceding the first Wednesday in June).  In other words, RSA 659:34, IV's June deadline to change party affiliation would next apply in June of 2024, prior to the September 2024 state primary election.

30.     In sum, the Plaintiffs' claims are all based on alleged violations of RSA 659:34, IV by allowing voters to change their registration after June of 2023 and prior to the presidential primary election in January of 2024.  However, RSA 659:34, IV's deadline to change party affiliation only applies to state primary elections, not presidential primary elections.  Because the Secretary of State cannot have violated RSA 659:34, IV, as alleged, and otherwise complied with all the statutory requirements for presidential primary elections, the Plaintiffs' claims all fail as a matter of law.

     E.   <u>The Plaintiffs' first count fails to state a claim</u>:

31.     The Plaintiffs' "Count 1" alleges that the Secretary of State violated the Electors Clause of Article II, Section 1, of the Constitution by not following state election laws related to change of voter party affiliation prior to the New Hampshire presidential primary election.  <u>See</u> ECF 32-1, at 15-17.[1]

---

[1] The Plaintiffs' amended complaint added references in the header of Count 1 to the Fourteenth Amendment, 52 U.S.C. §10101, and 42 U.S.C. §1973a(c), 3(c).  However, the Plaintiffs' amended Count 1 does not include any explanation or argument as to how Count 1 allegedly asserts violations of these additional laws.  <u>See</u> ECF 32-1, at 16-17, ¶¶53-55 (arguing only that the Defendants violated the Electors Clause).  The Plaintiffs' passing reference to these laws, without any supporting facts or argument, is not sufficient to state a claim that the Defendants violated these laws.

32.     At the outset, the Plaintiffs have not identified any authority that gives them a private right to enforce the Electors Clause.

33.     Even if the Plaintiffs could enforce the Electors Clause, their allegations that the Secretary of State violated a state statute regarding deadlines to change party affiliation prior to a presidential primary fail to state a claim under the Electors Clause.  "By its terms, the [Electors] Clause could be read as addressing only the manner of appointing electors and thus nothing about the law that governors the administration of an election (polling place operations, voting procedures, vote tallying, and the like)."  Trump v. Wis. Elections Comm'n, 983 F.3d 919, 926 (7th Cir. 2020) (explaining that the court confines its "conclusions to applications of the Electors Clause" because the Circuit Court is "not the ultimate authority on Wisconsin law," and alleged errors by a state election official exercising its powers under state law "belong … in the state courts").  Furthermore, the Plaintiffs allegations refer to actions related to voter registration prior to a presidential primary—not to actions related to election procedures for the presidential general election through which New Hampshire appoints presidential elections.  Similarly, any errors related to voter affiliation with political parties is irrelevant with respect to the presidential general election, at which all qualified voters have a right to vote regardless of party affiliation.

34.     Taken together, the Plaintiffs' allegations fail to state a claim under the Electors Clause and should be dismissed.

    F.     The Plaintiffs' second count fails to state a claim:

35.     The Plaintiffs' "Count 2" alleges that the Secretary of State interfered with federal elections by violating state election laws, thereby violating of 52 U.S.C. §10101.  ECF 32-1, at 17-18, ¶¶56-59.

36.     The Plaintiffs' second count fails to state a claim for which relief can be granted because 52 U.S.C. §10101 does not provide a private right of action.[2] See 52 U.S.C. §10101(c) (authorizing the United States Attorney General to enforce violations of the statute); Jimenez, No. 16-CV-7483, 2017 U.S. Dist. LEXIS 87504, at *14 (ruling that 52 U.S.C. § 10101 does not create a private right of action) (collecting cases).

