UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| KAREN TESTERMAN<br>LYNN-DIANE BRIGGS<br>and WAYNE PAUL SAYA SR.,<br><br>                 Plaintiffs<br><br>v.<br><br>DAVID SCANLAN, SECRETARY OF STATE<br>FOR NEW HAMPSHIRE<br>and CHRIS AGER, NEW HAMPSHIRE<br>REPUBLICAN STATE COMMITTEE<br><br>                 Defendants | Case No. 1:23-cv-00499-JL-AJ |

**OBJECTION OF DEFENDANTS CHRIS AGER AND NEW HAMPSHIRE REPUBLICAN STATE COMMITTEE TO PLAINTIFFS' MOTION FOR EXPEDITED CONSIDERATION FOR PRELIMINARY INJUNCTIVE RELIEF**

Defendants Chris Ager and the New Hampshire Republican State Committee, (jointly, the "NHRSC"), by and through their attorneys, Cleveland, Waters and Bass, P.A., hereby object to the plaintiffs' motion for preliminary injunctive relief (Doc. No. 40-1). This objection rests on the following grounds.

**I.    Introduction**

The plaintiffs have sought the extraordinary relief of a preliminary injunction to effectuate the even more extraordinary remedy of either revoking the chosen party registrations of hundreds of New Hampshire voters less than a month before the presidential primary or transforming the 2024 First in the Nation Republican Presidential Primary into a meaningless last-in-the-nation primary that would take place well after the Republican Party has nominated

1

its presidential candidate. The legal predicate of the plaintiffs' complaint and their motion for preliminary injunction is that the New Hampshire Secretary of State (the "Secretary") violated RSA 654:34, IV, by allowing registered voters to change their party affiliation during the period from June 7, 2023, through October 6, 2023. RSA 654:34, IV, however, applies only to the state primary election held in the fall of each election year, not to the presidential primary. Because this misreading of the statute is the premise of each of the plaintiffs' claims they are not likely to succeed on the merits. For this reason and the others set forth below the motion for preliminary injunction must be denied.

## II.     Statement of Facts

The plaintiffs filed this action on November 7, 2023, alleging that the Secretary and NHRSC violated New Hampshire election law. Doc. No. 1. The plaintiffs simultaneously filed a motion for preliminary injunctive relief.  Doc. No. 2. After the plaintiffs filed several motions to amend both the complaint and the motion for preliminary injunctive relief, the court determined that the operative motion for preliminary injunctive relief is Doc. No. 40-1. *See* Order dated December 22, 2023.

The plaintiffs claim that the Secretary and NHRSC have violated RSA 654:34, IV by allowing voters to change their party affiliation between June 7, 2023, and October 6, 2023. Doc. No. 40-1 at ¶5. They maintain that this violation invokes federal jurisdiction because it is in contravention of their rights under the Electors Clause (U.S. Const. art. II, § 1, cl. 2) (Count I), the Elections Clause (U.S. Const. art. I, § 4, cl. 1) (Count II), the Equal Protection Clause (Count III), and the Due Process Clause (Count IV). *See generally* Doc. No. 32-1.

The sole discernible factual allegation the plaintiffs make against the NHRSC is that the NHRSC "endorsed" and "followed the Secretary's direction in allowing voters to change their

party affiliation." Doc. No. 32 at ¶22. They do not allege that the NHRSC has any authority to determine when voters will be allowed to change party affiliation before the presidential primary or that any act or omission of the NHRSC played any part in the Secretary's decision regarding when such changes could take place.

**III.   Argument**

The plaintiffs "seek the extraordinary and drastic remedy" of a preliminary injunction ordering the Secretary to reverse party affiliation changes made between June 7, 2023, and October 6, 2023. *Libertarian Party of New Hampshire v. Sununu*, 2020 WL 4340308 at *9 (D.N.H. 2020) (remedy is extraordinary and drastic). This remedy should only "be granted in those circumstances when the exigencies of the situation demand such relief" because a preliminary injunction "alters rather than preserves the status quo." *Id.*

> A request for a preliminary injunction requires the court to consider four factors
>
> the movant's likelihood of success on the merits; whether and to what extent the movant will suffer irreparable harm in the absence of injunctive relief; the balance of [relative] hardships, that is, the hardship to the nonmovant if enjoined as opposed to the hardship to the movant if no injunction issues; and the effect, if any, that an injunction [or the lack of one] may have on the public interest.

