UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| _____ ) | |
| KAREN TESTERMAN ) | |
| LYNN-DIANE BRIGGS ) | |
| and WAYNE PAUL SAYA SR., ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Case No. 1:23-cv-00499-JL-AJ |
| ) | |
| DAVID SCANLAN, SECRETARY OF STATE ) | |
| FOR NEW HAMPSHIRE ) | |
| and CHRIS AGER, NEW HAMPSHIRE ) | |
| REPUBLICAN STATE COMMITTEE ) | |
| ) | |
| Defendants ) | |
| _____ ) | |

## DEFENDANTS CHRIS AGER AND THE NEW HAMPSHIRE REPUBLICAN STATE COMMITTEE'S MOTION TO DISMISS

Defendants Chris Ager and the New Hampshire Republican State Committee (jointly, the "NHRSC"), by and through their attorneys, Cleveland, Waters and Bass, P.A., hereby move to dismiss the plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6). This motion rests on the following grounds.

### I.    Introduction

The gravamen of the plaintiffs' complaint is that the New Hampshire Secretary of State and the NHRSC colluded to violate RSA 654:34, IV, with the result that New Hampshire voters were impermissibly allowed to change their registered party affiliation during the period from June 7 through October 6, 2023. The plaintiffs' claims fail to state a claim, because, among other things, (1) the legal predicate of all the Counts in the complaint is the plaintiffs' misreading of

RSA 654:34, IV, (2) they fail to allege in Count III different treatment, under the law, of similarly situated parties, and (3) they fail to allege in Count IV the facts necessary to establish the requisite "patent and fundamental unfairness" of the impending presidential primary.

## II.    Statement of Facts

The plaintiffs filed this action on November 7, 2023. Doc. No. 1. The plaintiffs subsequently sought to amend their complaint which was granted. Endorsed Order (12-22-23). The amended complaint seeks to compel the defendants to rescind any changes in registered party affiliation by voters during the period of June 7 through October 6, 2023 (the "Affiliation Change Period").  Doc. No. 32-1 at page 22. The plaintiffs also request in the motion for preliminary injunction for the court to reschedule the presidential primary to next fall as an alternative form of relief. Doc. No. 40-1 at page 22.

According to the amended complaint, the NHRSC allegedly colluded with the Secretary to allow voters to change their party affiliations in contravention of RSA 654:34, IV.  Doc. No. 32-1 at ¶¶16, 22. The only specific conduct the plaintiffs allege to support the claim of collusion is that Mr. Ager "reportedly" sent a letter to the Secretary thereby "adhering to" the Secretary's "unlawful letter requirement."  Doc. No. 32-1 at ¶22.   There is no allegation that the Secretary's decision to allow voters to change their party registration during the Affiliation Change Period was dependent upon or even affected by the letter Mr. Ager reportedly sent or that the NHRSC is a state actor against which constitutional rights may be enforced.  Neither is there any allegation that the NHRSC has the authority to prevent the Secretary from allowing changes in party registration or that the NHRSC could, if ordered by the court, effectuate a rescission of the changes in registration taking place during the Affiliation Change Period or reschedule the presidential primary as the plaintiffs request.

### III.   Argument

#### A.   Standing

On December 8, 2023, the NHRSC moved to dismiss the original complaint for lack of standing and for failure to state a claim.  Doc. No. 28.  Under LR 15.1(c), the filing of the amended complaint mooted the NHRSC's motion to dismiss to the extent it was made under Rule 12(b)(6), but it did not moot the portion of the motion challenging the plaintiffs' standing (which falls within Rule 12(b)(1)).  On December 22, 2023, the plaintiffs filed their objection to defendants' motions to dismiss. Doc. No. 47.  The plaintiffs did not object to dismissal for lack of standing. *Id*. While the plaintiffs' amended complaint relies on the Voting Rights Act of 1965 as the vehicle for their vote dilution theory, the basis on which the NHRSC sought dismissal for lack of standing remains unchanged because many of the authorities the NHRSC cited in its motion to dismiss addressed standing to assert vote dilution claims brought under the Voting Rights Act of 1965. Accordingly, the NHRSC stands upon its motion to dismiss for lack of standing (Doc. No. 28) and does not make that argument anew here.

