UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| KAREN TESTERMAN<br>LYNN-DIANE BRIGGS<br>and WAYNE PAUL SAYA SR.,<br><br>            Plaintiffs<br><br>   v.<br><br>DAVID SCANLAN, SECRETARY OF STATE<br>FOR NEW HAMPSHIRE<br>and CHRIS AGER, NEW HAMPSHIRE<br>REPUBLICAN STATE COMMITTEE<br><br>            Defendants | Case No. 1:23-cv-00499-JL-AJ |

**DEFENDANTS CHRIS AGER AND THE NEW HAMPSHIRE REPUBLICAN STATE COMMITTEE'S PROPOSED FINDINGS OF FACT AND RULINGS OF LAW ON PLAINTIFFS' STANDING**

In accordance with the court's order of December 26, 2023 (Doc. No. 48), defendants Chris Ager and the New Hampshire Republican State Committee (jointly, the "NHRSC") submit the following proposed findings of fact and rulings of law in connection with the January 5, 2024, hearing regarding plaintiffs' standing.

**A.  Proposed Findings of Fact**

1.  Plaintiffs' amended complaint alleges that defendants acted in concert to allow New Hampshire voters to change their party registrations between June 7 and October 6, 2023, in violation of RSA 654:34, IV. Doc. No. 32-1 at ¶11 (defendant Scanlan) and ¶¶16, 22 (Defendant NHRSC). They claim that this violation contravenes the "Electors Clause" (U.S. Const. art. II, § 1, cl. 2) (Count I), the "Elections Clause" (U.S. Const. art. I, § 4, cl. 1) (Count

1

II), the federal equal protection clause (Count III), and the federal due process clause (Count IV). They seek an order revoking all changes in party registration between June 7 and October 6, 2023, before the January 23, 2024, presidential primary. Doc. No. 32-1 at page 22.

2. Plaintiffs have alleged that they have been harmed by the allegedly unlawful changes in party registration because the effect of these changes is to dilute their votes in the presidential primary. *See, e.g.*, Doc. No. 32-1 at ¶69.

3. Plaintiffs allege but have not proven that the persons who changed their party registrations to Republican or undeclared between June 7 and October 6 will offset the plaintiffs' votes in the presidential primary.

4. Plaintiffs have not provided any evidence demonstrating how any of the nearly four thousand voters who changed their party registrations between June 7 and October 6 will vote in the presidential primary and therefore have failed to show that those voters will vote for someone other than the candidates for whom plaintiffs intend to support.

5. Based on the evidentiary record, the court cannot determine which is more likely: that the voters who changed their registrations between June 7 and October 6 will vote for the candidates for whom plaintiffs contemplate voting or that those voters will vote for other candidates.

6. Vote dilution by its nature presupposes conduct that partially or wholly negates the vote of a lawfully qualified voter. Because plaintiffs have not shown how the reregistered voters will vote, plaintiffs have failed to prove that their own votes will be diluted in the 2024 presidential primary.

B. **Proposed Rulings of Law**

1. For the court to exercise jurisdiction over an action, a plaintiff must establish standing. To meet this requirement, plaintiffs must show that (1) they have suffered an injury in fact, (2) the injury is fairly traceable to the challenged action of the defendants, and (3) that the injury is redressable by a favorable decision. *Becker v. Federal Election Commission*, 230 F.3d 381, 384-85 (1st Cir. 2000).

2. Prudential limits on standing prevent a court from adjudicating "questions of broad social import where no individual rights would be vindicated and . . . [act to] limit access to the federal courts to those litigants best suited to assert a particular claim." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985), *quoting Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99- 100 (1979).

3. Whether the plaintiffs have standing is assessed based on the facts as they existed at the time the amended complaint was filed. *Castro v. Scanlan*, 86 F.4th 947, 953-54 (1st Cir. 2023).

*Injury in Fact*

4. An injury in fact must be concrete and particularized; a generalized grievance about governmental action which does not personally affect the plaintiffs is insufficient to confer standing. *See Gill v. Whitford* 585 U.S. __, 138 S. Ct. 1916, 1930 (2018).

5. Alleging standing under a theory of vote-dilution requires that plaintiffs show a "disadvantage to themselves as individuals." *Lyman v. Baker*, 954 F.3d 351, 361 (1st Cir. 2020) (*quoting Gill*, 138 S. Ct. at 1929).

6. Standing under a theory of vote-dilution requires more than establishing that an invalid vote has been or will be cast. *See Wood v. Raffensperger*, 981 F.3d 1307, 1314-15 (11th

3

Cir. 2020) ("no single voter is specifically disadvantaged if a vote is counted improperly, even if the error might have a mathematical impact on the final tally and thus on the proportional effect of every vote.").

7. To establish standing under a theory of vote-dilution, plaintiffs must show that they are disadvantaged in a way different from every other voter. *Id.*

8. Plaintiffs have alleged that they are harmed because voters who changed their party registration between June 7 and October 6, 2023, *might* vote for a candidate who is not the plaintiffs' preferred candidate, thereby decreasing the proportional weight of the plaintiffs' votes. To the extent this harm exists, however, it is suffered by every voter who votes in the Republican presidential primary.

