# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

**Karen Testerman,** *pro se*

**Lynn-Diane Briggs,** *pro se*

**Wayne Paul Saya, Sr.,** *pro se*

*Plaintiffs*

*Vs*

**DAVID SCANLAN**
**SECRETARY OF STATE FOR NEW HAMPSHIRE, et al,**

*Defendants*

*Docket No. 1:23-cv-00499-JL-AJ*

### PLAINTIFFS KAREN TESTERMAN, LYNN-DIANE-BRIGGS, AND WAYNE PAUL SAYA, SR., STATEMENT OF FACTS AND MEMORANDUM OF LAW IN SUPPORT OF 'STANDING'.

Plaintiff, Wayne Paul Saya, Sr., Karen Testerman, and Lynn-Diane Briggs, *pro se* "Plaintiffs", individually, hereby outlines the Facts with Memorandum of law on the issue of 'Standing' for the Plaintiffs, *pro se*, in the above-numbered and entitled action:

### Plaintiffs on the Issue of Standing

1. Plaintiff Karen Testerman, "Plaintiff Testerman" is a New Hampshire resident and inhabitant for over 30-years, and New Hampshire tax-payer, and is a devoted member of the Republican Party during this same 30-year period. (Pacer doc 32-1 Amended Complaint, par 37).

2. Plaintiff Testerman is currently the Merrimack County, New Hampshire, Chairperson and a voting member of the Executive Committee of the New Hampshire Republican State Committee "NHRSC". (Pacer doc. 32-1 Amended Complaint, par. 37).

1

3.     As a voting member of the NHRSC Executive Committee, Plaintiff Testerman shares such duties, responsibilities and powers to oversee the direction and operation of the NHRSC similar to a director of a corporate board of directors. As such, Plaintiff Testerman has a higher level of duty as a member of the NHRSC.

4.     As chairman of the NHRSC, Chris Ager, "defendant Ager", chairs the NHRSC Executive Committee, (Pacer doc. 32-1, Amended Complaint, par 41) while following the direction and vote of said Committee, and is not a voting member of the Executive Committee unless to break a tie vote.

5.     Defendant Ager is required to adhere to and follow the direction of the voting bodies of the NHRSC and its' Executive Committee of which Plaintiff Testerman is a voting member.

6.     Defendant Scanlan has been made public references designed against Plaintiff Testerman and this legal action which have caused her and all Plaintiffs undue stress and Party alienation.

7.     Plaintiff Lynn-Diane Briggs "Plaintiff Briggs" is a New Hampshire resident and inhabitant for over 40-years in the town of Amherst, and a New Hampshire taxpayer, and affiliated as a registered Republican voter in the county of Hillsborough, New Hampshire during the same amount of years. (Pacer doc. 32-1, Amended Complaint, par. 38).

8.     Plaintiff Briggs has worked in Plaintiff's Testerman's previous political campaigns for New Hampshire Governor and has been a friend and personal acquaintance of plaintiff Testerman for around 30-years.

9.     As an "inner-circle" member of the Republican Party, Plaintiff Briggs has an expectation that the NHRSC will adhere to Party Rules and State Election laws which in-turn allows her to participate in free and fair Elections.

10. Plaintiff Briggs has been an acquaintance and friend of Plaintiff Saya *below,* since early 2020, where plaintiff Saya was introduced to plaintiff Briggs through plaintiff Saya's sister, Lynne Saya, a retired air-force veteran of 24-years residing in Chicopee, Massachusetts.

11. Plaintiff Wayne Paul Saya, Sr., "Plaintiff Saya" is a New Hampshire resident and inhabitant for around 30-years, and New Hampshire tax-payer, and has been a voting member and active financial benefactor of the Republican Party for over 40-years.

12. As a financial supporter and benefactor of the New Hampshire Republican Party, Plaintiff Saya has an expectation that the NHRSC will adhere to Party Rules and State Election laws which in-turn allows him to participate in free and fair Elections and in accordance with his civil rights under the federal voting rights act.

