UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Karen Testerman, et al.

    v.                                  Civ. No. 23-cv-499-JL-AJ

NH Secretary of State, et al.


**ORDER ON MOTION TO DISMISS**

The Constitution limits federal courts to deciding "cases or controversies." See U.S. Const. art. III § 2; "One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so." Hollingsworth v. Perry, 570 U.S. 693, 704 (2013).

The threshold jurisdictional question before the court is whether three New Hampshire Republican voters have standing to contest state presidential primary election rules allowing voters to change their party affiliations before the primary election. Plaintiffs Wayne Saya, Jr., Lynn-Diane Briggs, and Karen Testerman, the latter of whom is the chair of the Merrimack County Republican Party, have sued New Hampshire Secretary of State David Scanlan, the New Hampshire Republican State Committee ("NHRSC") and its chair, Chris Ager. They allege that the defendants acted in concert to violate state law and impermissibly allow such party affiliation changes between June 7 and October 6, 2023. They seek an injunction reversing the party changes or postponing New Hampshire's presidential primary election, presently scheduled to take place January 23, 2024. The defendants have filed motions to dismiss (Doc. Nos. 27, 28, 49, 52), in which they argue, among other things, that the plaintiffs lack standing to bring this suit. The plaintiffs have objected to the motions. (Doc. No. 47).

After reviewing the parties' filings and conducting an evidentiary hearing, the court finds that the plaintiffs lack standing and that this court therefore lacks subject matter jurisdiction and the case must be dismissed.[1] The plaintiffs have failed to establish that the rules allowing party affiliation changes, or their application and enforcement as alleged here, have caused them to suffer an actual or imminent concrete and particularized injury that is not conjectural or hypothetical.

**I. Background**

On September 13, 2023, Secretary of State Scanlan established the candidate filing period for the New Hampshire Presidential Primary as October 11 to October 27, 2023. See N.H. Rev. Stat. Ann. ("RSA") § 655:47, II (providing that presidential primary declarations of candidacy shall be filed "during such . . . time period as the secretary of state shall announce"); see also Compl. (Doc. No. 1), Exh. A (Doc. No. 1-1 at 4) (Sept. 13, 2023, letter from Scanlan to local election officials regarding filing period and deadlines for registered voters to change party affiliations) ("Scanlan letter")).[2] Pursuant to RSA 654:32, local supervisors of voter checklists are required to meet "on the Friday preceding the first day of the filing period" of presidential

---

[1] The defendants' motions were docketed on or before December 8, 2023. The motions sought dismissal based on failure to state a claim for relief, pursuant to Fed. R. Civ. P. 12(b)(6) and lack of standing, pursuant to Fed. R. Civ. P. 12(b)(1). The plaintiffs sought leave to file an amended complaint on December 13, 2023, which was subsequently granted. Pursuant to LR 15.1, the motions to dismiss are automatically denied without prejudice upon the filing of the amended complaint to the extent they seek dismissal for failure to state a claim. The plaintiffs' objection (Doc. No. 47) does not address the issue of standing. The standing argument remains live, however, as "[w]ithout jurisdiction[,] the court cannot proceed at all in any cause," Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94, (1998).

[2] The Sept. 13, 2023, letter was attached to plaintiffs' original complaint, but not their amended complaint. In deference to their pro se status and the fact that the contents of the exhibit are not in dispute, the court refers to the letter here in order to provide a background narrative.

primary candidates for the "change of registrations of legal voters as provided in RSA 654:34 or 654:34-a or both." The statute prescribes different meeting dates for state primary elections.

According to the Secretary of State, the last day for registered voters to change their party registration for the 2024 presidential primary was, therefore, October 6, 2023, the Friday prior to the opening of the primary candidate filing period. Scanlan letter (Doc. No. 1-1 at 4). On November 15, 2023, Secretary Scanlan announced that the New Hampshire presidential primary would take place on January 23, 2024. See RSA 653:9 (setting primary date for March of presidential election year or "on a date selected by the secretary of state which is 7 days or more" before any other state's "similar election," . . . ."); Am. Compl. (Doc. No. 32-1) ¶ 20.

The plaintiffs allege that approximately 4000 registered Democrats in New Hampshire recently changed their party affiliations to "undeclared" or Republican.[3] Id. ¶ 25.