37.     Even if the Plaintiffs could enforce 52 U.S.C. §10101, they have not stated a claim for relief under either section (a) or section (b).  52 U.S.C. §10101(a) generally provides that all United States citizens who are qualified by law to vote, regardless of their race, color, or previous condition, are entitled to vote at elections.  The Plaintiffs fail to state a claim for relief under 52 U.S.C. §10101(a) because they have not alleged that they were deprived of their right to vote.  52 U.S.C. §10101(b) generally prohibits a person from attempting to or actually intimidating, threatening, or coercing another person for the purpose of interfering with their right to vote.  The Plaintiffs fail to state a claim for relief under 52 U.S.C. §10101(a) because they have not alleged that any Defendant attempted to or actually intimidated, threatened, or coerced the Plaintiffs for the purpose of interfering with the Plaintiffs' right to vote.

38.     Because the Plaintiffs do not have a private right of action to enforce alleged violations of 52 U.S.C. §10101 and have not alleged any facts that could state a claim for relief under 52 U.S.C. §10101, this claim should be dismissed for failure to state a claim.

    G.  The Plaintiffs' third count fails to state a claim:

39.     The Plaintiffs' third count alleges that the Defendants violated the Equal Protection Clause and the "one-person, one-vote principle" by violating RSA 659:34, thereby "creat[ing]

---

[2] Plaintiffs' "Count 2" alleges that the Secretary of State violated state election laws, thereby violating 52 U.S.C. §10101.  ECF 32-1, at 17-18, ¶59.  The Plaintiffs further allege that this violation allows the court to subject New Hampshire to the preclearance process set forth in 42 U.S.C. 1973a(c).  Id.

different voting standards than those used in elections past, and different standards from the legislative requirements." ECF 32-1, at 18-19, ¶¶62-65.

40.     To state a claim for discrimination that violates equal protection, the Plaintiffs must allege that they were "intentionally treated differently from others similarly situated and there was no rational basis for the difference in treatment." Toledo v. Sanchez, 454 F.3d 24, 34 (1st Cir. 2006). The Plaintiffs have not alleged that they have been treated differently than other similarly situated people. Rather, the Plaintiffs allege that the Defendants caused the upcoming presidential primary election to have "different voting standards than those used in election past." ECF 32-1, at 19, ¶65. Allegations that different elections held in different years may have had different procedures is not sufficient to state a claim that the Plaintiffs were treated differently than similarly situated persons. In other words, if elections procedures in a prior election applied equally to New Hampshire residents, and elections procedures in an upcoming election apply equally to New Hampshire residents, there cannot be an equal protection violation.

41.     Furthermore, the Plaintiffs passing reference to the "one person, one vote principle" is not sufficient to state a claim for an equal protection violation. See ECF 32-1, at 18-19, ¶63. The one person one vote principle generally requires that "each qualified voter must be given an equal opportunity to participate in [an] election," see Kelleher v. Southeastern Regional Vocational Technical High School, 806 F.2d 9, 10 (1st Cir. 1986), and that there is substantial equality of population among voting districts so that the vote of any citizen is approximately equal in weight to that of any other citizen, see Gaffney v. Cummings, 412 U.S. 735, 743 (1973).

42.     The Plaintiffs have not alleged any facts that show that they will not be given an equal opportunity to participate in the upcoming New Hampshire presidential primary election. Nor

have the Plaintiffs alleged any facts that show that their vote will be given less weight than any other person's vote in the upcoming New Hampshire presidential primary election.  Accordingly, the Plaintiffs' complaint fails to state a claim that they are being discriminated against in violation of the one person one vote principle.

43.     In sum, the Plaintiffs' complaint fails to state a claim for violation of the Equal Protection Clause or the one person one vote principle based on their claim that the Defendants "created different voting standards than those used in elections past, and different standards from the legislative requirements," see ECF 32-1, at 19, ¶65, and this claim should therefore be dismissed.

   H.   The Plaintiffs fourth count fails to state a claim.

44.     The Plaintiffs' fourth count alleges that the Defendants violated the Plaintiffs' substantive and procedural due process rights by "intentional[ly] fail[ing] to follow election law as enacted by a State's legislature."  ECF 32-1, at 19-20, ¶¶67-68.