*CVS Pharmacy, Inc. v. Lavin*, 951 F.3d 50, 55 (1st Cir. 2020). Likelihood of success on the merits is the most critical prong because a failure to show a likelihood of success on the merits "is itself preclusive of the requested relief." *Bayley's Campground, Inc. v. Mills*, 985 F.3d 153, 158 (1st Cir. 2021).

   A. *The plaintiffs have not shown a likelihood of success on the merits.*

The plaintiffs' claims depend entirely upon whether RSA 654:34, IV prohibits voters from changing party affiliation after the June preceding New Hampshire's presidential primary. If the statute does not prohibit such party affiliation changes during that time period, all of the

3

plaintiffs' claims fail. Even if the plaintiffs were correct that RSA 654:34, IV, prohibits registration changes for the presidential primary after June of 2023, moreover, they must also show that the alleged violation of the statute is actionable under the federal constitutional and statutory provisions on which they rely. Because they have not alleged such actionable claims their request for preliminary injunction must be denied.

> 1. **The plaintiffs cannot show a likelihood of success on the merits because all of their claims are based on a misreading of RSA 654:34, IV.**

The plaintiffs' claims are all based on their conclusion that RSA 654:34, IV applies to presidential primaries. Doc. No. 32-1 at ¶6. It does not. RSA 654:34, IV only prohibits party affiliation changes prior to the "state primary election." RSA 654:34, IV. Under New Hampshire law, a "state primary election" is not equivalent to a "presidential primary." *See, e.g.,* RSA 654:32 (requiring the supervisors of the checklists to meet at different times in relation to the "state primary election" and the "presidential primary"); *compare* RSA 653:8 (setting a date for the "state primary election") *with* RSA 653:9 (setting a different date for the "presidential primary"). Because all of the plaintiffs' claims are predicated on a statute that does not apply to the presidential primary, they are unlikely to succeed on the merits.

> 2. **The plaintiffs are not likely to succeed on Counts I and II because they lack standing and the Secretary's and NHRSC's actions did not and will not affect the nomination or election of presidential electors.**

Under Counts I and II, the plaintiffs allege that the Secretary and NHRSC violated the Electors Clause and the Elections Clause essentially by amending the statutory procedure for voters to change their party affiliation. Doc. No. 32-1 at ¶¶49-55. The plaintiffs allege this violates the Electors Clause and the Elections Clause because only the state legislature may prescribe the manner in which elections and selection of presidential electors are to take place. *See* Doc. No. 32-1 at ¶¶50, 58. To begin with, the plaintiffs are unlikely to succeed on the merits

4

of their claim under the Electors Clause because RSA 654:34, IV, governs only changes in party registration before a state primary. Presidential electors are not selected based on state primary results. They are selected based on general election results. Even if there were a violation of state law in connection with a primary, then, it would not implicate the Electors Clause. The Electors Clause states in pertinent part that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress." U. S. Const., art. II, sec. 1, cl. 2. The plaintiffs have failed to allege any action on the part of the Secretary and NHRSC which affected the nomination or selection of presidential electors.

Furthermore, Counts I and II are not likely to succeed on the merits because the defendants' alleged violations of the Electors Clause and Elections Clause would invade only the rights of the general court, not the plaintiffs. Claims arising under the Electors Clause and Elections Clause do not belong to voters or even presidential electors; if a claim belongs to anyone, it is to the state legislature. *Lance*, 549 U.S. at 441-42; *see King v. Whitmer*, 505 F. Supp. 3d 720, 735-36 (holding that nominees for presidential electors did not have standing to bring claim under the Electors Clause); *Trump v. Kemp*, 511 F.Supp.3d 1325 (N.D. Ga. 2021) (holding presidential candidate and voters did not have standing to bring claim under the Electors Clause). The injury the plaintiffs have alleged is one of a generalized grievance about government actions which is insufficient to establish standing. *See Lance v. Coffman*, 549 U.S. 437, 439 (2007); *see also Bognet v. Sec. Commonwealth of Pennsylvania*, 980 F.3d 336, 355 (3rd Cir. 2020) *judgment vacated and case remanded with instructions to dismiss case as moot*, *Bognet v. Degraffenreid*, 141 S.Ct. 2508 (Mem) (2021).

Both because the plaintiffs have failed to allege a factual basis to support a claim under the Electors Clause and because they lack standing to assert the rights of the general court under the Electors Clause or the Elections Clause, they are unlikely to succeed on the merits of Counts I and II.