#### B.   Failure to State a Claim

Assuming the plaintiffs can establish their standing, the complaint must still state a claim upon which relief can be granted to survive a motion to dismiss.  Fed. R. Civ. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010).  The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and it must allege each of the elements of the cause of action and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citation and internal punctuation omitted).  Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal brackets omitted).  If the facts asserted in the complaint are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture" then the court must dismiss the claim.  *Tambone*, 597 F.3d at 442.

1.  **All of the plaintiffs' claims fail to state a claim because they are all predicated upon a misreading of RSA 654:34, IV.**

All of the plaintiffs' claims must be dismissed because they are predicated on a misreading of RSA 654:34, IV as cutting off party affiliation changes prior to the presidential primary. RSA 654:34, IV, however, only provides a cutoff for party affiliation changes prior to the "state primary election." Under New Hampshire law, there is a distinction between a "state primary election" which is held in the fall of state election years and a "presidential primary" which is held in the winter of presidential election years. *See, e.g.*, RSA 654:32 (requiring the supervisors of the checklists to meet at different times in relation to the "state primary election" and the "presidential primary"); *compare* RSA 653:8 (setting a date for the "state primary election") *with* RSA 653:9 (setting a different date than the state primary election for the "presidential primary").

The plaintiffs have mistakenly sought to import a registration cutoff provision from the statutory scheme regulating state primary elections into the scheme regulating the presidential primary. This misapprehension of the applicability of RSA 654:34, IV is the premise of each of the plaintiffs' causes of action. As a result, all of the plaintiffs' claims must be dismissed for failure to state a claim.

**2.   The plaintiffs have failed to state a claim under Count I because changing party affiliations does not affect the manner in which presidential electors are selected.**

Under Count I, the plaintiffs allege that the Secretary and NHRSC violated the "Electors Clause," U.S. Const. art. II, § 1, cl. 2, by modifying the procedure for voters to change their party affiliation. Doc. No. 32-1 at ¶¶49-55. The plaintiffs claim this violates the Electors Clauses because the general court is the only entity permitted to prescribe the manner of selection of electors for the President of the United States.  Doc. No. 32-1 ¶¶33, 50.

The Electors Clause states in pertinent part that "[e]ach State shall appoint, in such Manner as the Legislature thereof may direct, a Number of Electors, equal to the whole Number of Senators and Representatives to which the State may be entitled in the Congress." U.S. Const. art. II, § 1, cl. 2. The "Electors" in the Electors Clause, are then tasked with voting directly for the next President of the United States in the Electoral College Clause. *See* U.S. Const. art. II, § 1. cl. 3. To state a viable claim, then, the plaintiffs' complaint must allege or show the Secretary's and NHRSC's actions affected the nomination or election of Electors. *See* U.S. Const. art. II, § 1, cl. 2. The plaintiffs have failed to allege any such actions and Count I must be dismissed for failing to state a claim.

Even if the plaintiffs' construction of RSA 654:34, IV were valid, the plaintiffs have no claim under the Electors Clause.  RSA 654:34, IV sets a time period for when voters cannot change their party affiliation; it does not address the general election or the selection of Electors. Furthermore, both statutes apply by their terms to primaries only. Neither statute affects the nomination or election of Electors who are selected based on the outcome of the general election, not a primary. *Compare* RSA 654:34, IV and 654:32 *with* RSA 655:54 (establishing procedure for nomination of Electors by state party convention) and RSA 659:84 (requiring the governor to issue certificates of election to the Electors from the party whose presidential candidate received

the most number of votes). Indeed, unlike in primaries, party affiliation is irrelevant to the

selection of electors because there is only one non-partisan ballot in a general election and it is

the aggregate votes of Republicans, Democrats, and undeclared voters that dictate the selection

of electors.