9. Because plaintiffs have not shown how the reregistered voters will vote in the primary or how many of those voters will vote for the candidates plaintiffs plan to support, they have not shown that their votes will be diluted. On this ground alone, plaintiffs have failed to prove an injury in fact.

10. Even if the court were to assume, as plaintiffs do, that some of the reregistered voters will vote for a candidate other than the candidates plaintiffs support, that is not the type of harm necessary to establish standing. Any vote cast by a voter who allegedly changed his registration unlawfully is not deemed to nullify another individual voter's vote. Instead, alleged unlawful vote is set off against the votes of all of the voters who voted for another candidate, and the effect on any given voter is *de minimis*. Because their alleged harm is suffered by every voter equally, none of the plaintiffs' individual rights have been violated. Rather, plaintiffs' allegations amount to a generalized grievance that the government violated the law. As a matter of law, this is insufficient to establish standing.

*Traceability*

11.      Plaintiffs must also show that the injury was fairly traceable to the actions of the NHRSC. *See Wiener v. MIB Group, Inc.*, 86 F.4th 76, 84 (1st Cir. 2023) ("the causation prong [i.e., traceability] requires that the plaintiff's injury be fairly traceable to the defendant's conduct, rather than the result of independent action by some other party.").

12.      Plaintiffs allege that the NHRSC adhered to and supported the secretary's actions of allowing party affiliation changes from June 7 through October 6, 2023. This allegation is not sufficient to establish that the plaintiffs' claimed injury is fairly traceable to the NHRSC.

13.      The NHRSC is a private organization of which Mr. Ager is the chairman. Plaintiffs have not shown that any action by the NHRSC influenced or controlled the secretary's decision to allow party affiliation changes. There is no nexus between the alleged conduct of the NHRSC and the decision of the secretary that plaintiffs claim was unlawful.

14.      Because the harm plaintiffs allege is not traceable to the conduct of the NHRSC, they have failed to establish their standing.

*Redressability*

15.      The final prong of the standing test requires plaintiffs to show that the injury is redressable by the defendant. *See Wiener*, 86 F.4th at 84. An injury is redressable if the court can order the defendant to take an action or refrain from taking an action that would remedy plaintiffs' injury. *Id.*

16.      Here, the NHRSC has no power to effectuate the remedy plaintiffs seek.  The NHRSC has no authority to revoke the voter registrations plaintiffs seek to revoke.  Accordingly, plaintiffs' alleged injury is not redressable by the NHRSC.  Accordingly, plaintiffs have failed to establish their standing.

### *Prudential Limits on Standing*

17.  The prudential limits on standing also militate for dismissal of plaintiffs' claims. Prudential limits on standing prevent a court from adjudicating "questions of broad social import where no individual rights would be vindicated and . . . [act to] limit access to the federal courts to those litigants best suited to assert a particular claim." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985), *quoting Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99- 100, (1979).

18.  Plaintiffs have not alleged any individualized right or interest. The interest plaintiffs have alleged is a broad interest to ensure elections are run according to, what plaintiffs contend, is the correct interpretation of the law.

19.  The relief plaintiffs seek is of broad social import. Plaintiffs seek to reverse party affiliation changes made by voters. This would impact, according to plaintiffs, over 3000 voters. Such relief is extraordinary and does not protect plaintiffs' individual rights.

20.  By contrast, plaintiffs' requested relief would impact many voters' rights to association and due process rights.

21.  Even if plaintiffs can establish conventional standing, the prudential limits on standing counsel that the case should be dismissed.

### Conclusion

22.  Plaintiffs have failed to establish standing as to the NHRSC because they have not identified any injury in fact that is concrete and particularized, any harm suffered by plaintiffs is not fairly traceable to the NHRSC's actions, the NHRSC cannot effectuate the relief requested by plaintiffs, and they are seeking to adjudicate a question of broad social import rather than

their individual rights and interests. Accordingly, plaintiffs' claims against the NHRSC are dismissed for lack of jurisdiction.

                                      Respectfully submitted,

                                      CHRIS AGER, NEW HAMPSHIRE
REPUBLICAN STATE COMMITTEE,
By Their Attorneys,

Date: January 3, 2024                  /s/Jacob M. Rhodes
                                      Bryan K. Gould, Esq. (NH Bar #8165)
                                      gouldb@cwbpa.com
                                      Jacob M. Rhodes, Esq. (NH Bar #274590)
                                      rhodesj@cwbpa.com
                                      Cleveland, Waters and Bass, P.A.
                                      Two Capital Plaza, Fifth Floor
                                      Concord, NH 03301
                                      Telephone: (603) 224-7761
                                      Facsimile:  (603) 224-6457

<u>CERTIFICATE OF SERVICE</u>

       I hereby certify that the within document is being served by email upon all counsel and parties of record. In addition, the following parties are being served by U.S. Mail:

Karen Testerman (karen@karentesterman.com)
9 Stone Avenue
Franklin, NH 03235

Lynn-Diane Briggs (lynbdance@gmail.com)
4 Golden Pond Lane
Amherst, NH 03031

Wayne Paul Saya, Sr. (waynesaya2@gmail.com)
24 Cadogan Way
Nashua, NH 03062


Date:  January 3, 2024                /s/Jacob M. Rhodes
                                        Jacob M. Rhodes, Esq.

4875-0869-2890, v. 2