### Plaintiffs and this Court's Jurisdiction in Support of 'Standing'

13.   The Plaintiffs contend that this court has subject-matter jurisdiction under 42 U.S.C. §1983, where the Plaintiffs allege violations of their procedural and substantive due-process and equal protection rights pursuant to:

   1. The "'Elector's" clause of Article II, Section 1. Clause 2, and

   2. The "Elections" clause of Article I, Section 4, Clause 1, as provided for under the Fourteenth Amendment to Federal Constitution. (Pacer Doc. 32-1, Amended Complaint, par. 42)

   3. and where state Election laws are enacted pursuant to the above-U.S. Constitutional articles.

14.   And under 52 U.S. Code § 10101 - Voting rights, and 42 U.S.C. 1973a(c), or Section 3(c). (Pacer Doc. 32-1, Amended Complaint, par. 43)

15.   This court has jurisdiction Pursuant to 18 U.S. Code §242 - Deprivation of rights under color of law for deprivation of the Plaintiffs rights, privileges, and immunities secured and

protected by the due-process clause and section 1 of the fourteenth Amendment to the United States. (Pacer Doc. 32-1, Amended Complaint, par. 44)

16. Under 28 U.S.C. 1367 this Court maintains supplemental jurisdiction over state constitutional claims, where the Defendants continue to cause harm. (Pacer Doc. 32-1, Amended Complaint, par. 45)

17. This Court exercises subject matter jurisdiction under 28 U.S.C. § 1331, which confers original jurisdiction on federal district courts to hear suits secured by the United States Constitution while acting under color of state law. (Pacer Doc. 32-1, Amended Complaint, par. 46).

18. New Hampshire constitution, Art. 7, State Sovereignty. The state has waived their sovereign immunity pursuant to N.H. Rev. Slat. Ann. §§ 541-B el seq. (governing state liability). (Pacer Doc. 32-1, Amended Complaint, par. 47).

**Plaintiffs Facts and Memorandum of Law in Support of 'Standing'**

19. The standing limitation obligates a plaintiff to demonstrate the following three elements before a federal court will consider the merits of the case: (1) injury in fact; (2) causation; and (3) redressability.[1] The first of these three prongs is the most important. Under (1) injury in fact, the injury claimed by the plaintiff must be "concrete," as opposed to "abstract"; "particularized," as opposed to "generalized";[2] and "actual or imminent," as opposed to "remote or conjectural."[3]

20. In this case, the Plaintiffs have been and continue to suffer harm. First, for a number of years, but for the purposes of this complaint, since January of 2023, Plaintiff Testerman has been

---

[1] Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992); see also California v. Texas, 141 S. Ct. 2104, 2113 (2021).
[2] Daimler-Chrysler Corp. v. Cuno, 547 U.S. 332, 344 (2006)
[3] Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548–50 (2016); see also Clapper v. Amnesty Int'l, 586 U.S. 398, 409 (2013).

aware that defendant Scanlan has kept open the Republican primaries against state Election law [4] RSA 659:14-II. (Pacer Doc. 20-1, Declaration of Karen Testerman, par 9) [5]

> *9. During the January 28th, 2023 annual meeting of the NH GOP, the state Republican Party had voted to restrict "undeclared" voters from voting in the Republican primary through the above-named Resolution. The reason; for years the NH Secretary of State has been violating RSA 659:14,11, by allowing "undeclared" voters to pull (vote for) a Republican ballot on primary day without a letter of permission from the Republican Party (as required by RSA 659:14-II,). –above*
>
> *28. By permitting "undeclared" voters to pull a Republican ballot, or vote in the Republican primaries—"I was particularly aggrieved knowing that my valued vote was being made worthless through a system and mode-of-operation enforced by the NH Secretary of State and politically supported by the chair of my own Party.*
>
> *29. I was and continue to be upset that these acts by the Defendants were an attempt to pre-ordain the direction of a primary and an election while diluting my vote into nothing, removing my rights and vote as an inhabitant and citizen of New Hampshire*. (Pacer Doc. 20-1, Declaration of Karen Testerman, par. 28 & 29)