## Legal Standard

"Federal courts, as courts of limited jurisdiction, may not presume the existence of subject matter jurisdiction, but rather, must appraise their own authority to hear and determine particular cases." Watchtower Bible & Tract Soc. of N.Y., Inc. v. Colombani, 712 F.3d 6, 10 (1st Cir. 2013); accord United States v. Rivera-Rodríguez, 75 F.4th 1, 13 (1st Cir. 2023). The party who asserts jurisdiction bears the burden of establishing that it exists by a preponderance of the evidence. Woo v. Spackman, 988 F.3d 47, 53 (1st Cir. 2021); U.S. ex rel. Ondis v. City of Woonsocket, 587 F.3d 49, 54 (1st Cir. 2009).

As noted at the outset, the defendants argue that the court lacks subject matter jurisdiction because the plaintiffs lack standing. "Under Article III of the Constitution, a plaintiff needs a

---

[3] Undeclared voters can vote in a party's primary at the polling place on the day of the primary. RSA 654:34, II(b).

'personal stake' in the case." Biden v. Nebraska, 143 S. Ct. 2355, 2365(2023) (quoting TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021)). More specifically, "the plaintiff must have suffered an injury in fact—a concrete and imminent harm to a legally protected interest, like property or money—that is fairly traceable to the challenged conduct and that is likely to be redressed by the lawsuit." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  In addition to these constitutional considerations, prudential limitations  "prevent courts from "adjudicating 'questions of broad social import where no individual rights would be vindicated and ... limit access to the federal courts to those litigants best suited to assert a particular claim.' " Conservation Law Found. of New England, Inc., 950 F.2d 38, 41 (1st Cir. 1991) (alterations in original) (quoting Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804 (1985)).

Although "[a]n inquiry into standing must be based on the facts as they existed when the action was commenced," Ramírez v. Sánchez Ramos, 438 F.3d 92, 97 (1st Cir. 2006), "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." Webb v. Injured Workers Pharm., LLC, 72 F.4th 365, 372 (1st Cir. 2023) (quoting TransUnion, 141 S. Ct. at 2210). The injury, however, must be "concrete and particularized" and "not conjectural or hypothetical." Lujan, 504 U.S. at 560. The plaintiff bears the burden of establishing standing. TransUnion, 141 S. Ct. at 2207. To carry that burden, the plaintiff must satisfy the standing test against each defendant "with the manner and degree of evidence required at the successive stages of the litigation." Webb, 72 F.4th at 371-72 (quoting TransUnion, 141 S. Ct. at 2208).

4

When the court's jurisdiction is challenged by a motion to dismiss under Fed. R. Civ. P. 12(b)(1), the Court must credit the pleaded factual allegations as true and draw all reasonable inferences from them in the nonmoving party's favor. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).  Here, where the court has held an evidentiary hearing on the jurisdictional issues including standing,[4] the plaintiffs bear the burden to establish by a preponderance of the evidence that they have standing to litigate this claim. ForUsAll, Inc. v. U.S. Dep't of Labor, No. 22-cv-1551 (CRC), 2023 WL 5559682, at *3 (D.D.C. Aug. 29, 2023) (the plaintiff bears the burden of showing standing by a preponderance of the evidence (citing Lujan, 504 U.S. at 561)).  By way of example, this court recently dismissed a Republican primary candidate's lawsuit attempting to disqualify former President Trump from participating in the primary, finding and ruling that the candidate lacked standing. See Castro v. New Hampshire Sec'y of State, No. 23-CV-416-JL, 2023 WL 7110390 (D.N.H. Oct. 27, 2023), aff'd sub nom. Castro v. Scanlan, 86 F.4th 947 (1st Cir. 2023).

## Analysis

The plaintiffs claim that by allowing voters to change their party affiliations until October 6, 2023, Secretary Scanlan violated RSA 654:34, IV, which provides that "[n]o person, who is already registered to vote, whether his party membership has been previously registered or not, shall affiliate with a party or disaffiliate from a party between the first Wednesday in June and the day before the state primary election." The first Wednesday in June 2023 was June 6.[5]  The

---

[4] The court held a conference with the parties and counsel on January 2, 2024, at which the plaintiffs requested an evidentiary hearing on the issues of jurisdiction and standing.  The court granted that request.