45.     The Plaintiffs fail to develop their argument as to which of the Plaintiffs' procedural rights were violated or how the Defendants violated those rights.  Nor do the Plaintiffs allege any facts that show that the Plaintiffs held any procedural right that the Defendants violated.

46.     The Plaintiffs similarly fail to develop their argument as what substantive due process right the Plaintiffs might have that the Defendants allegedly violated.  See, e.g., Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991) (to state a substantive due process claim, a plaintiff must either identify state conduct that "shock's the conscience" or "demonstrate a violation of an identified liberty or property interest protected by the due process clause").  The Plaintiffs appear to argue that the Defendants' alleged failure to follow RSA 659:34, IV somehow "disenfranchised [them] of their rights to a fair election" through their votes being "systematically diluted."  ECF 32-1, at 20, ¶69.  However, the Plaintiffs have not alleged any

facts to support this alleged "vote dilution."  Nor have the Plaintiffs identified any liberty or property interest that they have in the state procedures by which New Hampshire voters may change their political party affiliation.

47.     In short, the Plaintiffs' allegations indicate that the Plaintiffs are upset that New Hampshire voters exercised their individual rights to affiliate or disaffiliate with a political party by changing their registration at a supervisors of the session meeting held in accordance with RSA 654:32 and RSA 654:34, I.  However, the Plaintiffs have not identified any "liberty or property interest" that they possess that could be violated by New Hampshire voters exercising their First Amendment rights to associate with a different political party.

48.     Taken together, the Plaintiffs' complaint fails to state a claim for violations of the Plaintiffs' due process rights based on alleged violations of State law that fail as a matter of law. Accordingly, the Court should dismiss the Plaintiffs' fourth count for failure to state a claim upon which relief can be granted.

   I.   The Plaintiffs failed to demonstrate that they have standing:

49.     "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  Massachusetts v. United States HHS, 923 F.3d 209, 221 (1st Cir. 2019) (brackets omitted) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006)).  The Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing that he has standing.  See id.  The Plaintiff must demonstrate: (1) an injury in fact that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) that the injury is "fairly traceable to the challenged action"; and (3) that it is "likely that the injury will be redressed by a favorable decision."  Id. at 221-22 (quotations and ellipsis omitted).  These three components of the Article

III "case or controversy" requirement are designed to ensure that the plaintiff "has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 38 (1976) (quotation omitted).  Federal courts have an "independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties." Hernández-Gotay v. United States, 985 F.3d 71, 77 (1st Cir. 2021).

50.     The Plaintiffs bear the burden of establishing standing, and the Secretary of State cannot discern from the Plaintiffs' complaint the precise cognizable injury-in-fact that each Plaintiff allegedly suffered.  Nor can the Secretary of State discern any case law or other authority in the Plaintiffs' complaint that shows that the facts the Plaintiffs allege constitute a cognizable injury in fact.

51.     To the extent that the Plaintiffs have not alleged sufficient facts to carry their burden of demonstrating that they have each personally suffered a cognizable injury-in-fact that is traceable to the Secretary of State and redressable by the Plaintiffs' requested relief, the Court should dismiss the Plaintiffs' complaint.

        WHEREFORE, the Secretary of State respectfully requests that this Honorable Court:

        A.  Dismiss the Plaintiffs' amended complaint.

                                        Respectfully submitted,

                                        Secretary of State David M. Scanlan

                                        By his attorney,

                                        THE OFFICE OF THE ATTORNEY GENERAL

Dated: December 28, 2023            /s/ Brendan A. O'Donnell
                                        Brendan A. ODonnell, Bar #268037
                                        Assistant Attorney General
                                        Election Law Unit

Office of the Attorney General
1 Granite Place South
Concord, NH 03301
brendan.a.odonnell@doj.nh.gov
603-271-1269

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent by ECF on December 28, 2023, to all parties of record.  I hereby certify that a copy of the foregoing was sent by e-mail to all parties of record who are not registered ECF filers.

/s/ Brendan A. O'Donnell
Brendan A. O'Donnell