### 3. The plaintiffs are not likely to succeed on Counts I and II because they have failed to adequately allege a violation of the Voting Rights Act.[1]

Under Counts I and II, the plaintiffs reference the Voting Rights Act of 1965 (the "Voting Rights Act") (52 U.S.C. 10101 and 10301) without developing a legal theory for liability under the Act for the alleged violations of the Elections Clause and Electors Clause. Doc. No. 32-1 at page 15 and 17.[2] Under the Voting Rights Act, states are prohibited from (1) disenfranchising citizens on the basis of race or color; (2) when determining whether an individual is qualified to vote, applying standards, practices, or procedures different than those applied to other individuals in the same state or political subdivision; (3) denying the right to vote based on errors or omissions in certain records or papers; (4) employing literacy tests. 52 U.S.C. § 10101(a).

Here, even if the plaintiffs had standing to bring Counts I and II, the enforcement mechanisms in the Voting Rights Act do not provide a basis for the plaintiffs' claims. There is no allegation that the NHRSC or Secretary deprived anyone of the right to vote or treated voters differently in any way. The only allegation is that the Secretary and NHRSC violated the law by allowing voters to change their party affiliation.

Although the plaintiffs purport to make a vote dilution claim, they have not made any allegations that they are part of a group whose votes are or will be treated differently than those

---

[1] There is a dearth of case law addressing the merits of the instant type of claim under the Elections Clause and Electors Clause because the majority of the cases are dismissed due to lack of standing.
[2] The Count headings are not a numbered paragraph. Where there is no paragraph to cite to, the NHRSC will cite to the page number.

who changed their party registration. *See, generally*, Doc. No. 32-1. Indeed, the plaintiffs' primary strategic concern appears to be that the votes cast by those who changed their party affiliation will be treated the same as the plaintiffs in that they will be counted. This is not a sufficient basis on which to bring a vote dilution claim under the Voting Rights Act. *See Wood v. Raffensperger*, 981 F.3d 1307, 1314-15 (11th Cir. 2020); *see also Lyman v. Baker*, 954 F.3d 351, 361 (1st Cir. 2020)

    **4. The plaintiffs are not likely to succeed on count III because they are not part of a class of voters which the Secretary or NHRSC treated differently than any other voter and their votes will not be counted differently than any other vote.**

  The plaintiffs allege under Count III that the Secretary and NHRSC violated their equal protection rights by allowing voters to change their registration after June 7, 2023. This action, the plaintiffs argue, will result in their votes being diluted because other voters *might* vote for a different candidate, thereby cancelling their vote. Under the equal protection clause of the Fourteenth Amendment, "having once granted [to the electorate] the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 531 U.S. at 104-05. In other words, the equal protection clause is the basis for the principle of one-person, one-vote. A violation of the equal protection clause, then, occurs if a voter is treated differently from another class of voters and the voter's vote is weighed differently from those of other voters. See *Bognet v. Sec. Commonwealth of Pennsylvania*, 980 F.3d 336, 355 (2020) *judgment vacated and case remanded with instructions to dismiss case as moot*, *Bognet v. Degraffenreid*, 141 S. Ct. 2508 (Mem) (2021); *see also Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 391 (W.D. Pa. 2020) (holding that the plaintiff's equal protection claim failed because the plaintiffs votes would not count for less than any other vote and although unlawful votes might be cast, "unlawful votes… dilute all other

lawful votes in the same way [resulting in] no unequal treatment… and no burden on Plaintiffs' rights under the Equal Protection Clause."); *Wood*, 501 F. Supp. 3d at 1326-27.[3]

Under the plaintiffs' theory, certain voters will be allowed to vote in the Republican presidential primary who should not be allowed to vote. The effect of this, the plaintiffs argue, is that the weight of their votes will be diluted in derogation of the equal protection clause. Doc No. 32 at ¶¶63-64. The plaintiffs, however, have failed to identify differential or preferential treatment by the Secretary or the NHRSC in violation of the equal protection clause. Any alleged actions by the Secretary and NHRSC affected all voters. The plaintiffs do not allege that some voters were allowed to change their party registrations while the plaintiffs were not. Thus, the plaintiffs have not been subjected to differential or arbitrary treatment by the defendants.

Nor have the plaintiffs shown that their votes will be weighted differently those of any other persons voting in the Republican presidential primary. Although the plaintiffs claim their votes will be diluted by illegally cast votes, this has no effect on the value or weight of the plaintiffs' votes. To be successful on such a claim of vote dilution, the plaintiffs must advance some theory that their votes will be counted differently, whether by being discarded or diluted through the geographical apportionment of districts. *Trump*, 493 F. Supp. 3d at 391. The plaintiffs have not done so here and are therefore unlikely to succeed on the merits of their claim.