Here, the plaintiffs alleged that the Secretary and NHRSC allowed voters to change their

party affiliation in violation of RSA 654:34, IV. The complaint contains no factual claim, or even

legal conclusion, that the Secretary's and NHRSC's actions violated any law governing the

nomination or election of Electors. Where the only allegation of wrongful conduct arises from

the time for party affiliation changes, the plaintiffs have not and cannot make out a cognizable

claim under the Electors Clause. Count I must therefore be dismissed for failing to state a claim.

### 3. The plaintiffs have failed to state a claim under Counts I and II because they have failed to sufficiently allege a violation of the Voting Rights Act.

Under Counts I and II the plaintiffs refer to 52 U.S.C. 10101 in the heading.[1] 52 U.S.C.

10101 does not include a mechanism for enforcement; rather, 52 U.S.C. 10301, *et. seq.* are the

statutes which provide for the enforcement of the Voting Rights Act. To the extent the plaintiffs'

failure to reference the appropriate statutes is not fatal to their claims, Counts I and II are barred

because the plaintiffs fail to allege any facts which could form the basis of a claim under the

Voting Rights Act.

52 U.S.C. 10101 prevents a state or political subdivision from (1) disenfranchising

citizens on the basis of race or color; (2) when determining whether an individual is qualified to

vote, applying standards, practices, or procedures different than those applied to other

---

[1] The plaintiffs also refer to 52 U.S.C. 10302 (c) (formerly 42 U.S.C. 1973a(c), 3(c)) under Counts I and II as a basis for their claims. This statute does not provide a basis for relief; rather, it describes certain actions a court must take if the court finds that a state or political subdivision violated the Fourteenth or Fifteenth Amendments to an extent justifying injunctive relief.

individuals in the same state or political subdivision; (3) denying the right to vote based on errors or omissions in certain records or papers; (4) employing literacy tests. 52 U.S.C. § 10101(a).

The plaintiffs have only claimed that the Secretary and NHRSC violated their rights by virtue of allowing registered voters to change their party affiliation in a state partisan primary. Nothing in the plaintiffs' complaint alleges that any voter was denied the right to vote, any literacy tests were employed, or that a different party affiliation change process was used for some voters but not others. Counts I and II therefore fail to state a claim and must be dismissed.

### 4. The plaintiffs have failed to state a claim for violations of the Equal Protection Clause because the plaintiffs have not alleged any differential treatment by the Secretary or the NHRSC.[2]

Even assuming for the sake of argument that the NHRSC can be considered a state actor against which the equal protection clause can be enforced, Count III must be dismissed because the plaintiffs have failed to state a claim for violations of their equal protection rights. The Equal Protection Clause of the Fourteenth Amendment "guarantees that the government will not treat those who are similarly situated differently." *Lyman*, 954 F.3d at 364. As applied to voting rights, "having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush*, 531 U.S. at 104-05.

Further, the Equal Protection Clause "safeguards the equal weight accorded to each vote." *Lyman*, 954 F.3d at 364. Thus, the "meaning of one-person, one-vote… [is] at its core… the idea that every voter is equal to every other voter in his State." The practical import of this requirement is that states must "ensure that each person's vote counts as much, insofar as it is

---

[2] The plaintiffs include a reference in the captions of Counts III and IV to 18 U.S.C. 242. This is a criminal statute which, for the reasons discussed in Doc. No. 28-1 at page 13, cannot be the basis of the defendants' liability to the plaintiffs. Counts III and IV do not, however, develop any argument under 18 U.S.C. 242. Therefore, the NHRSC construes Counts III and IV as alleging violations of the Equal Protection Clause and the Due Process Clause, rather than of a criminal statute.

practicable, as any other person's." *Lyman*, 954 F.3d at 365. To make a cognizable claim under the Equal Protection Clause's one-person, one-vote principle, then, the plaintiffs must both allege that they were treated differently than another class of voters, and that their votes will be afforded less weight than the other class of voters.