21.     The Plaintiffs were harmed when the Defendants violated not only the Electors Clause, U.S. Const. art. II, § 1, cl. 2, but also the Elections Clause, id. art. I, § 4 (to the extent that the Article I Elections Clause textually applies to the Article II process of selecting presidential electors). Plaintiff and their voters are entitled to a presidential election in which the votes are counted only if the ballots are cast and counted in a manner that complies with the pre-existing

---

[4] The Amended Complaint Affidavit of Plaintiff Testerman outlines in detail the scope of the defendants actions and her attempts to remedy these Election law violations.

[5] Pacer doc. 32 – "Leave of the court is requested to maintain the same Exhibits as used in support of the earlier Plaintiffs complaint and my original Affidavit, although I will be using my earlier-filed affidavit for my Thursday forthcoming "amended" Motion for Expedited Injunctive Relief"

laws of each state. See *Anderson v. Celebrezze, 460 U.S. 780, 795 (1983)* ("for the President and the Vice President of the United States are the only elected officials who represent all the voters in the Nation."). Voters who cast lawful ballots cannot have their votes diminished by states that administered their. . presidential elections in a manner where it is impossible to distinguish a lawful ballot from an unlawful ballot. The harm experienced will be explained in more detail below.

22.     When Defendant Scanlan failed to follow state laws RSA 659:14 and 654:34 to keep closed the pulling of a Republican ballot by "undeclared" voters, he compelled the Plaintiffs and the public-at-large to participate in an unfair and unlawful process that has created questionable and unequal future primaries and general Elections. (Pacer Doc. 32-1, Amended Complaint, pars 16-18)

23.     Where Defendant Scanlan and Defendant Ager conducted meetings instead of Defendant Ager adhering to the direction of a bonefide vote of the NHRSC to deliver the Committees notice (written letter) to change a continuous "open" ballot to a closed ballot, of which he chairs, Defendant Ager ignored the vote of the said Committee. Here, a "causal link" was established to primary ballot manipulation, (Pacer Doc. 32-1, Amended Complaint, pars 13-14) where simultaneously, Defendant Scanlan maintained a scheme to ignore state Election laws RSA 659:14 and RSA 654:34.

24.     Defendant Scanlan allowed Plaintiffs' Republican-cast votes (under RSA 659:14) to become diluted with hundreds of thousands of "undeclared" votes, and diluted with thousands of "democrat-party" votes (against RSA 654:34), in an effort to "eliminate" conservative candidates of which Plaintiffs favor.

25. When this diluting of votes created by other political affiliations (participating in the unlawful open ballot registration) had taken place—which it has—the Elections process of an independent (one-person-one-vote) had become unfair and unequal to the Plaintiffs. , but even worse, was and is designed to create an unfair advantage against the Plaintiffs.

26. Claiming an equal protection violation, plaintiffs allege that unauthorized changes to election procedures has allowed thousands of unlawful votes to be cast, beyond their own, which goes beyond the dilution of the Plaintiffs vote, but more to the weight given to the Plaintiffs legally cast votes. Compare *Bognet v. Sec'y Pa., 980 F.3d 336, at 346 (3d Cir. 2020)*. In *Reynolds v. Sims, 377 U.S. 555, 555 (1964)* one of the original vote dilution cases establishing the "one person, one vote principle," stated that "the right to vote can neither be denied outright . . . nor diluted by ballot box stuffing.".

27. Plaintiffs contend that this vote diluting of their own votes, is a violation of the Equal Protection Clause, because the challenged unlawful procedures and Election violations have the ability to change the results of a primary and in-turn general Election, causing harm to the Plaintiffs by a scheme to manipulate the ballot.