[5] According to the Secretary of State, there was no state primary election in New Hampshire in 2023.  The next state primary election is September 10, 2024. The defendants

thrust of plaintiffs' suit is that thousands of Democrats illegally changed their party affiliations between June 6 and October 6, 2023 for the sole purpose of "interfering" in the 2023 Republican presidential primary. The plaintiffs allege that Democrats will vote in the Republican primary not because they prefer a Republican candidate, but because they desire either: a) to defeat the plaintiffs' preferred candidate in the primary; or b) boost former President Trump's candidacy because Democrats think he's a weaker candidate in the general election. See Am. Compl. (Doc. No. 32) ¶ 13; Compl. (Doc. No. 1) Exh. C (Doc. 1-1 at 6).

Plaintiffs assert four causes of action: violation of the U.S. Const. Art. II, § 1, Cl. 2 (the "Presidential Electors" Clause") (Count I); violation of U.S. Const. Art. 1, § 4, Cl. 1 (the "Elections Clause") (Count II); equal protection (Count III); and substantive and procedural due process (Count IV). The linchpins of each count are that Secretary Scanlan illegally enlarged the party affiliation change window, and that, as a result, the plaintiffs' votes -- and those of other non-parties -- have been diluted. As the standing issue requires the same analysis regardless of the particular legal claim asserted, the court will not address each count individually, but will instead undertake a single analysis of the standing issue.

A. Injury in fact

The plaintiffs consistently describe their injury as "vote dilution," see, e.g., Am. Compl. (Doc. No. 32-1) ¶ 30 (" . . . their legal votes have been diluted with votes that are the product of an unlawful and unconstitutional procedural process."); id. ¶ 34 (" . . . diluting the Plaintiffs['] valid ballot with an invalid ballot . . ."); id. ¶ 64 (" . . . their votes are being systematically diluted with invalid votes, . . ."), and confirmed this characterization at the hearing. Standing

---

argue that the plaintiffs are misreading RSA 654:34, IV, and that this provision is only relevant to state primary elections. As this Order addresses only the plaintiffs' standing to sue, the court offers no opinion on the parties' respective statutory interpretations.

for such a claim requires "facts showing disadvantage to [plaintiffs] as individuals." Lyman v. Baker, 954 F.3d 351, 361 (1st Cir. 2020) (quoting Gill v. Whitford, 138 S. Ct. 1916, 1929 (2018)) (emphasis added). "No single voter is specifically disadvantaged if a vote is counted improperly, even if the error might have a mathematical impact on the final tally and thus on the proportional effect of every vote." Wood v. Raffensperger, 981 F.3d 1307, 1314-15 (11th Cir. 2020).

Thus, it is not enough for the plaintiffs to allege that their votes were "diluted" as a result of other voters casting allegedly invalid votes. Instead, standing based on a claim of vote dilution "requires a point of comparison. For example, in the racial gerrymandering and malapportionment contexts, vote dilution occurs when voters are harmed compared to irrationally favored voters from other districts." Id. In other words, standing to sue requires the plaintiffs to show that they are disadvantaged in a different way than every other voter. Id. The plaintiffs here have made no such allegations. If the plaintiffs are correct that the change period was illegal, then all New Hampshire primary voters will have their votes similarly diluted.

The First Circuit Court of Appeals' decision in Lyman is instructive. The issue before the court was whether the plaintiffs had standing to challenge Massachusetts' "winner-take-all" system, which allocated all of its Electoral College votes to the winner of the general election for President. 954 F.3d at 360-61. The plaintiffs – two Republican and one independent voter, all of whom "consistently voted for non-Democratic presidential candidates," id. at 356 -- claimed this allocation of presidential electors solely to the victorious Democratic candidate injured the plaintiffs in the form of diluting the strength of their votes. Id. at 361. Applying a "plausibility" standard pursuant to Fed. R. Civ. P. 12(b)(1), the court found that the plaintiffs sufficiently alleged a concrete and particularized injury where the plaintiffs alleged their votes would be

7

given no weight. Id. at 362 (emphasis added) (concluding that "Appellants reside and vote in Massachusetts and their presidential candidates of choice . . . have not received a single electoral vote from Massachusetts because of the manner in which the WTA system allegedly dilutes the strength of their votes for non-Democratic candidates . . . .").