> **5. The plaintiffs are not likely to succeed on Count IV because any action that the NHRSC or the Secretary took did not and will not result in a patently or fundamentally unfair election.**

The plaintiffs raise both procedural and substantive due process as bases for count IV. As a general principle, "election law, as it pertains to state and local elections, is for the most part a preserve that lies within the exclusive competence of the state courts." *Bonas v. Town of North*

---

[3] Because the plaintiffs have no cognizable injury, they also cannot meet the requirement that they would be irreparably harmed in the absence of a preliminary injunction. *See ante* at 3 (preliminary injunction standard).

*Smithfield*, 265 F.3d 69, 74 (1st Cir. 2001). The exceptions to this jurisdictional deference to state courts is "narrow and well-defined." *Id*.

                         a. *Procedural Due Process*

To state a claim for a violation of the plaintiffs' procedural due process rights, the plaintiffs must allege the deprivation of a liberty or property interest protected by the Fourteenth Amendment. *Zell v. Ricci*, 957 F.3d 1, 8 (1st Cir. 2020). If a protected interest exists, "the analysis turns to a determination of what process was due." *Id.* While a protected interest exists in favor of a voter's right to vote, a voter does not have a corresponding liberty or property interest in prohibiting others from voting. *See Saucedo v. Gardner*, 335 F. Supp. 3d 202, 217 (D.N.H. 2018).

The plaintiffs allege no property or liberty interest of which they were or will be deprived. The plaintiffs are not being denied the right to vote. The plaintiffs' votes will not be counted differently from any other votes. The only interest the plaintiffs allege in this context is in preventing other voters from casting ballots which, they speculate, may dilute the plaintiffs' votes. This is not a sufficient liberty interest to support the plaintiffs' claim that the Secretary and NHRSC violated their procedural due process rights. *Id*.

                         b. *Substantive Due Process*

As to substantive due process, in the context of elections, "a denial of substantive due process occurs . . . if the election process itself reaches the point of patent and fundamental unfairness." *Bonas*, 265 F.3d at 74. Garden variety state election irregularities are insufficient to justify the exercise of federal jurisdiction. *Id*. Patent and fundamental unfairness is a high bar and only found in extreme cases. *Donald J. Trump for President, Inc*, 493 F. Supp. 3d at 397. Federal courts have intervened in cases where a discrete group of voters was discriminated

against, a complete disenfranchisement of the electorate occurred due to the cancelation of an election, ballot stuffing, or where election officials changed the rules for voting without notifying voters and subsequently denied the voter the right to vote. *See Nolles v. State Committee for Reorganization of School Districts*, 524 F.3d 892, 898-99 (8th Cir. 2008). Plaintiffs have alleged no such systemic and calculating actions on the part of the defendants.  Instead, they have alleged that the Secretary violated a state statute by allowing voters to change their party registration, an issue that New Hampshire courts are entirely capable of adjudicating. The plaintiffs have offered no rationale for breaking with the jurisdictional deference federal courts give their state counterparts in state election law disputes.

As a result, the plaintiffs have not alleged a cognizable claim for a violation of their substantive due process rights and they are unlikely to be successful on the merits of count IV.

    B.  *The plaintiffs have not shown an irreparable injury*

The plaintiffs have not shown that the alleged injury is irreparable. An injury is irreparable if it "cannot adequately be compensated for either by a later-issued permanent injunction, after a full adjudication on the merits, or by a later-issued damages remedy." *Northwest Bypass Group v. U.S. Army Corps of Engineers*, 470 F.Supp.2d 30, 64 (D.N.H. 2007).

The plaintiffs have failed to establish they would suffer a cognizable injury under the law. Although the plaintiffs allege a harm in the form of vote dilution as a result of the enfranchisement of voters, this is insufficient for the plaintiffs to succeed on the merits of their claims. *See generally* Doc. No. 28-1.