The plaintiffs claim that the Secretary and NHRSC are violating their equal protection rights because voters who changed their party affiliation during the Affiliation Change Period will be allowed to cast ballots in the Republican presidential primary. Under the plaintiffs' theory, these votes will be counted illegally because the voters should not have been allowed to change their party affiliation. The effect of this, the plaintiffs claim, is that their votes will be diluted in derogation of the Equal Protection Clause[3]. Doc. No. 32 at 63-64.

Yet the plaintiffs have failed to identify differential or preferential treatment by the Secretary in violation of the Equal Protection Clause. The plaintiffs do not identify any class of voters who were treated preferentially during the Affiliation Change Period. The plaintiffs further do not identify any action by the Secretary or NHRSC which affected the plaintiffs any differently than any other voter. Further, the plaintiffs were subject to the same procedure as every other registered voter where party affiliation changes were permitted during the Affiliation Change Period. There is no evidence or allegation that any person was denied the opportunity to change their party affiliation, or that only certain voters were allowed to change their party affiliation.

---

[3] Of course, the plaintiffs cannot know or demonstrate how these voters will vote in the primary.  While they speculate that some or all of these voters will vote differently from how the plaintiffs intend to vote, it is entirely possible that the plaintiffs' preferred candidates will receive support from the reregistered voters.  There may be circumstances in which a vote-dilution or -cancellation claim would be actionable, but where the claim is based entirely upon speculation and there is not even an allegation that the dilutions or cancellations would be outcome-determinative it is not cognizable.  *Post* at 9.

Moreover, the plaintiffs have not established that their votes will be weighted any differently than any other person who votes in the Republican presidential primary. It is not enough to save the plaintiffs' equal protection claim that they allege the Secretary and NHRSC violated New Hampshire's election law; rather, the plaintiffs must advance some theory that their votes will be counted differently. Indeed, similar claims of vote dilution under the equal protection clause have been dismissed because

> the Voter Plaintiffs cannot analogize their Equal Protection claim to gerrymandering cases in which votes were weighted differently. Instead, Plaintiffs advance an Equal Protection Clause argument based solely on state officials' alleged violation of state law that does not cause unequal treatment. And if dilution of lawfully cast ballots by the "unlawful" counting of invalidly cast ballots were a true equal-protection problem, then it would transform every violation of state election law (and, actually, every violation of every law) into a potential federal equal-protection claim requiring scrutiny of the government's 'interest' in failing to do more to stop the illegal activity.

*Bognet v. Sec. Commonwealth of Pennsylvania*, 980 F.3d 336, 355 (3rd Cir. 2020) *judgment vacated and case remanded with instructions to dismiss case as moot*, *Bognet v. Degraffenreid*, 141 S.Ct. 2508 (Mem) (2021); *see also Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 391 (W.D. Pa. 2020) (holding that the plaintiff's equal protection claim failed because the plaintiffs votes would not count for less than any other vote and although unlawful votes might be cast, "unlawful votes… dilute all other lawful votes in the same way [resulting in] no unequal treatment… and no burden on Plaintiffs' rights under the Equal Protection Clause."); *Wood*, 501 F.Supp.3d at 1326-27.

As a result, the plaintiffs have not alleged a valid claim under the equal protection clause. Count III must be dismissed as a result.

**5.   The plaintiffs have failed to state a claim under count IV because any action by the NHRSC or the Secretary did not result in patent or fundamental unfairness.**

Again, assuming for the sake of argument that the NHRSC can somehow be characterized as a state actor, Count IV must be dismissed because the plaintiffs have failed to state a claim for violations of their due process rights. The plaintiffs raise both procedural and substantive due process as bases for count IV. As the analysis for procedural and substantive due process differs, each is addressed separately below.