*28.* Although the instant case does not allege "ballot box stuffing", the harm is the same, where votes obtained unlawfully are being counted, thus diluting the weight of legal votes. *Bush v. Gore* extended this "equal weight for equal votes" principle from apportionment and redistricting to the granular rules for counting votes. In that case, candidate *Bush* complained that, among other issues, some Florida counties used too lenient a "chad-counting standard," resulting in improper votes being counted, and some courts have treated voter plaintiffs similarly to the instant Plaintiffs as being able to vindicate this right to proper vote weight and accurate election results. See for example *Marre v. Reed, 775 S.W.2d 951, 952 (Mo. 1989)* (stating that if the wrong candidate is declared the winner, *"more is at stake than the losing candidate's disappointment; the people have lost the ability to impose their will through the electoral process"* and *"[i]n bringing an election contest, the contestant speaks for the entire electorate,*

*seeking to assure all that the democratic process has functioned properly and that the voters' will is done").*

29. Here, the unlawfulness has caused direct harm to not only the Plaintiffs, but to the entire Electorate through an unlawful procedure in violation of 52 U.S. Code § 10101 - Voting rights, and 42 U.S.C. 1973a(c), or Section 3(c), and the 15th Amendment to the New Hampshire Constitution and the 14th Amendment to the U.S. Constitution and to all Plaintiffs and the public-at-large.

30. In light of these Election law violations, the winner of the Republican Party ballot is forever in question, <u>robbing each of the Plaintiffs a right to have their vote count</u>, and in-turn creating yet another constitutional controversy upon the completion of the New Hampshire Federal Primary Election, where both the Elections Clause and the Electors Clause of the U.S. Constitution will have been circumvented.

31. Only relief provided by this court has the ability to cure this controversy, where this Court has the authority to the requested declaratory relief under 28 U.S.C. §2201, and the requested injunctive relief under 28 U.S.C. § 1343(a). (<u>Pacer Doc. 32-1, Amended Complaint, par. 47</u>).

32. The failed process as described *above* also harms the Plaintiffs where, pursuant to state Election law violations, will now not be afforded the opportunity to participate in a free and fair election.

33. Because of the question and validity of a vote that is including the above skewed and unlawful votes, the NHRSC will now be participating in the selection of a questionable and invalid Republican candidate that will in-turn question nationally the validity of New Hampshire's 4-Electoral votes under both the "Elections Clause" and the "Elector's Clause" of the U.S. Constitution.

34. The Plaintiffs argue, as all high level and career Republicans, the harm that this unlawful process has already inflicted, and continue to inflict is immeasurable to their (Plaintiffs) civil rights to a free and fair Election.

35. The Election law violation along with others was discussed and strategized among the three Plaintiffs (Pacer 20-1, Declaration of Karen Testerman, pars 24-27), where it was believed that violations of RSA 659:14 and 654:34 were a manipulation of the election process.

> *27. The three of us (co-Plaintiffs) shared our enormous grief and displeasure at, what we had come to mutually agreed upon, was a manipulation of the political election process by members of our own GOP Party.* -above
>
> *14. On or around September 15, 2023 was the first time other Republicans whom I associate with along with other Party members became aware that the Secretary of State was not honoring the rule that was adopted by the Party back in January 28th, 2023, due to the fact there were advertisements and media releases indicating an October Party registration deadline.* (Pacer 20-1, par 14)

36. A "generalized grievance" is one that is shared in common by all members of the public.[6] Thus, a plaintiff cannot merely assert an interest in having the government follow the Constitution.[7] Accordingly, the Plaintiffs here have not simply cited the state and Federal constitutions, but have shown the Defendants direct connection to the Plaintiffs harm.

37. In this case, the Republican Party, at the highest levels within New Hampshire were and continue to be involved in this controversy, and the printed news media along with the Defendants continues to report and publicly discuss the controversy and issue of the "undeclared" voters.