Not only have the plaintiffs failed to allege the type of nullification that supported the plaintiffs' standing in Lyman, courts that have considered voters' standing in circumstances similar to those here have uniformly rejected individual standing claims based on allegations of dilution resulting from allegedly illegal votes being cast. The court in Feehan v. Wisconsin Elections Commission, 506 F. Supp. 3d 596, 608 (E.D. Wis. 2020), rejected a single voter's claim of standing, finding that "[t]he plaintiff's alleged injuries are injuries that any Wisconsin voter suffers if the Wisconsin election process were, as the plaintiff alleges, 'so riddled with fraud, illegality, and statistical impossibility that this Court, and Wisconsin's voters, courts, and legislators, cannot rely on, or certify, any numbers resulting from this election.' . . . " Id. at 609. As a result, the court concluded that "[t]he plaintiff has not alleged that, as a voter, he has suffered a particularized, concrete injury sufficient to confer standing." Id. The Feehan court relied on Moore v. Circosta, 494 F.Supp.3d 289 (M.D.N.C. 2020), which provided the following inventory of other cases:

> Indeed, lower courts which have addressed standing in vote dilution cases arising out of the possibility of unlawful or invalid ballots being counted, as Plaintiffs have argued here, have said that this harm is unduly speculative and impermissibly generalized because all voters in a state are affected, rather than a small group of voters. See, e.g., Donald Trump for President, Inc. v. Cegavske, Case No. 2:20-CV-1445 JCM (VCF), 488 F. Supp. 3d 993, 999–1000, (D. Nev. Sept. 18, 2020) ("As with other generally available grievances about the government, plaintiffs seek relief on behalf of their member voters that no more tangibly benefits them than it does the public at large.") (internal quotations and modifications omitted); Martel v. Condos, Case No. 5:20-cv-131, 487 F. Supp. 3d 247, 252–53, (D. Vt. Sept. 16, 2020) ("If every voter suffers the same incremental

8

> dilution of the franchise caused by some third-party's fraudulent vote, then these voters have experienced a generalized injury."); Paher v. Cegavske, 457 F. Supp. 3d 919, 926-27 (D. Nev. 2020) ("Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter."); Am. Civil Rights Union v. Martinez-Rivera, 166 F. Supp. 3d 779, 789 (W.D. Tex. 2015) ("[T]he risk of vote dilution [is] speculative and, as such, [is] more akin to a generalized grievance about the government than an injury in fact.")
> 
> Although "[i]t would over-simplify the standing analysis to conclude that no state-wide election law is subject to challenge simply because affects all voters," Martel, 487 F. Supp. 3d at 252, the notion that a single person's vote will be less valuable as a result of unlawful or invalid ballots being cast is not a concrete and particularized injury necessary for Article III standing. Compared to a claim of gerrymandering, in which the injury is specific to a group of voters based on their racial identity or the district in which they live, all voters in North Carolina, not just Individual Plaintiffs, would suffer the injury Individual Plaintiffs allege. This court finds this injury too generalized to give rise to a claim of vote dilution . . . .

Feehan, 506 F. Supp. 3d at 608 (E.D. Wis. 2020) (quoting Moore, 494 F. Supp. 3d at 312-313); see also Bost v. Ill. State Bd. Of Elections, No. 22-cv-02754, 2023 WL 4817073 (N.D. Ill. July 26, 2023, at *4-5 (rejecting plaintiffs' standing to pursue vote dilution claim as "general interest that every citizen shares in "proper application of . . . the law."), appeal filed, No. 23-2644 (7th Cir. Aug. 21, 2023); Graeff v. U.S. Election Assistance Comm'n, No. 22-cv-682 RLW, 2023 WL 2424267, at *5-6 (E.D. Mo. Mar. 9, 2023) (finding lack of standing where plaintiff alleged violation of laws regarding testing of voting equipment).

So it is here. Given the overwhelming weight of election-related caselaw, the plaintiffs' allegations of injury -- "dilution" as a result of other voters changing party affiliations after June 6, 2023 -- are insufficient to confer standing.