Even assuming, however, that the plaintiffs alleged a cognizable injury, the injury is not irreparable. In *Oden v. Brittain*, Justice Black, acting as a Circuit Justice, denied an application to prevent a local election. 396 U.S. 1210, 1211 (1969). In denying the requested relief, Justice

Black noted, "Intervention by the federal courts in state elections has always been a serious business. Here the city has already incurred considerable expense in preparing for an election to be held within the next three weeks. If this election were held, applicants could later bring suit to have it set aside… the election cannot result in the severe irreparable harm necessary to justify the issuance of the extraordinary remedy of an injunction by an individual Justice." *Id.* Similarly, here, the plaintiffs alleged harm is not irreparable and no injunction should be issued.

    C.  The Effect on the Public Interest

Although the factor analyzing the effect on the public interest is typically given short shrift in other cases, it deserves special consideration here. *See Libertarian Party of New Hampshire*, 2020 WL 4340308 at *9. The plaintiffs are incorrect in claiming that "when parties dispute the lawfulness of government action, the public interest collapses into the merits." Doc. No. 40-1 at ¶70; *see Doe v. Harris*, 772 F.3d 563, 582-83 (9th Cir. 2014) (refusing to assume that public interest prong collapses into the merits of the plaintiff's claim). Rather, the plaintiffs must make an independent showing that their requested relief is in the public's interest. They cannot make such a showing.

The plaintiffs have requested that this court order the Secretary and NHRSC correct the checklists so that any party affiliation changes from June 7, 2023 through October 6, 2023, are reversed. In the alternative, the plaintiffs request that the court move the presidential primary to coincide with the state primary election. The plaintiffs also request that the court make certain orders relating to the electoral college. Granting any of these requests will significantly harm the public interest.

The plaintiffs requested relief differs from other voting law cases on a fundamental level: rather than requesting the court to restore some right the plaintiffs' have lost, the plaintiffs

11

request the court to restrict the rights of other voters. The plaintiffs have not shown why they should be granted such extraordinary relief. The practice of allowing voters to change their party affiliation through the Friday before the presidential candidate filing period is longstanding. The plaintiffs could have brought their claims at any point prior to June 7, 2023. They failed to do so. Rather, the plaintiffs waited until two and half months before the presidential primary to bring their claims. Voters have already switched their party affiliation in accordance with the Secretary's directives to local election officials, directives that are consistent with longstanding practice in New Hampshire based on the Secretary's construction of state statutes. Voters have relied on this practice in making a decision as to the party primary in which they will participate in January of 2024. Requiring the Secretary to change the party affiliation of hundreds of voters less than a month before the presidential primary – even if it were possible -- will result in widespread voter confusion and chaos that will call into question New Hampshire's well-deserved reputation for administering fair and efficient presidential primaries.  It is beyond serious question that the State of New Hampshire has a substantial interest in maintaining the First in the Nation primary, and an injunction of the nature sought by the plaintiffs would place that interest at significant risk.  The public interest would be disserved by granting the plaintiffs' requested preliminary injunction.

**IV.     Conclusion**

The plaintiffs have failed to show that they will succeed on the merits of their claims. This is reason enough to deny the requested preliminary injunction. The requested relief is extraordinary and would burden otherwise qualified voters' fundamental right to vote. Where such extraordinary relief is requested, the plaintiffs must present extraordinary evidence. They have not done so here, and their requested preliminary injunction must be denied.

                Respectfully submitted,

                CHRIS AGER AND THE NEW HAMPSHIRE
                REPUBLICAN STATE COMMITTEE
                By Their Attorneys,

Date: December 28, 2023        /s/Jacob M. Rhodes
                Bryan K. Gould, Esq. (NH Bar #8165)
                gouldb@cwbpa.com
                Jacob M. Rhodes, Esq. (NH Bar #274590)
                rhodesj@cwbpa.com
                Cleveland, Waters and Bass, P.A.
                Two Capital Plaza, Fifth Floor
                Concord, NH 03302-1137
                Telephone: (603) 224-7761
                Facsimile:  (603) 224-6457

## CERTIFICATE OF SERVICE

I hereby certify that the within document is being served electronically through the court's electronic filing system upon counsel of record and all other parties who have entered electronic service contacts in this docket. In addition, the following parties have been served by email and U.S. Mail:

Karen Testerman (karen@karentesterman.com)
9 Stone Avenue
Franklin, NH 03235

Lynn-Diane Briggs (lynbdance@gmail.com)
4 Golden Pond Lane
Amherst, NH 03031

Wayne Paul Saya, Sr. (waynesaya2@gmail.com)
24 Cadogan Way
Nashua, NH 03062


Date:  December 28, 2023       /s/Jacob M. Rhodes
                Jacob M. Rhodes, Esq.

4885-1348-9557, v. 5