a.   *Procedural Due Process*

To state a claim for a violation of the plaintiffs' procedural due process rights, the plaintiffs must allege the deprivation of a liberty or property interest protected by the Fourteenth Amendment. *Zell v. Ricci*, 957 F.3d 1, 8 (1st Cir. 2020). If a protected interest exists, "the analysis turns to a determination of what process was due." *Id.*

The plaintiffs allege no such interest here of which they were or will be deprived. The plaintiffs' votes will not be counted differently than any other votes, and the Secretary and NHRSC are not taking any actions against the plaintiffs that would deny them the right to vote or deprive them of any other interest. Rather, the plaintiffs claim that they are harmed as a result of their votes being diluted by illegal votes. Any interest of the plaintiffs, then, arises from the counting of illegal votes; in other words, the interest is in requiring the government to only count legal votes. This is not an interest that can be fairly described as a liberty or property interest protected under the Fourteenth Amendment. *See Lecky v. Virginia State Board of Electors*, 285 F.Supp.3d 908, 918 (E.D. Va. 2018). Where the plaintiffs have not alleged the violation of a protected liberty or property interest, there is no procedural due process violation.

10

b.      *Substantive Due Process*

The plaintiffs claim of a violation of substantive due process fares no better. To state a claim for violations of their substantive due process rights, the plaintiffs must allege some substantive right protected by the due process clause which the Secretary and NHRSC violated. In the context of elections, "a denial of substantive due process occurs… if the election process itself reaches the point of patent and fundamental unfairness." *Bonas v. Town of North Smithfield*, 265 F.3d 69, 74 (1st Cir. 2001). Generally, however, "election law, as it pertains to state and local elections, is for the most part a preserve that lies within the exclusive competence of the state courts." *Bonas*, 265 F.3d at 74. This requirement of "patent and fundamental unfairness" is a high bar which "requires [significant] proof" such that "a claim [for violation of substantive due process in the context of voting] exists in only the most extraordinary circumstances." *Donald J. Trump for President, Inc*, 493 F. Supp. 3d at 397.

Indeed, "a canvass of substantive due process cases related to voting rights reveals that voters can challenge a state election procedure in federal court only in limited circumstances such as… discrimination against a discrete group of voters," when complete disenfranchisement occurs as a result of failing to hold an election, or "when the willful and illegal conduct of election officials results in fraudulently obtained or fundamentally unfair voting results" such as ballot stuffing or refusing to count votes where voting rules were changed without informing voters of new requirements for voting. *Nolles v. State Committee for Reorganization of School Districts*, 524 F.3d 892, 898-99 (8th Cir. 2008).

Here, the plaintiffs claim that the Secretary and NHRSC violated their right to a fair election by allowing the plaintiffs' votes to be diluted. Doc. No. 32-1 at ¶69. The plaintiffs' allegations, however, do not rise to the level of "patent and fundamental unfairness." The

plaintiffs have not alleged they were not or will not be allowed to vote. The plaintiffs have not alleged that the complained-of conduct discriminates against them or any discrete group of voters. *See Griffin v. Burns*, 570 F.2d 1065, 1074 (1st Cir. 1978) (allowing case brought by absentee voters whose votes were not counted as a result of a decision made after the election). The plaintiffs have not alleged that the Secretary or NHRSC are not holding elections. *See Duncan v. Poythress*, 657 F.2d 691, 693 (5th Cir. 1981) (holding that due process clause protects the disenfranchisement of voters where state officials refused to hold an election mandated by state law). Neither have they alleged conduct qualitatively equivalent to ballot stuffing, refusal to count votes of voters unaware of change in election laws, or any other conduct resulting in a "fraudulently obtained or fundamentally unfair voting result." *Nolles*, 524 F.3d at 899; *see United States v. Saylor*, 322 U.S. 385, 388-89 (1944) (allowing suit alleging ballot stuffing); *Briscoe v. Kusper*, 435 F.2d 1046, 1055 (7th Cir. 1970) (allowing suit where voting rules were changed without informing voters of new requirements for voting and election officials refused to count the voters' votes).