---

[6] See, e.g., Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 219–20 (1974) (holding that reservists lacked standing to complain that members of Congress were unlawfully members of the Reserves in violation of Article I's bar on members of Congress simultaneously serving in "any Office under the United States").
[7] Lujan, 504 U.S. at 573–74

38.  The (2) causation prong requires that the plaintiffs have sued the right defendant/defendants: i.e., the defendant(s) that caused the alleged harm.[8]

39.  In this case, as New Hampshire's chief Elections official, defendant Scanlan is directly responsible for unlawfully keeping political Party affiliations open against state Election laws RSA 659:14 and 654:34-IV, and Defendant Ager ignoring the vote of the NHRSC. (Pacer Doc. 20-1, Declaration of Karen Testerman, pars 10-11)

> *10. Once the January 2023 Resolution 2 was adopted, NH GOP Chair Chris Ager should have written a letter notifying the Secretary of state that a rule had been adopted restricting undeclared voters from pulling a Republican ballot on primary day.* -above
>
> *11. Instead of writing the letter, on February 3, 2023 Chris Ager chose to have a [private] meeting with Secretary of State Scanlan, after which Chris Ager notified me that the Secretary of State advised the Resolution violated a nonspecific RSA (New Hampshire state law).* -above

40.  Accordingly, the letter in question was designed to 'force' Defendant Scanlan to follow a state Elections law (RSA 659:14) which he has ". . *refuse[s] to acknowledge their actions as an error or oversight; refuse[s] to correct these actions that violated New Hampshire state election laws and the New Hampshire and federal constitutions and are continuing to violate these described New Hampshire election laws into the federal Presidential primary of January 23, 2024, the federal congressional primary elections of September 10, 2024, and the federal general elections of November 6, 2023.*" (Pacer Doc. 32-1, par 12).

41.  All Plaintiffs were engaged in this operation (through discussions and strategies) to find a non-political solution to this dilemma.

---

[8] Sprint Commc'ns Co., v. APCC Servs., Inc., 554 U.S. 269, 273 (2008).

42. The NHRSC is a domestic non-profit corporation under the Secretary of State's business ID number 607402, operating and directing the Republican Party of New Hampshire. Defendant Ager is the Chairman of this non-profit corporation, and by the Plaintiffs described actions has and continues to harm all Plaintiffs, and particularly Plaintiff Testerman, who is one of the highest ranking members of the NHRSC as an Executive Committee member.

43. And (3), the redressability prong requires that the relief sought by the plaintiff can actually remedy the claimed injury.[9]

44. The plaintiffs argue, because the toothpaste cannot be put back into the tube, where Defendant Scanlan has routinely permitted a Republican ballot to be opened without a letter from the NHRSC in violation of RSA 659:14, and while violating RSA 654:34 which requires all party ballots to be closed after the first Wednesday in June, the relief sought by the Plaintiffs (Pacer 32-1, Amended Complaint, Prayer for Relief, pgs. 21-23).

45. Furthermore, Plaintiffs also argue that The Electors Clause of Article II, Section 1, of the Constitution makes clear that only the legislatures of the States are permitted to determine the rules for appointing presidential electors, not the changing of State Election laws that can change the results of the winning candidate. The pertinent rules here are the state election statutes, specifically those relevant to the presidential election.  Non-legislative actors such as the Defendants in this case, lack authority to amend or nullify election statutes. *Bush II, 531 U.S. at 104 (quoted supra). 131. Under Heckler v. Chaney, 470 U.S. 821, 833 n.4 (1985),* conscious and

---

[9] One court recently explained standing quite clearly: Article III standing doctrine speaks in jargon, but the gist of its meaning is plain enough. To bring suit, you—and you personally—must be injured, and you must be injured in a way that concretely impacts your own protected legal interests. If you are complaining about something that does not harm you—and does not harm you in a way that is concrete—then you lack standing. And if the injury that you claim is an injury that does no specific harm to you, or if it depends on a harm that may never happen, then you lack an injury for which you may seek relief from a federal court.

express executive policies—even if unwritten—to nullify statutes or to abdicate statutory responsibilities are reviewable to the same extent as if the policies had been written or adopted.