Not only have the plaintiffs failed to sufficiently allege cognizable injury, but their claim of injury is also based on speculating how the "new" voters will vote; or whether those that changed from the Democratic party to "undeclared" will vote in the Republican primary. The

9

plaintiffs have implicitly foreclosed the possibility that the "new" voters may actually support Republican candidates; or that previously Democratic voters switched to "undeclared" to give themselves more options in the presidential primary. During the hearing, each of the plaintiffs conceded that they had no knowledge of why any voter changed their registration and could not foretell how any voter who changed affiliations during the "illegal" period would vote in the primary. The court may not entertain such conjecture in assessing standing. Daimler Chrysler Corp. v. Cuno, 547 U.S. 332, 350 (2006).

B. Prudential concerns

In addition to their failure to allege an injury in fact, the prudential limits on standing also weigh against plaintiffs' claim of standing to sue. Simply put, and consistent with the court's analysis of their claim of injury, the relief the plaintiffs seek will not vindicate any individualized right or interest. See Conservation Law Foundation of New England, Inc., 950 F.2d at 41. The plaintiffs have requested that the Secretary be ordered to either reverse all the party affiliation changes which occurred after June 6, 2023, or move the presidential primary to coincide with the state primary. Pltff. Mot. (Doc. No. 40) at 8. This relief is not targeted at protecting the plaintiffs' individual rights. Rather, the foundational accusation against the defendants is that they have violated state law.

The two potential forms of relief the plaintiffs have requested could only remedy the generalized interest in requiring the Secretary of State comply with plaintiffs' interpretation of the law. See Kersey v. Trump, No. CV 23-12019-IT, 2023 WL 7195691, at *1 (D. Mass. Nov. 1, 2023) ("Injuries that are too 'widely shared' or are 'comparable to the common concern for obedience to law' may fall into the category of generalized grievances about the conduct of government." (quoting Lyman, 954 F.3d at 361)); see also In re Puerto Rico Pub. Fin. Corp., No.

22-CV-1517 (LTS), 2023 WL 5199471, at *5 (D.P.R. Aug. 14, 2023) ("[i]t is apodictic that a mere interest in seeing the government turn square corners is not the kind of particularized interest that can satisfy the most basic constitutional prerequisite for standing.") (quoting Osediacz v. City of Cranston, 414 F.3d 136, 142 (1st Cir. 2005)).  As plaintiff Briggs explained at the hearing, her goal in this lawsuit is to "push back on what is illegal."  And, in response to the court's question, plaintiff Saya agreed that "any New Hampshire voter has the same injury."  In addition, in their pre-hearing legal memorandum, the plaintiffs state explicitly that "the unlawfulness has caused direct harm to not only the Plaintiffs, but to the entire Electorate through an unlawful procedure . . . ."  Pltff. Mem. (Doc. No. 63) ¶ 29.  Such observations constitute "generalized grievances," over which the court lacks jurisdiction.[6]

In addition to the generalized nature of the grievance weighing against standing, the court further notes that the plaintiffs specifically allege that the defendants' actions have caused "harm to Republican candidates running for President . . ." Am. Comp. (Doc. No. 32-1) ¶ 17.  As previously explained, however, prudential concerns include "limit[ing] access to the federal courts to those litigants best suited to assert a particular claim." Conservation Law Found. of New England, Inc., 950 F.2d at 41.

## Conclusion

The court credits the testimony of the three plaintiffs in this case as credible and straightforward; their claims and arguments were advanced in good faith. The evidence and applicable law, however, do not confer standing under these facts and circumstances.  The

---

[6] Plaintiff Testerman also likened the plaintiffs' injury to injuries suffered by paying customers at a grocery store in the aftermath of shoplifting, comparing non-Republicans voting in the Republican primary to those who purchase groceries without paying.  The example is instructive, but not for the reasons plaintiff suggests.  Under her scenario, the grocery store would likely be the only entity with standing to sue the shoplifter.

11

defendants' motions to dismiss (Doc Nos. 27 and 28) are therefore GRANTED. The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

January 9, 2024

cc: Karen Testerman, pro se
 Lynn-Diane Briggs, pro se
 Wayne Paul Saya, Sr., pro se
 Brendan Avery O'Donnell, Esq.
 Bryan K. Gould, Esq.
 Jacob Rhodes, Esq.