In *Partido Nuevo Progresista v. Perez*, 639 F.2d 825, 826-28 (1st Cir. 1980) the First Circuit held that *Griffin v. Burns* did not justify federal court intervention. 639 F.2d at 827-28. In *Partido*, there was a dispute over whether certain ballots were allegedly mismarked. *Id.* at 826. Prior to the lawsuit, Puerto Rican courts held that the mismarked ballots could be counted. *Id.* The plaintiff brought the lawsuit in federal district court alleging constitutional violations, including violations of the plaintiff's due process rights. *Id.* at 827. The district court held in favor of the plaintiffs based on the First Circuit's decision in *Griffin*. *Id.*

The First Circuit rejected the district court's conclusion that *Griffin* allowed the district court to exercise its jurisdiction. In *Griffin*, the "election process had reached the point of patent

and fundamental unfairness" based on an after the fact change to election law which disenfranchised voters. *Id*. ("voters [in *Griffin*] had been told for many years that they could vote in a primary by absentee ballot, and such ballots had been furnished them by election officials in the challenged election. After the election they were told that their absentee ballots were void.").

The First Circuit held that the Puerto Rican court's order did not result in a patently or fundamentally unfair election. *Id*. The Puerto Rican court's order enfranchised voters rather than disenfranchising voters and it did not prevent any qualified voter from casting a ballot. *Id.* Although the plaintiffs claimed this enfranchisement resulted in their votes being "diluted by the votes of others," the First Circuit held this was insufficient to justify intervention in a case involving violations of territorial law. *Id.*

As a result, the plaintiffs have not alleged any claim for a violation of their substantive due process rights. For a federal court to intervene in an election law case where violations of state law are alleged, there must be a plausible claim that the election is or will be patently and fundamentally unfair as a result of the defendants' actions. A showing that some illegal votes might be cast is insufficient. *Partido Nuevo Progresista*, 639 F.2d at 828. Rather, the election itself must be run in such a way that the election is fundamentally unfair. The plaintiffs' allegations do not rise to this level and Count IV must be dismissed.

**6.  Any state constitutional claims must be dismissed**

The plaintiffs also include references to the New Hampshire Constitution in the captions of Counts III and IV. Aside from the bare reference to the state constitution, however, there is no development of any purported claims based on the cited provisions. The mere citation of a state constitutional provision does not purport to state a claim.  To the extent that the amended

complaint relies in some unspecified fashion on the state constitution, then, it must be dismissed for failure to state a claim.

**IV.      Conclusion**

In accordance with the foregoing, the NHRSC respectfully requests that the court dismiss the complaint because the complaint fails to allege cognizable claims.

Respectfully submitted,

CHRIS AGER, NEW HAMPSHIRE
REPUBLICAN STATE COMMITTEE
By Their Attorneys,

Date: December 28, 2023              /s/Jacob M. Rhodes
                                     Bryan K. Gould, Esq. (NH Bar #8165)
                                     gouldb@cwbpa.com
                                     Jacob M. Rhodes, Esq. (NH Bar #274590)
                                     rhodesj@cwbpa.com
                                     Cleveland, Waters and Bass, P.A.
                                     Two Capital Plaza, Fifth Floor
                                     Concord, NH 03302-1137
                                     Telephone: (603) 224-7761
                                     Facsimile:  (603) 224-6457

## CERTIFICATE OF SERVICE

I hereby certify that the within document is being served electronically through the court's electronic filing system upon counsel of record and all other parties who have entered electronic service contacts in this docket. In addition, the following parties have been served by email and U.S. Mail:

Karen Testerman (karen@karentesterman.com)
9 Stone Avenue
Franklin, NH 03235

Lynn-Diane Briggs (lynbdance@gmail.com)
4 Golden Pond Lane
Amherst, NH 03031

Wayne Paul Saya, Sr. (waynesaya2@gmail.com)
24 Cadogan Way
Nashua, NH 03062

Date:  December 28, 2023              /s/Jacob M. Rhodes
                                     Jacob M. Rhodes, Esq.