46.     The Plaintiffs understand that the standing inquiry and the merits inquiry are separate.[10] It is entirely possible for a court to accept a particular theory for standing purposes, assuming the claim to be true on the threshold question of jurisdiction, only to then reject it on the merits.[11]

47.     Moreover, election rules often involve inherently political questions and the balancing of various interests, which inherently are more suited to the give-and-take of the political branches than the rule-based adjudication of courts. In Justice Frankfurter's famous phrase from Colegrove v. Green, regulating electoral processes was "a political thicket" which courts "ought not to enter."[12]

48.     As reflected here in the actions of Defendant Scanlan, officials will not be motivated to reform the system that put them in power; instead, they will tend to sincerely believe that the system is just fine.[13] To the extent the allegedly invalid voting or election rules disadvantage the political influence of reformers, the political process will be unable to self-correct.[14] It is perhaps in part for these reasons that despite the complexities of the "political thicket," the Court eventually overruled Justice Frankfurter's holding in Colegrove v. Green and decided to police malapportionment cases.[15]

---

[10] Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 83–86 (1998).

[11] JOHN E. NOWAK & RONALD D. ROTUNDA, CONSTITUTIONAL LAW 87 (8th ed. 2010). See, e.g., Maya v. Centex Corp., 658 F.3d 1060, 1068 (9th Cir. 2011) ("[T]he threshold question of whether plaintiff has standing . . . is distinct from the merits of is claim.").

[12] Colegrove v. Green, 328 U.S. 549, 556 (1946) (declining to rule on a district malapportionment claim).

[13] See STEVEN MULROY, RETHINKING THE ELECTION SYSTEM: UNSKEWING THE SYSTEM 124–26 (2018) (noting a "natural unconscious bias toward thinking that a system that elected you must be a very wise system indeed," and citing multiple examples of sustained incumbent resistance to ranked choice voting election reforms).

[14] See United States v. Carolene Products Co., 304 U.S. 144, 152 n.4 (1938) (noting that "more exacting judicial scrutiny" is warranted for "legislation which restricts those political processes which can ordinarily be expected to bring about repeal of undesirable legislation").

[15] See Baker v. Carr, 369 U.S. 186, 208–09 (1962) (overruling Colegrove and holding that malapportionment cases were justiciable).

49. The U.S. Supreme Court has found that vote dilution can be as detrimental to a person's political rights as an absolute ban on voting. "*Reynolds v. Sims, 377 U.S. 533 (1964).* Writing for the Court, Chief Justice Warren stated:

> *The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government. The right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."*-above

50. Voters have standing when they are denied the right to cast a ballot, or <u>when their vote is mathematically diluted by the method of election</u>. In *Harper v. Virginia Board of Elections, Harper v. Va. Bd. of Elections, 383 U.S. 663, 668–70 (1966).* <u>Emphasis supplied</u>

### Why the Heller/Bruen Methodology and the Arrival of Moore v. Harper Has Changed Election Law Placing the Burden Upon the Defendants and Creating Standing in State Statutory Election Cases.

*51.* In light of the number of cases from the 2020 Election cycle, where the issue of 'Standing' was significant, Plaintiffs contend that the issues here raised not only bypass the criticisms resulting from those cases, but exceed the expectations of the three elements required for 'Standing'.

*52.* Standing is appropriate in the instant case, because the Plaintiffs contend that New Hampshire's Election law RSA 659:14 and 654:34 (ignored by the Defendants) were put in place by the NH legislature to avoid this type of Party affiliation fraud and corruption. *Moore v 17. Harper, 600 U.S.l (June/2023), addressed this type of issue citing Smiley v. Holm, 285 U.S. 355 (1932)* ; State ex rel. Smiley v. Holm, 184 Minn. 228, 238 N. fV. 494 (1931). "Legislatures must "provide a complete code for congressional elections", including regulations "relati[ng] to notices, registrations, supervision of voting, protection of voters, prevention of fraud and corrupt

practices, coimting of votes, duties of inspectors and canvassers, and making and publication of election returns." *Smiley, 285 U.S. at 366 as referred to in Moore v. Harper at 21-22. Emphasis supplied*

53.   - The Standard of Review has been Clarified by The U.S. Supreme Court. This involves a standard of review under recent U.S. Supreme Court case rulings regarding a Constitutional standard that applies to state legislative statutes, incorporating the June 2023, *Moore v. Harper, 600 U.S. 1 (decided June 27,2023) [hereinafter, "Moore"] and New York State Rifle & Pistol Assn., Inc., et al. v. Bruen, 597 U.S.l, [hereinafter, "Bruen"] No. 20-843 (U.S. Supreme Court, June 23, 2022)*

54.   These rulings are applicable precedent and validate the Plaintiff's Motion here for Standing.

55.    In *Bruen* at 6. par (c) Syllabus, it was held "[t]he exercise of other constitutional rights does not require individuals to demonstrate to government officers some special need." And in Bruen, page 15—par. C, the court recognized: "This Second Amendment standard accords with how we protect other constitutional rights." <u>Emphasis supplied</u>. In-turn, the court started a paint-by-numbers explanation regarding a number of constitutional rights and the state's responsibility, in order to explain the *Heller* court more effectively.

56.   State officials now may not duck and or ignore its responsibility to review the state's impermissible voter-interference practices (In *Moore*, that state practice to substantively alter election outcomes, was gerrymandering.)

57.    *Bruen <u>above</u>* further articulated a two-step analysis for determining whether a law, in this case NH RSA 659:14 and 654:34:IV, or regulation, in this case the New Hampshire Elections

manual, of constitutionally protected conduct is unconstitutional. Both of these are claimed in the Plaintiff's initial Complaint and now in Plaintiff Testerman's Amended Complaint.

58. First, compare how courts must determine whether any enumerated right (plain text) covers an individual's conduct. *See Bruen—<u>above</u>*. In this case, the Defendants conduct.

59. The Government must justify its regulation by demonstrating that it is consistent with the Nation's historical tradition regulating the right in question. Only then may a court conclude that the individual's conduct falls outside the enumerated right's unqualified command.

60. *Bruen* also provided a paint-by-numbers review in showing that the Burden of proof was on the government in federal cases. *Moore v Harper* is the election law case where the state was not following the plain text of the state's election law. Bottom-line. If *Moore v Harper*—above did not articulate its' standard, which it did, the Heller/Bruen decision would not apply to the states.

61. In reading both decisions. Plaintiff argues that *Moore v Harper*—<u>above</u>, ties state and Federal Election laws with due process and equal protection, and the *Bruen* decision places the burden of proof upon the government to show the Constitutionality of their decision, both creating the standard of review for Elections law.

62. In addition, also in *Bruen*—above compare where declaratory and injunctive relief under Rev. Stat. 1979,42 U.S.C.§1983, alleging that respondents violated their Second and Fourteenth Amendment rights, <u>See *Bruen*  pg. 6. par C</u>.

## Pro Se Litigants in Complex Cases

63. May it please the court: The Plaintiffs, *pro se*, would press upon the court to have a higher standard when faced with an issue for 'Standing', *White v.Bloom, 621 F.2d 276* makes this point clear and states: A court faced with a motion to dismiss a *pro se* complaint must read the

15

complaint's allegations expansively, *Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972)*, and take them as true for purposes of deciding whether they state a claim. *Cruz v. Beto, 405 U.S. 319, 322, 92 S. Ct. 1079, 1081, 31 L. Ed. 2d 263 (1972)*.

64. Pro se litigants' court submissions are to be construed liberally and held to less stringent standards than submissions of lawyers. If the court can reasonably read the submissions, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with rule requirements. Boag v. MacDougall, 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982); Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); McDowell v. Delaware State Police, 88 F.3d 188, 189 (3rd Cir. 1996); United States v. Day, 969 F.2d 39, 42 (3rd Cir. 1992) (holding *pro se* petition cannot be held to same standard as pleadings drafted by attorneys). *Then v. I.N.S. 58 F.Supp 2d, 422 at 429 (D.N.J. 1999).*

*65.* The courts provides *pro se* parties wide latitude when construing their pleadings and papers. When interpreting *pro se* papers, the court should use common sense to determine what relief the party desires. *S.E.C. v. Elliott, 953 F.2d 1560 at 1582 (11th Cir. 1992)* <u>See also</u> *United States v. Miller, 197 F.3d 644 at 648 (3rd Cir. 1999).*

66. Courts will go to particular pains to protect *pro se* litigants against consequences of technical errors if injustice would otherwise result. *U.S. v. Sanchez, 88 F.3d 1243 (DC Cir. 1996).*

## Conclusion

67. The Plaintiffs have shown (1) injury in fact; (2) causation; and (3) redressability, which meet the elements of Standing.

68. Therefore, Plaintiffs, individually, respectfully move for a hearing on the merits of the Plaintiffs Motion for Relief.

**SWORN TO UNDER PAINS AND PENALTIES OF PERJURY this 3rd day of January, 2024.**

Respectfully submitted,

**/s/ Wayne Paul Saya, Sr.**

Wayne Paul Saya, Sr. Plaintiff, *pro se*
24 Cadogan Road
Nashua, New Hampshire 03062
Waynesaya2@gmail.com
571-220-3344 mobile

| **/s/ Karen Testerman** | **/s/  Lynn-Diane Briggs** |
|---|---|
| Karen Testerman, Plaintiff, *pro se* | Lynn-Diane Briggs, Plaintiff, *pro se* |
| 9 Stone Avenue | 4 Golden Pond Lane |
| Franklin, New Hampshire 03235 | Amherst, New Hampshire 03031 |
| Karen@KarenTesterman.com | Lynbdance@gmail.com |
| 571-220-3344 mobile | 603-801-6886 |

/s/  as permitted by the court, Magistrate Johnstone

## CERTIFICATE OF SERVICE

I, Wayne Paul Saya, Sr., Plaintiff, *pro se*, have caused to deliver the named PLAINTIFFS KAREN TESTERMAN, LYNN-DIANE-BRIGGS, AND WAYNE PAUL SAYA, SR., STATEMENT OF FACTS AND MEMORANDUM OF LAW IN SUPPORT OF 'STANDING'. and the foregoing documents have been served upon the following Defendants by electronic mail:

| | |
|---|---|
| David Scanlan, Defendant | Chris Ager, Defendant |
| Secretary of State of New Hampshire | Chairman |
| C/O: Brendan Avery O'Donnell | NH Republican State Committee |
| NH Department of Justice (Concord) | 10 Water Street, Concord, NH 03301 |
| One Granite Place South | By Counsel: Attorney Bryan Gould |
| Concord, NH 03301 | Cleveland, Waters and Bass, P.A. |
| 603-271-3650 | 2 Capital Plaza, Concord, NH 03302-1137 |
| Fax: 603-271-2110 | (603) 224-7761 |
| Email: brendan.a.odonnell@doj.nh.gov | gouldb@cwbpa.com |

**SWORN TO UNDER PAINS AND PENALTIES OF PERJURY this 3rd day of January, 2024.**

**/s/  Wayne Paul Saya, Sr.**

Wayne Paul Saya, Sr. Plaintiff, pro se
24 Cadogan Road
Nashua, New Hampshire 03062
Waynesaya2@gmail.com
571-220-3344 mobile

| | |
|---|---|
| **/s/  Karen Testerman** | **/s/  Lynn-Diane Briggs** |
| Karen Testerman, Plaintiff, *pro se* | Lynn-Diane Briggs, Plaintiff, *pro se* |
| 9 Stone Avenue | 4 Golden Pond Lane |
| Franklin, New Hampshire 03235 | Amherst, New Hampshire 03031 |
| Karen@KarenTesterman.com | Lynbdance@gmail.com |
| 571-220-3344 mobile | 603-801-6886 |